Amjad M. Khan
*amjad@bnsklaw.com*
Erika L. Shapiro
*erika@bnsklaw.com*
Rowennakete P. Barnes
*kete@bnsklaw.com*
BROWN NERI SMITH & KHAN, LLP
11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
T: (310) 593-9890
F: (310) 593-9980

Attorneys for Defendants
PMAC LENDING SERVICES,
INC., AND RELIANT MORTGAGE
COMPANY, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*,<br><br>               Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS, INC.,<br><br>               Plaintiff,<br>    -against-<br><br>PMAC LENDING SERVICES, INC., individually and as successor by merger to PMC Bancorp, f/k/a Professional Mortgage Corp., and as successor by merger to Reliant Mortgage Company, LLC, and PMC BANCORP, f/k/a Professional Mortgage Corp., individually, and RELIANT MORTGAGE COMPANY, LLC, individually,<br><br>               Defendants. | Adv. Proc. No. 18-01353-SCC<br><br>**DEFENDANTS PMAC LENDING SERVICES, INC. AND RELIANT MORTGAGE COMPANY, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS LBHI'S COMPLAINTS** |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION --------------------------------------------------------------------------- 5

II.   STATEMENT OF FACTS ------------------------------------------------------------- 8

   A.   LBHI's Purchase of Mortgage Servicing Rights from PMAC and Reliant ----------------- 8
   B.   LBHI's Sale of the Mortgage Servicing Loans It Purchased to Fannie Mae, Freddie Mac, and RMBS Trustees --------------------------------------------------------------- 9
   C.   LBHI Brings a Blitzkrieg Of Lawsuits, All Identical In Nature ----------------------------- 9
      1.   LBHI Sues PMAC in 2009 ------------------------------------------------------- 10
      2.   LBHI Sues Universal American Mortgage Co., LLC in 2010 --------------------------- 10
      3.   LBHI Sues Bancorp in 2010 ----------------------------------------------------- 10
      4.   Aurora Bank—LBB's Subsidiary—Sues Bancorp in 2011 ------------------------------- 11
      5.   Aurora Sues PMAC in 2013------------------------------------------------------ 11
      6.   LBHI Sues PMAC Again in 2013 ------------------------------------------------- 11
      7.   LBHI Sues PMAC And Bancorp Again in 2015 ------------------------------------- 12
      8.   LBHI Sues Bancorp, PMAC and Reliant in the Current Action ------------------------ 13

III.   LEGAL STANDARD-------------------------------------------------------------- 14

IV.   ARGUMENT---------------------------------------------------------------------- 15

   A.   LBHI's Claims Are Barred Under Res Judicata ---------------------------------------- 15
   B.   LBHI's Claim for Contractual Indemnification Is Barred By The Statute Of Limitations 19
      1.   LBHI's Claims Are Barred Under Delaware's Three-Year Statute of Limitations Period for Breach of Contract Claims---------------------------------------------------- 20
      2.   LBHI's Claims Are Barred Under New York's Six-Year Statute of Limitations Period for Breach of Contract Claims ------------------------------------------------------ 22
      3.   If the Court believes that claims accrued when LBHI suffered a loss, that loss occurred at the latest in 2009 because LBHI became liable for a fixed sum to a third-party – its attorneys – to pay their fees in responding to the proofs of claims filed by the RMBS trustees -------------------------------------------------------------------------- 23
   C.   LBHI's Claims For Successor Liability Against PMAC Must Be Dismissed ------------- 24
      1.   LBHI's Claim for Successor Liability Cannot Stand Because Its Underlying Claims Against Bancorp and Reliant Are Barred---------------------------------------------- 25
      2.   LBHI Utterly Fails to State A Claim For Successor Liability Against PMAC as to Reliant------------------------------------------------------------------------- 26

V.   CONCLUSION ------------------------------------------------------------------ 28

**TABLE OF AUTHORITIES**

Page

<u>C</u>ASES

*ACE Sec. Corp. v. DB Structured Prods., Inc.*, 112 A.D.3d 522 (1st Dept 2013) ----------------- 21

*Aircraft Serv. Int'l, Inc. v. TBI Overseas Holdings, Inc.*, C.A. No. N13C-06-265
WCC CCLD, 2014 WL 4101660 (Del. Super. Aug. 5, 2014) ---------------------------------------- 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) --------------------------------------------------------------- 13, 14

*Bay Ridge Air Rights, Inc. v. State* 44 N.Y.2d 49 (1978)-------------------------------------------- 22

*Bay Ridge Air Rights, Inc. v. State* 44 N.Y.2d 49 (1978). ------------------------------------------ 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) --------------------------------------------------- 13, 14

*Butler v. Adoption Media*, 486 F. Supp. 2d 1022 (N.D. Ca. 2007)------------------------------- 25, 26

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 5140-CS,
2012 WL 3201139 (Del. Ch. Aug. 7, 2012)-------------------------------------------------------------- 20

*Colon v. Multi-Pak Corp.*, 477 F. Supp. 2d 620 (S.D.N.Y. 2007) ---------------------------------- 26

*Cowan v. Ernest Codelia, P.C.*, No. 98 Civ. 5548 (JGK), 2001 WL 856606
(S.D.N.Y. Jul. 30, 2001) ------------------------------------------------------------------------------------- 15

*Cruden v. Bank of New York*, 1990 WL 251023 (S.D.N.Y. 1990)---------------------------------- 24

*Enny v. City of Poughkeepsie*, No. 06 CV 15198 (VB), 2012 WL 2866280
(S.D.N.Y. Apr. 5, 2012) ------------------------------------------------------------------------------------- 26

*Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482 (1999)------------------------------------------ 18

*In Re Lehman Brothers Inc. v. Universal American Mortgage Co., LLC, et al.*,
593 B.R. 166 (Bankr. S.D.N.Y. 2018) -------------------------------------------------------------------- 22

*In re Marvel Entm't Group, Inc.*, 273 B.R. 58 (D. Del. 2002)-------------------------------------- 20

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, 209 F.R.D. 323
(S.D.N.Y. 2002)------------------------------------------------------------------------------------------------ 14

*L.E. Talcott & Sons, Inc. v. Aurora Corp.*, 176 F. Supp. 783 (D. Del. 1959) ---------------------- 20

*Lazides v. Kouzounas*, 7 A.D.3d 676 (2d Dept 2004)-------------------------------------------------- 14

*Lehman Bros. Holdings Inc. v. Univ. Amer. Mortgage Co..*,
No. 13-cv-00087-CMA-MJW, 2014 U.S. WL 1715365 (D. Colo. Apr. 30, 2014) ---------------- 18

*Lehman Bros. Holdings, Inc. v. Universal Amer. Mortg. Co., LLC*, 660 Fed. Appx. 554
(10th Cir. 2016) -----------------------------------------------------------------------------------------9, 19, 20

*Lehman XS Trust, Series 2006-4N v. GreenPoint Mortg. Funding*, 991 F. Supp. 2d 472

    (S.D.N.Y. 2014)------------------------------------------------------------------------------------- 21

*Marinelli Assocs. v. Helmsley Noyes Co., Inc.*, 265 A.D.2d 1 (1st Dept 2000) -------------------- 15

*Matter of Reilly v. Reid*, 45 N.Y.2d 24 (1978) ------------------------------------------------------------ 15

*Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547 (Mass. 2008) ----------------------- 25, 26, 27

*O'Brien v. City of Syracuse*, 54 N.Y.2d 353 (1981) ----------------------------------------------------- 15

*Oliver v. Rio Acquisition Partners, LLC*, No. 1:18-cv-1794-GHW, 2019 WL

801952 (S.D.N.Y. Feb. 21, 2019) ------------------------------------------------------------------------- 26

*Osbow Calcining USA Inc. v. Amer. Indus. Partners*, 96 A.D.3d 646 (1st Dept 2012) ----------- 18

*Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346 (2d Cir. 1986) --- 19

*Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410 (2010) ----------------------------------- 18

*Ramsey v. Busch*, 19 F. Supp. 2d 73 (W.D.N.Y. 1998) ------------------------------------------------- 15

*Sannon v. Stamm Assoc., Inc. v. Keefe, Bruyette & Woods, Inc.*, 68 A.D.3d 678

(1st Dept 2009)-------------------------------------------------------------------------------------------------- 14

*Schumacher v. Richards Shear Co., Inc.*, 59 N.Y.2d 239 (1983) --------------------------- 25, 26, 27

*Stoner v. Culligan, Inc.*, 32 A.D.2d 170 (3d Dept 1969) ------------------------------------- 14, 15, 16

*Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*, No. 02-42 Civ. 3232,

2003 WL 548868 (S.D.N.Y. Feb. 25, 2003) -------------------------------------------------------------- 21

*W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 2000 WL 1843282 (W.D.N.Y. Nov. 2, 2000) ---- 24

*Weinreb v. Xerox Bus. Servs., LLC Health and Welfare Plan*, 323 F. Supp. 3d 501, 510

    (S.D.N.Y. 2018)-------------------------------------------------------------------------------------------------- 14

*Weitz v. Wagner*, No. CV-07-1106 (ERK)(ETB), 2008 WL 5605669 (E.D.N.Y. Jul. 24, 2008) 14

*Windsearch, Inc. v. Delafrange*, 90 A.D.3d 1223 (3d Dept 2011) ----------------------------------- 18


## STATUTES

12 C.F.R. §§ 545.91(a)................................................................................................................. 19
12 U.S.C. § 1464(x) ..................................................................................................................... 19
C.F.R. § 1263.18(a)(1).................................................................................................................. 19
Del. C. § 8106 .............................................................................................................................. 20
N.Y. CPLR 213(2) (McKinney 2019) ......................................................................................... 21

# I.   INTRODUCTION

Plaintiff Lehman Brothers Holdings Inc. ("LBHI") brings this action against Defendants PMAC Lending Services, Inc. ("PMAC") and Reliant Mortgage Company, LC ("Reliant") (collectively, "Defendants") for contractual indemnification of and successor liability for allegedly defective loans sold by LBHI to the Federal Home Loan Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") and to trustees of trusts ("RMBS Trustees").   ("Second Amended Adversary Complaint" and "Adversary Complaint", respectively, collectively "Complaints").   LBHI seeks contractual indemnification from Defendants and also brings a claim against PMAC specifically for successor liability for Defendant PMC Bancorp ("Bancorp") and Reliant.

LBHI's action arises out of Defendants' obligations under a Loan Purchase Agreement ("LPA") and Seller's Guide that it entered into with LBHI's predecessor, Lehman Brothers Bank ("LBB").   Pursuant to the agreements, PMAC and Reliant sold certain mortgage loans to LBB, which LBB subsequently sold to Fannie Mae, Freddie Mac and the RMBS Trustees.   LBHI filed for bankruptcy on September 15, 2008 (Voluntary Petition attached hereto as **Exhibit A**, of which this Court may take judicial notice) and Fannie Mae and Freddie Mac filed final proof of claims on September 22, 2009, in the bankruptcy, alleging that certain loans sold by PMAC and Reliant to LBB contained misrepresentations.   In 2014, LBHI entered into its own private settlements with Fannie Mae and Freddie Mac.

LBHI now claims that because it settled Fannie Mae's and Freddie Mac's claims in 2014—more than six years after LBHI filed for bankruptcy and five years after Fannie Mae and Freddie Mac filed their final proof of claims—it is entitled to recover from PMAC and Reliant for its settlements.   This argument is meritless for several reasons.   First, LBHI's argument ignores and

oversimplifies its own history of improper tactics to secure recovery from countless defendants in litigation without any limits. Through improper forum shopping, LBHI (or its subsidiaries) has brought *at least seven* separate actions (suing some defendants multiple times) prior to the current action, all of which concerned the *same* agreements and allegations. In 2009, LBHI brought identical allegations against PMAC and resolved the litigation via confidential settlement. In 2010, LBHI sued Defendant Universal American Mortgage Co. ("UAMC") for the same alleged breaches of the LPA and Seller's Guide, which was dismissed and subsequently affirmed by the Tenth Circuit. In 2010, LBHI also sued Defendant PMC Bancorp ("Bancorp") for the same alleged breaches of the same agreements. Despite having collected a full judgment from Bancorp in that action, LBHI's subsidiary, Aurora Bank FSB ("Aurora") sued Bancorp in 2011 for the *same* breaches of the *same* agreements. There, via settlement, Bancorp paid to Aurora an *additional* $150,000.00 even though Aurora's allegations were identical to those brought by LBHI against Bancorp a year earlier. Aurora was not finished, and in 2013, brought identical allegations against PMAC in the District Court for the District of Colorado, which the parties privately settled. That same year, LBHI also sued PMAC in the District Court for the District of Colorado, only to strategically voluntarily dismiss the action before a court could rule against it. And again in 2015, LBHI brought the identical allegations against PMAC as well as Defendant Bancorp (for whom counsel has moved to dismiss under separate cover) in the District Court for the Central District of California, only to do the same exact thing as in the Colorado action and voluntarily dismiss the action, and once again re-file the same allegations before this Court.

In all of these actions, LBHI alleged breach of the very provisions in the LPA and Seller's Guide as those at issue here. Moreover, in the 2010 action against Bancorp, LBHI sought, like here, contractual indemnification. Yet for reasons unexplained by LBHI, LBHI chose not to

include PMAC or Reliant in that action. LBHI defends sleeping on its right to bring its claims with regard to the loans at issue here on the idea that they did not accrue until LBHI entered into its own settlement agreements with Fannie Mae and Freddie Mac in 2014, but such pretextual reasoning cannot stand. All of the loans that LBB purchased from PMAC and Reliant were re-sold by LBB at the *very latest* by September 2008, the time of LBHI's bankruptcy. As the loan sales were finalized well before 2010, LBHI indeed could have ascertained whether any of the loans had "defects" or problems. LBHI's decision not to include PMAC and Reliant during its initial litigation over alleged breaches of LPA and Seller's Guide, unjustified and prejudicial to Defendants, has led LBHI to come after PMAC not once, but multiple times, in a hasty attempt to make up for sitting on its rights. Defendants should not have to suffer the burden and expense of tardy and duplicative litigation simply because LBHI has decided (over and over again) it is not quite finished with its original litigation.

Second, LBHI's claims accrued at the time of PMAC's alleged breaches of the LPA and Seller's Guide—*not* at the time of LBHI's own settlements entered into almost a decade later. Whether viewed under New York's six-year statute of limitations period or Delaware's three-year statute of limitations period, LBHI's commencement of this action in 2016 is barred. Under both New York and Delaware law, contractual indemnification claims arising out of the sale of mortgage loans accrue *at the time of the sale of the loans*—not at the time that LBHI eventually decides to enter into its own separate settlement agreements. At the very latest, the sales had to have occurred by September 14, 2008. As such, LBHI had until September 2011 and September 2014 *at the very latest to* file its actions but sat on those rights. This action is therefore time barred.

Third, with regard to its claims for successor liability against PMAC, LBHI fails to meet its burden and state a claim. LBHI has alleged no facts to support any legal theory—let alone cause of action—that PMAC is a successor in interest to Reliant.

## II. STATEMENT OF FACTS

### A. <u>LBHI's Purchase of Mortgage Servicing Rights from PMAC and Reliant</u>

On January 22, 2004, PMAC and LBB entered into the LPA (which incorporates by reference the Seller's Guide). (Adversary Compl., ¶ 16, Ex. A; Second Amended Adversary Compl., ¶ 15, Ex. A). Reliant entered into nearly identical LPAs with LBB (which also incorporates by reference the Seller's Guide) on March 18 and April 8, 2004. The LPA and Seller's Guide provided that each agreement was to "be construed in accordance with the laws of the State of New York." (Adversary Compl., ¶ 44; Second Amended Adversary Compl., ¶ 43).

Pursuant to the LPA and Seller's Guide, Defendants sold to LBB a series of mortgage loan servicing rights. Such rights were sold—which LBHI does not dispute—between 2004 and 2007.

The LPA and Seller's Guide contained various representations and warranties, including that: (1) the information provided to LBB concerning the loans was not falsified; (2) Defendants complied with all applicable laws and regulations concerning the origination, closing, underwriting, processing, and servicing of the loans; (3) all statements made and agreements provided for loan underwriting were not falsified and contained no untrue statements; (4) no default breach existed under the mortgages being sold; (5) the loans were originated in accordance with the "Seller's Guide" under the LPA; and (6) the mortgaged properties were lawfully occupied.

**B.** **LBHI's Sale of the Mortgage Servicing Loans It Purchased to Fannie Mae, Freddie Mac, and RMBS Trustees**

LBB (and through its successor, LBHI) subsequently sold the loans subject to the LPA that it purchased from PMAC and Reliant to Fannie Mae/Freddie Mac and/or RMBS Trustees. The agreements of sale between LBHI, Fannie Mae, Freddie Mac and the RMBS Trustees contained representations and warranties that were "coextensive with those made by Defendants." (Adversary Compl., ¶ 2; Second Amended Adversary Compl., ¶ 2).

Subsequently, LBHI filed for Chapter 11 bankruptcy on September 15, 2008. (*See* Voluntary Petition, **Exhibit A**; *see also* Adversary Compl., ¶ 5; Second Amended Adversary Compl., ¶ 5). Fannie Mae, Freddie Mac and the RMBS Trustees had to file their proofs of claim to recover losses they claimed to have suffered resulting from LBHI's misrepresentation of information contained in the Loan files no later than September 22, 2009, as per the July 22, 2009 Order of the Bankruptcy Court for the Southern District of New York. (Order Approving the Proof of Claim Form attached hereto as **Exhibit B**).

Five years later, in 2014, LBHI settled the claims of Fannie Mae and Freddie Mac. (Second Amended Adversary Compl., ¶ 2).

**C.** **LBHI Brings a Blitzkrieg Of Lawsuits, All Identical In Nature**

LBHI sought to recover its losses and sued various entities in a multitude of lawsuits. The problem is not that LBHI sought to vindicate its rights, but that it has incessantly commenced litigation against the same parties over and over, attempting to defy the reality that a party cannot be held under the grip of a plaintiff indefinitely and without limit.

1. **LBHI Sues PMAC in 2009**

On May 28, 2009, LBHI filed a lawsuit against PMAC in the District Court for the Central District of California, alleging PMAC breached the LPA and Seller's Guide.  (Copy of complaint attached hereto as **Exhibit C**).  The parties resolved this case via confidential settlement.

2. **LBHI Sues Universal American Mortgage Co., LLC in 2010**

In 2010, LBHI brought a series of complaints against another defendant, UAMC, in the District Court for the District of Colorado, alleging breach of contract of the same LPA and Seller's Guide at issue here.  (Copy of complaint attached hereto as **Exhibit D**).  There, the District Court dismissed LBHI's claim as barred by the statute of limitations.  LBHI appealed this decision to the Judicial Court for the Tenth Circuit, which upheld all of the lower court's rulings.  *See Lehman Brothers Holdings, Inc. v. Univ. Amer. Mortg. Co., LLC*, 660 Fed. Appx. 554 (10th Cir. 2016). For reasons unexplained, LBHI chose not to include PMAC in this lawsuit.

3. **LBHI Sues Bancorp in 2010**

In 2010, LBHI commenced litigation against Bancorp in the District Court for the Central District of California for breach of the representations and warranties referenced in Part A., *supra*, and for contractual indemnification of LBHI for its sale of the loan servicing rights to third parties. (Copy of complaint attached hereto as **Exhibit E**).  Expanding over a three-year period, LBHI's action finally concluded in February 2013, when the court granted summary judgment in LBHI's favor and ordered Bancorp to pay $1,900,000 in damages which included contractual indemnification under the LPA.  Though it had contested the allegations against it in the 2010 action, Bancorp paid the judgment in full to LBHI.  LBHI, for reasons unexplained, again chose not to include PMAC in this action.

### 4. Aurora Bank—LBB's Subsidiary—Sues Bancorp in 2011

In 2011, Aurora, a fully-owned subsidiary of LBB, sued Bancorp in the District Court for the District of Colorado for breach of the same LPA and Seller's Guide entered into by Aurora and Bancorp on March 25, 2004. (Copy of complaint attached hereto as **Exhibit F**). Two years later, in 2013, the parties reached a settlement whereby Aurora collected $150,000.00 from Bancorp. (Settlement Agreement attached hereto as **Exhibit G**). As part of the settlement, Aurora represented that it would not sue Bancorp "with respect to any claim arising from the Lawsuit, or seek damages, contribution, or indemnity from [Bancorp]." (*See* Settlement Agreement, **Exhibit G**, at 3).

### 5. Aurora Sues PMAC in 2013

Though PMAC had settled claims with LBHI four years earlier with LBHI centering around the LPA and Seller's Guide, PMAC was faced with litigation yet again in 2013 when Aurora commenced an action against it in the District Court for the District of Colorado.[1] (Copy of complaint attached hereto as **Exhibit H**). Unsurprisingly, Aurora alleged PMAC breached representations and warranties contained in the LPA and Seller's Guide in the sale of mortgage servicing loans. Aurora entered into a confidential settlement agreement with PMAC in this action.

### 6. LBHI Sues PMAC Again in 2013

Though it had come to a mutual and voluntary settlement of its claims in the 2009 action with PMAC, and after having not included neither PMAC nor Reliant in any of its actions in 2010, LBHI decided to take another bite at the apple and sue PMAC yet again, on December 13, 2013,

---

[1] This action was originally commenced in the District Court, Douglas County, and was removed to the District Court for the District of Colorado.

in the District Court for the District of Colorado. LBHI once again alleged that PMAC breached the LPA and Seller's Guide. (Copy of complaint attached hereto as **Exhibit I**). In its complaint in that case, LBHI stated, "[t]here may be additional breaches that LBHI discovered after providing the written notice or has yet to discover which also pertains to the Loans." (*See* **Exhibit I**, ¶ 27). LBHI's own admission demonstrates its ability at that time to ascertain whether other loans (all of which would have been investigated after 2008) were subject to any breaches as well.

Realizing that the District Court for the District of Colorado would likely bar LBHI's claims under the statute of limitations, LBHI suddenly and voluntarily dismissed its action. (Notice of Dismissal Without Prejudice attached hereto as **Exhibit J**).

### 7. LBHI Sues PMAC And Bancorp Again in 2015

LBHI had a plan all along. It was not quite finished with PMAC, and decided to file yet *another* lawsuit against PMAC (and Defendant Bancorp) in the District Court for the Central District of California on June 26, 2015. (Copy of complaint attached as **Exhibit K**). As expected, LBHI brought claims of breach of contract and contractual indemnification against PMAC for alleged breaches of the LPA and Seller's Guide. This time, as a means to avoid *res judicata*, LBHI creatively argued that there were "new" mortgage servicing rights at issue that had not accrued until its settlements with Fannie Mae and Freddie Mac in 2014.

In the 2015 action, PMAC moved to dismiss LBHI's complaint against it, contending that LBHI's claims were barred based on failure to state a claim for contractual indemnification, *res judicata* and California's public policy against claim splitting, and the statute of limitations. While the motion to dismiss was pending, during a conference, the California District Court judge questioned LBHI's ability to bring a second suit based on identical claims as the 2010 action. The court stated, "[I]f at the time of the 2010 action the same underlying agreement were deemed to

have been breached, why couldn't you have had a judgment entered that would have applied to any transaction between the parties that was subject to that breach or seek to amend the judgment?" Reporter's Transcript of Proceedings, *Lehman Brothers Holdings, Inc. v. PMC Bancorp*, Jan. 25, 2016, at 41:2-8.

Moreover, at this time, the Tenth Circuit was schedule to issue its ruling, which likely would have impacted the California proceeding. Indeed, the parties even submitted supplemental briefing on the impact of that decision. *Lehman Brothers Holdings, Inc. v. PMC Bancorp*, No. 2:15-cv-04867, Dkt. Nos. 59, 60, 64, 65.

Aware of the court's doubt as to the viability of LBHI's claims, subsequent to this conference but before the court could rule on Bancorp's motion to dismiss, LBHI strategically voluntarily dismissed its action against Bancorp (and PMAC). It was of no coincidence that LBHI dismissed the action before the court could consider the parties' supplemental briefing on the impact of the Tenth Circuit's decision, which was categorically against LBHI. *See Lehman Brothers Holdings, Inc. v. Univ. Amer. Mortg. Co., LLC*, 660 Fed. Appx. 554 (10th Cir. 2016). Realizing the prejudicial burden and expense that its fruitless litigation had on PMAC, LBHI actually agreed to pay a portion of PMAC's attorneys' fees and costs under Federal Rule of Civil Procedure 41.

### 8. LBHI Sues Bancorp, PMAC and Reliant in the Current Action

Though multiple courts had indicated that LBHI's claims likely could not stand, LBHI was not one to be deterred. Armed with a determination to find a jurisdiction favorable to its views, LBHI intended to (and did) drag PMAC through the mud once again (along with Bancorp and this time Reliant as well) in filing the current litigation before this Court, alleging its fully litigated claim for contractual indemnification under the LPA for mortgage servicing rights that were

purchased by LBHI well before its original 2010 action. And tellingly, in its Complaints here, LBHI does not specify how its claims differ in any material way from those brought in: the 2009 action against PMAC, the 2010 action against Bancorp, the 2010 action against UAMC, the 2013 action against PMAC, and the 2015 action against PMAC and Bancorp. LBHI's inability to make a real differentiation, other than naming different loans that were all sold under the same terms and contract, depicts the simple reality that LBHI is improperly re-litigating the same agreements, the same alleged breaches, and the same basis of all of its lawsuits.

## III.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must provide sufficient facts that, if "accepted as true, . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible on its face, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility requirement requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Indeed, where a plaintiff pleads facts "merely consistent "with a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

Further, under Rule 8 of the Federal Rules of Civil Procedure, a complaint must make a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of such entitlement. *Id.*, at 555, n.3. Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Where a pleading contains "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While a court must accept as true properly pled *facts* for purposes of a motion to

dismiss, it must also disregard legal conclusions. *See Weinreb v. Xerox Bus. Servs., LLC Health and Welfare Plan*, 323 F. Supp. 3d 501, 510 (S.D.N.Y. 2018) ("In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. However, this principle is 'inapplicable to legal conclusions,' which, like the complaint's 'labels and conclusions' are disregarded.") (citing *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 555).

## IV.  ARGUMENT

### A. **LBHI's Claims Are Barred Under *Res Judicata***

New York law prohibits a party from brining a claim that was either already brought or could have been brought in a prior litigation. *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, 209 F.R.D. 323, 339 (S.D.N.Y. 2002) ("Claim-splitting is generally prohibited by the doctrine of res judicata. . .").  *See also Weitz v. Wagner*, No. CV-07-1106 (ERK)(ETB), 2008 WL 5605669, at *6, n.5 (E.D.N.Y. Jul. 24, 2008) ("Defendant cannot now seek to recover additional monies arising out of the same loan as permitting her to do so would amount to 'claim splitting,' which is prohibited under New York law."); *Sannon v. Stamm Assoc., Inc. v. Keefe, Bruyette & Woods, Inc.*, 68 A.D.3d 678, 678 (1st Dept 2009) (noting "[t]he doctrine of res judicata may be invoked in instances of claim splitting to prohibit a plaintiff from bringing an action that would preclude him from bringing a second action for the reside of the claim" and allowing claim to proceed only because it had not matured at time of prior litigation); *Lazides v. Kouzounas*, 7 A.D.3d 676, 776 (2d Dept 2004) ("The rule prohibiting claim splitting prohibits two actions on the same claim or parts thereof."); *Stoner v. Culligan, Inc.*, 32 A.D.2d 170, 171 (3d Dept 1969) ("the doctrine of former adjudication being based on the principle that the public interest demands that a party not be heard a second time on a cause of action or issue that ***he once had an opportunity***

***to litigate***") (emphasis added).  *See also Cowan v. Ernest Codelia, P.C.*, No. 98 Civ. 5548 (JGK),

2001 WL 856606, at *7 (S.D.N.Y. Jul. 30, 2001) (suggesting that had defendants objected to the

plaintiff's claim splitting, it could assert a defense of res judicata).

In determining whether *res judicata* bars a claim, New York courts look to whether the

claims in the current action arose out of the same factual grouping (transaction) as those in the

prior litigation.  *See Matter of Reilly v. Reid*, 45 N.Y.2d 24, 29 (1978); *O'Brien v. City of Syracuse*,

54 N.Y.2d 353, 357 (1981) ("[O]nce a claim is brought to a final conclusion all other claims arising

out of the same transaction or series of transactions are barred, even if based upon different theories

or if seeking a different remedy."); *Ramsey v. Busch*, 19 F. Supp. 2d 73, 83-84 (W.D.N.Y. 1998)

("New York law follows a transactional approach to res judicata which bars the re-litigation of not

only matters that were litigated between parties in a preceding action, but also **any matters that**

**could have been litigated in that action**") (emphasis added).  Under New York law, *res judicata*

casts a wide net and bars even claims not made in the prior action, so long as they are related to

those made and could have been made.  *See Marinelli Assocs. v. Helmsley Noyes Co., Inc.*, 265

A.D.2d 1, 5 (1st Dept 2000) ("**the doctrine bars … claims that could have been litigated**, if they

arose from the same transaction or series of transactions.") (emphasis added); *Ramsey*, 19 F. Supp.

2d at 83-84 (unless "there is a material difference between the requisite elements of proof and

evidence needed to sustain recovery in each action[,]" claim splitting is not tolerated under New

York law).  In *Stoner*, the court noted that "[a] comparison of plaintiff's complaints in each of the

two actions is the best approach to a determination regarding the sameness of the causes of action

therein."  32 A.D.2d at 172.

The central issue present here—Defendants' alleged breach of the LPA and Seller's

Guide—has been fully litigated by LBHI in all of its actions.  LBHI had every opportunity to bring

not only PMAC and Reliant, but also the very mortgage loans at issue here in its prior actions. The doctrine of *res judicata* protects defendants like PMAC and Reliant from having to bear the burden of a plaintiff's own regret or mistake in failing to litigate. LBHI's unjustified choice not to bring its claims until now must bear consequences, and its claims are fully barred by *res judicata*.

Defendants are aware of this Court's decision denying dismissal of LBHI's claims against Universal American Mortgage Company, LLC ("UAMC"), which held that LBHI's claims were not barred by *res judicata* because LBHI's current action related to different loans than those that were the subject of the 2010 action. *See Memorandum Decision and Order Denying Universal American Mortgage Company, LLC's and Eagle Mortgage Holdings, LLC's Joint Supplemental Motion to Dismiss on Unique Issues*, Adv. Proc. No. 16-01019, ECF No. 689, at 14-15. However, it is Defendants' position that *res judicata* bars LBHI's claims here. LBHI indeed could have ascertained the "facts, circumstances, alleged defects, and asserted damages" at the time of the 2010 action because all sales involving the loans at issue here were already completed by that time. *See, e.g., id.* While the loans in particular may have involved unique facts and circumstances, all that is required under New York law is for the loans to be **related to the claims** brought in the 2010 action, which they undoubtedly were.

A review of LBHI's Complaints from all of its prior actions and the current action will show the undeniable similarities and overlap. *See, e.g., Stoner*, 32 A.D.2d at 172. Here, the loans at issue were all sold in accordance with the terms in the LPA and the Seller's Guide. The loans in every prior action were all sold in accordance with the terms of the LPA and Seller's Guide. Here, LBHI seeks contractual indemnification under the LPA for the sale of defective loans. In its 2010 action against Bancorp, LBHI sought contractual indemnification under the LPA for the

sale of defective loans, and in every other action it brought, LBHI brought claims pursuant to the LPA and Seller's Guide at issue here. LBHI hides behind its own settlement agreements from 2014 in arguing that it could not have brought its current claims earlier, but it has not pleaded or shown in any way why the "defective" nature of the loans could only become apparent from the 2014 settlement agreements, when proofs of claims as to those defective loans were also available since 2009. In addition to those two notice events, LBHI admitted in its complaint against PMAC in 2013 that "there may be additional breaches that LBHI discovered after providing the written notices (of PMAC's purported breaches of the loans at issue there) or has yet to discover which also pertain to the Loans." LBHI filed multiple complaints against PMAC (and Bancorp) beginning in 2009, conceding that *there may be additional defects they have yet to discover*, but did not bring claims for those loans until 2016. Prior to 2016, LBHI filed suit multiple times against PMAC and Bancorp, admitted it should investigate for further breaches, and even had notices of claims filed against it in 2009. Nothing stopped LBHI from reviewing all of its loans at any of these points other than its own lack of diligence. PMAC and Bancorp should not be punished for LBHI's failure to bring *all* of its claims when it should have.

Moreover, LBHI has already brought multiple litigations against Defendant PMAC, only to voluntarily dismiss several upon the realization that its claims would likely face dismissal based on the statute of limitations and *res judicata*, and to re-file in a more favorable venue to its position. LBHI has undeniably engaged in forum shopping, causing PMAC an enormous burden of time and expense. It would be highly prejudicial to allow LBHI continue in its path, especially when LBHI had multiple opportunities to have brought claims over the loans at issue here. Worse, in allowing LBHI to continue to pursue Defendants in this manner, there is no telling when Defendants will ever be free of LBHI's grip, as nothing will prevent LBHI from bringing even

further litigation against Defendants under the guise of new or different loans sold pursuant to the LPA.

**B.  LBHI's Claim for Contractual Indemnification Is Barred By The Statute Of Limitations**

Independent of *res judicata*'s bar on LBHI's, dismissal here is essential as the applicable statute of limitations for its claims has expired.  The LPA and Seller's Guide identify New York choice of law.  Under New York Civil Practice Law and Rules § 202, "[w]hen a nonresident sues on a cause of action accruing outside New York," the action must be timely filed under both the New York limitations period and the limitations period of "the jurisdiction where the cause of action accrued."  *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 484 (1999).  "When an alleged injury is purely economic" as to a corporate plaintiff, the claim accrues in the corporate plaintiff's state of incorporation or its principal place of business.  *Osbow Calcining USA Inc. v. Amer. Indus. Partners*, 96 A.D.3d 646, 651 (1st Dept 2012) (internal citations omitted).

LBB is the entity that entered into the LPA and Seller's Guide with Defendants, and thus, its principal place of business (and not that of LBHI) controls.  *Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 416 (2010); *see also Windsearch, Inc. v. Delafrange*, 90 A.D.3d 1223, 1224 (3d Dept 2011).  LBB is a federal savings bank with its home office designated as Wilmington, Delaware.  (*See* LBB's Federal Stock Charter, attached hereto as **Exhibit L**).  A federal savings bank's principal place of business "is the State in which the institution maintains its home office."  *Lehman Bros. Holdings Inc. v. Univ. Amer. Mortgage Co..*, No. 13-cv-00087-CMA-MJW, 2014 U.S. WL 1715365, at *3 (D. Colo. Apr. 30, 2014) (citing 12 C.F.R. §§ 545.91(a), 1263.18(a)(1), (b)); *see also* 12 U.S.C. § 1464(x).  Accordingly, Delaware is LBB's principal place of business and the place where LBHI's claim accrued.

As noted above, New York's borrowing statute requires a plaintiff's cause of action to be timely filed under *both* New York law and the law of the principal place of business, here Delaware. LBHI's action was not timely filed under *either* New York or Delaware law.

1. **LBHI's Claims Are Barred Under Delaware's Three-Year Statute of Limitations Period for Breach of Contract Claims**

LBHI's claim for indemnification arises out of the sale of loans sold by Defendants to LBB. LBHI claims that its indemnification claim against Bancorp was triggered in January and February 2014, at the time that it entered into settlement agreements with Fannie Mae and Freddie Mac. (Second Amended Adversary Compl., ¶ 2). LBHI's argument has already been rejected. In its decision affirming dismissal of LBHI's complaint, the Tenth Circuit applied the case of *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346 (2d Cir. 1986), which held that claims pled as breach of indemnity should really be treated as breach of contract, since Yemen, the plaintiff, only had to pay third parties and seek indemnification because of a breach of contract. The court held, "[L]ike *Yemen*, Lehman Holdings had to pay these third parties only because Universal American breached its contract with Lehman Holdings…. As a result, we conclude that the causes of action accrued when Universal American and Standard Pacific sold the defective loans with the representations and warranties." *Lehman Brothers Holdings, Inc. v. Univ. Amer. Mortg. Co., LLC*, 660 Fed. Appx. 554, 568-69 (10th Cir. 2016).

Similarly, Delaware courts have held that claims for indemnity accrue **from the date that the underlying cause of action giving rise to the indemnification demand accrues**:

> The plaintiff does not dispute but tacitly admits that a cause of action based on breach of warranty accrues at the time of sale of the article concerning which the warranty was given. It contends, however, that its cause of action is not based upon a breach of warranty but is based upon a right of 'indemnity' under which Talcott is entitled to recover for an amount which it paid and which should have been paid by Aurora. The plaintiff contends that the right of action in such case accrues at the date of payment and the Statute of Limitations begins to run at such time.

> Indemnity, I think, is not a substantive cause of action existing of and by itself but is a right or legal principle which comes into existence as a concomitant right with reference to an independent cause of action to which it is attached.

*L.E. Talcott & Sons, Inc. v. Aurora Corp.*, 176 F. Supp. 783, 785-86 (D. Del. 1959), *supplemented* 181 F. Supp. 581 (D. Del. 1960) (emphasis added) *aff'd sub nom.* 280 F.2d 128 (3d Cir. 1960).

In *Aircraft Serv. Int'l, Inc. v. TBI Overseas Holdings, Inc.*, the court rejected the plaintiff's argument that the breach alleged was the breach of the duty to indemnify rather than the breach of the underlying alleged misrepresentations.   C.A. No. N13C-06-265 WCC CCLD, 2014 WL 4101660, at *3 (Del. Super. Aug. 5, 2014).   The court held:

> The Court finds, however, that Defendant's duty to indemnify does not arise unless there is an underlying breach of the representations and warranties.  The only action through which Plaintiff can recover for breaches of the representations and warranties is through indemnity; therefore, **the contractual limitations period set for such breaches [of representations and warranties] must apply to the indemnity action**.

*Id.* (emphasis added).

Delaware law requires a breach of contract claim to be brought within three years of the time of the alleged breach.  *See In re Marvel Entm't Group, Inc.*, 273 B.R. 58, 80 (D. Del. 2002) (citing Del. C. § 8106).  With regard to the sale of mortgage loans, Delaware courts have concluded that lawsuits based on alleged breaches arising from the sale of mortgage loans accrue **at the time of the sale**.  *Lehman Bros. Holdings, Inc. v. Universal Amer. Mortg. Co., LLC*, 660 Fed. Appx. 554, 555-56 (10th Cir. 2016) (citing *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 5140-CS, 2012 WL 3201139 (Del. Ch. Aug. 7, 2012)).

LBHI chose not to include the dates of the loan sales in its complaints.  However, the Court may take judicial notice of the fact that LBHI filed for bankruptcy protection on September 15, 2008 (*See* Voluntary Petition, **Exhibit A**) and therefore could not have acquired any loans after that date.  Thus, all loan sales necessarily occurred prior to the bankruptcy filing in September

2008, leaving LBHI until, at the very latest, September 2011 to bring this action. However, LBHI did not do so.

## 2. LBHI's Claims Are Barred Under New York's Six-Year Statute of Limitations Period for Breach of Contract Claims

Because LBHI's claims are barred under Delaware's statute of limitations, it fails to satisfy the requirements of New York's borrowing statute and the inquiry ends here. In any event, LBHI's claims are also barred under New York's statute of limitations.

Like under Delaware law, with regard to the sale of mortgage loans, New York courts have concluded that actions based on alleged breaches arising from the sale of mortgage loans accrue **at the time of the sale**. New York "does not recognize pre-suit remedial provisions as constituting separate promises which can serve as the basis for independent causes of action." *Lehman XS Trust, Series 2006-4N v. GreenPoint Mortg. Funding*, 991 F. Supp. 2d 472, 477 (S.D.N.Y. 2014). "[U]nder New York law, claims which are subject to pre-suit cure or demand requirements accrue **when the underlying breach occurs**, not when the demand is subsequently made or refused." *Id.* (emphasis added); *see also Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*, No. 02-42 Civ. 3232, 2003 WL 548868, at *2-3 (S.D.N.Y. Feb. 25, 2003); *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 112 A.D.3d 522, 522-23 (1st Dept 2013), *leave to appeal granted*, 23 N.Y.3d 906 (2014).

Thus, under New York law, LBHI's claim for indemnification accrues from the date of the sale of the loans, the date that the alleged breaches occurred. Under New York law, LBHI had six years to bring a claim against Bancorp. N.Y. CPLR 213(2) (McKinney 2019). As discussed in Part IV.C.1., *supra*, none of the loans at issue could have been sold after September 2008. Assuming that any of the subject loans here was sold, at the very latest, in September 2008, LBHI

had until September 2014 to bring this action. Its failure to do so warrants dismissal under New York's statute of limitations.

3. **If the Court believes that claims accrued when LBHI suffered a loss, that loss occurred at the latest in 2009 because LBHI became liable for a fixed sum to a third-party – its attorneys – to pay their fees in responding to the proofs of claims filed by the RMBS trustees**

The first loss that would have triggered indemnification under Section 711 of the Seller's Guide occurred in 2009 when LBHI paid its attorneys to respond to the RMBS proofs of claims, which time-bars these adversary claims which were filed nine years later. "It is generally said that a cause of action for indemnity accrues on the date payment is made by the party seeking indemnity." *Bay Ridge Air Rights, Inc. v. State* 44 N.Y.2d 49, 54 (1978).

In ruling on the Universal American Mortgage Company, LLC's, et al.'s motion to dismiss, "this Court held that LBHI's claim for indemnification under section 711 of the Seller's Guide did not accrue until the date of the Fannie Mae Settlement, when its liability to a third party was fixed or payment was made. As such, only at that time did the six-year statute of limitations begin to run." *In Re Lehman Brothers Inc. v. Universal American Mortgage Co., LLC, et al.*, 593 B.R. 166, 181-182 (Bankr. S.D.N.Y. 2018). That ruling ignores that LBHI had incurred attorney's and other costs in 2009 that were fixed, when the RBMS proofs of claims were filed, and that the date the indemnification obligation was triggered was 2009.

Section 711 states in relevant part, "Seller shall indemnify Purchaser and Purchaser's designee, from and hold them harmless against ***all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or Loan Purchase agreement[.]"*** (Seller's Guide,

Section 711 [emphasis added].) In paragraphs 37-39, LBHI admits that the claims made by the RMBS trustees, "caused LBHI to incur losses, judgments, costs, expenses, attorneys' fees, and liability" and that "LBHI was forced to defend against such allegations and eventually settle with the RMBS Trustees." By holding that only the settlement triggered indemnification, the Court overlooks that LBHI incurred liability as to its attorneys, incurred liability as to the Court for the fees that it had to pay, and incurred liability as to third parties (process servers, court reporters, etc.), that began in 2009 when the RMBS proofs of claims and defense of those claims occurred. LBHI further admits that it seeks its attorney's fees – a loss purportedly incurred from the alleged breach – through its complaint. (Adversary Compl. ¶ 97; Second Amended Adversary Compl. ¶ 97.)

Since LBHI first incurred a loss in 2009, the statute of limitations began to run then. Nine years later – after the statute of limitation expired, LBHI filed its adversary complaint as to the RMBS claims. The fact that LBHI incurred further liability when those settlements were entered in 2016 is of no effect. The damages for that claim – indemnification under Section 711 – occurred starting in 2009. LBHI could have amended its claim to add any additional damages, reserved its rights to seek additional damages should they continue when the suits could have been pending, but did not. All of the damages, whether attorney's fees, court reporter fees, or RMBS settlement payments, all arose out of the same event – the filing of the 2009 proofs of claims.

Accordingly, LBHI claims are time-barred.

### C. **LBHI's Claims For Successor Liability Against PMAC Must Be Dismissed**

LBHI contends that PMAC is further liable to it as successor in interest of Defendant Bancorp and Defendant Reliant. (Adversary Compl., ¶ 98; Second Amended Adversary Compl., ¶ 98). This contention is nothing more than yet another creative attempt by LBHI to find a way to

collect more money from PMAC. LBHI's claim fails for three reasons. First, LBHI's underlying claims against Bancorp and Reliant for contractual indemnification are barred by collateral estoppel, *res judicata* and the statute of limitations (*see* Part IV.A., B., *supra*).[2] Second, with regard to Reliant, LBHI fails to allege any facts whatsoever—let alone facts supporting a claim for successor liability—and LBHI's claim thus fails on its face. Third, with regard to Bancorp, LBHI similarly fails to state a claim for successor liability, as its "support" for its claim is nothing more than its own legal theories or conclusions, which this Court need not accept as true for purposes of a Motion to Dismiss.

### 1. LBHI's Claim for Successor Liability Cannot Stand Because Its Underlying Claims Against Bancorp and Reliant Are Barred

"Successor liability is not a claim to which a statute of limitations attaches. Rather, it constitutes an additional ground upon which the liability sought through the underlying cause of action … may be established." *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 2000 WL 1843282, at *5 (W.D.N.Y. Nov. 2, 2000). Thus, if the underlying cause of action is "barred by the statute of limitations, so too [are] the claims based on successor liability." *Cruden v. Bank of New York*, 1990 WL 251023, at *2 (S.D.N.Y. 1990).

LBHI contends that PMAC is liable for Defendants Bancorp's and Reliant's alleged misrepresentations to LBB of information in the Loan files, in violation of the LPA and Seller's Guide. (Adversary Compl., ¶ 98; Second Amended Adversary Compl., ¶ 98). For the reasons discussed above, LBHI's claims against Bancorp and Reliant are barred by *res judicata*. Independently, LBHI's claims are also barred against Bancorp and Reliant by the statute of limitations as prescribed by the New York borrowing statute, as the loans were sold prior to

---

[2] In addition to *res judicata* and the statute of limitations, LBHI's claims are further barred against Defendant Bancorp by collateral estoppel. Defendant Bancorp has moved to dismiss under separate cover, and a full discussion concerning collateral estoppel is contained therein. (*See* Bancorp Mot. to Dismiss, at Part IV.A).

LBHI's bankruptcy petition filed on September 15, 2008. (*See* Part IV.B.1. *supra*). And lastly, with regard to Bancorp, LBHI's claims are barred on the separate basis of collateral estoppel. (*See* Bancorp Mot. to Dismiss, at Part IV.A). Because LBHI's claims for contractual indemnification against Bancorp and Reliant are barred, it cannot bring any claim against PMAC for successor liability.

## 2. LBHI Utterly Fails to State A Claim For Successor Liability Against PMAC as to Reliant

The determination of successor liability arguably falls under New York law, as the underlying LPA and Seller's Guide are governed by New York law. (Adversary Compl., ¶ 44; Second Amended Adversary Compl., ¶ 44). However, PMAC is incorporated in the State of California and Reliant is incorporated in the State of Massachusetts.

Whether viewed under New York, California, or Massachusetts law, courts do not readily impose successor liability and analyze such claims consistently. "It is the general rule that a corporation which acquires the assets of another is not liable for the torts of its predecessor." *Schumacher v. Richards Shear Co., Inc.*, 59 N.Y.2d 239, 244 (1983). *See also Butler v. Adoption Media*, 486 F. Supp. 2d 1022, 1063 (N.D. Ca. 2007) ("Under California law, when one corporation sells or transfers all its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor unless one of four exceptions applies."); *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 556 (Mass. 2008) ("Most jurisdictions, including Massachusetts, follow the traditional corporate law principle that the liabilities of a selling predecessor corporation are not imposed upon the successor corporation which purchases its assets…"). There are four exceptions to this general rule: "A corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the

selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations."

*Schumacher*, 59 N.Y.2d at 245.  *See also Butler*, 486 F. Supp. 2d at 1063; *Milliken*, 451 Mass. at

556.  LBHI fails to allege that any of these exceptions exist.

LBHI does not actually plead *any* facts to establish successor liability against PMAC on

behalf of Reliant.  LBHI offers a conclusory blanket statement that "PMAC Lending agreed to

merge with Reliant and expressly and/or impliedly assumed Reliant's obligations, debts, and

liabilities, including Reliant's contractual obligations under the Agreement between Reliant and

LBHI or LBHI's assignor."  (*see* Adversary Compl., ¶ 91; Second Amended Adversary Compl., ¶

91).  LBHI goes no further than its boilerplate accusation and expects that because it uses terms in

the definition of successor liability, that it should apply here.  LBHI's "allegation" fails as a matter

of law.  *See Oliver v. Rio Acquisition Partners, LLC*, No. 1:18-cv-1794-GHW, 2019 WL 801952,

at *1 (S.D.N.Y. Feb. 21, 2019) ("Because Plaintiff's complaint contains little more than boilerplate

recitations of the elements of the claims asserted, Plaintiff has failed to plausibly state a claim upon

which relief can be granted…"); *Enny v. City of Poughkeepsie*, No. 06 CV 15198 (VB), 2012 WL

2866280, at *2 (S.D.N.Y. Apr. 5, 2012) (dismissing claim that failed to go beyond boilerplate

allegations) LBHI does not allege an actual merger—just a conclusory statement devoid of any

substance—that PMAC "agreed to merge" with Reliant.  *Id*.  Similarly, LBHI does not allege an

actual agreement whatsoever—express or implied—between PMAC and Reliant, let alone one

whereby PMAC agreed to assume Bancorp's tort liability.

To allege successor liability on a theory of mere continuation, LBHI is required to show

that PMAC "is not simply the business of the original corporation which continues, but the

corporate entity itself."  *Colon v. Multi-Pak Corp.*, 477 F. Supp. 2d 620, 626 (S.D.N.Y. 2007).

Indeed, the mere continuation exception "refers to a corporate reorganization … where only one

corporation survives the transaction; the predecessor corporation must be extinguished." *Schumacher*, 59 N.Y. 2d at 245. *See also Milliken*, 451 Mass. at 556 ("When analyzing a claim for successor liability under theories of 'de facto merger' or 'mere continuation' of the predecessor, our focus is on whether one company has become another for the purpose of eliminating its corporate debt."). LBHI does not even come close to meeting its burden. LBHI mentions no facts to describe Reliant's business, let alone in comparison with PMAC. LBHI does not—and cannot—allege that PMAC exists simply to eliminate Reliant's corporate debt or that it only exists as Reliant.

LBHI otherwise does not plead any fraud between PMAC and Reliant and thus cannot meet the fourth exception. For these reasons, LBHI's claim against PMAC as successor in interest for Reliant must be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendants PMAC and Reliant respectfully request that this Court grant an Order dismissing LBHI's Complaints in their entirety with prejudice and for such other and further relief as this Court deems just and proper.

Dated: August 22, 2019
    New York, New York             Respectfully submitted,

                                     By: /s/ Erika L. Shapiro

                                     BROWN NERI SMITH & KHAN, LLP
                                     11601 Wilshire Blvd., Ste. 2080
                                     Los Angeles, CA 90025
                                     T: (310) 593-9890
                                     erika@bnsklaw.com

                                     *Attorneys for Defendant*,
                                     PMAC Lending Services, Inc.,
                                     and Reliant Mortgage Company, LLC

# EXHIBIT A

| United States Bankruptcy Court Southern District of New York | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br><br>**Lehman Brothers Holdings Inc.** | Name of Joint Debtor (Spouse) (Last, First, Middle):<br><br>**N/A** |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): **N/A** |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all): **EIN # 13-3216325** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all): **N/A** |
| Street Address of Debtor (No. and Street, City, and State):<br><br>**745 Seventh Avenue**<br>**New York, New York**<br><br>ZIP CODE **10019** | Street Address of Joint Debtor (No. and Street, City, and State): **N/A**<br><br><br>ZIP CODE |
| County of Residence or of the Principal Place of Business: **New York** | County of Residence or of the Principal Place of Business: **N/A** |
| Mailing Address of Debtor (if different from street address): **N/A**<br><br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address): **N/A**<br><br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br><br>ZIP CODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check **one** box.)<br><br>☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☒ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)<br><br>_____ | Nature of Business<br>(Check **one** box.)<br><br>☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other<br><br>**Financial Services**<br><br>**-Exempt Entity**<br>(Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box)<br><br>☐ Chapter 7    ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 9<br>☒ Chapter 11    ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br>☐ Chapter 12<br>☐ Chapter 13<br><br>**Nature of Debts** (Check one box)<br><br>☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."    ☒ Debts are primarily business debts.<br><br>**Chapter 11 Debtors**<br>**Check one box:**<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br><br>**Check if:**<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.<br>- - - - - - - - - - - - - - - - - - -<br>**Check all applicable boxes:**<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(B). |
|---|---|---|

**Filing Fee** (Check one box)

☒ Full Filing Fee attached

☐ Filing Fee to be paid in installments (applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.

☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

☒ Debtor estimates that funds will be available for distribution to unsecured creditors.

☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

Estimated Number of Creditors (**Consolidated with affiliates**)

| ☐ 1-49 | ☐ 50-99 | ☐ 100-199 | ☐ 200-999 | ☐ 1,000-5,000 | ☐ 5,001-10,000 | ☐ 10,001-25,000 | ☐ 25,001-50,000 | ☐ 50,001-100,000 | ☒ Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets (**Consolidated with affiliates**)

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☒ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities (**Consolidated with affiliates**)

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☒ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

| Voluntary Petition<br>*(This page must be completed and filed in every case)* | Name of Debtor(s): **Lehman Brothers Holdings Inc.** | | |
|---|---|---|---|

| **All Prior Bankruptcy Case Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | | |
|---|---|---|---|
| Location<br>Where Filed:     **N/A** | Case Number: **N/A** | | Date Filed: **N/A** |
| Location<br>Where Filed:     **N/A** | Case Number: **N/A** | | Date Filed: **N/A** |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| | (To be completed if debtor is an individual<br>whose debts are primarily consumer debts.) |
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by § 342(b). |
| ☒    Exhibit A is attached and made a part of this petition. | X _____<br>    Signature of Attorney for Debtor(s)          Date |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐    Yes, and Exhibit C is attached and made a part of this petition.

☒    No. **(see exhibit attached hereto)**

**Exhibit D**

**NOT APPLICABLE**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐        Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐        Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
**(Check any applicable box.)**

☒        Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐        There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐        Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
*(Check all applicable boxes)*
**NOT APPLICABLE**

☐        Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐        Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐        Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐        Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(1)).

| Voluntary Petition | Name of Debtor(s): **Lehman Brothers Holdings Inc.** |
|---|---|
| *(This page must be completed and filed in every case)* | |

## Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X_____
Signature of Debtor

X_____
Signature of Joint Debtor

_____
Telephone Number (if not represented by attorney)

_____
Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only **one** box.)

☐   I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐   Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X_____
(Signature of Foreign Representative)

_____
(Printed Name of Foreign Representative)

_____
Date

**Signature of Attorney\***

X  _/s/_ **Harvey R. Miller**
Signature of Attorney for Debtor(s)

**Harvey R. Miller, Esq.**
**Richard P. Krasnow, Esq.**
**Lori R. Fife, Esq.**
**Shai Y. Waisman, Esq.**
**Jacqueline Marcus, Esq.**
Printed Name of Attorney for Debtor(s)

**Weil, Gotshal & Manges LLP**
Firm Name

**767 Fifth Avenue**
Address

**New York, New York 10153**

**212-310-8000**
Telephone Number

**September 14, 2008**
Date

\* In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

_____
Address

x_____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X  _/s/_ **Ian T. Lowitt**
Signature of Authorized Individual

**Ian T. Lowitt**
Printed Name of Authorized Individual

**Chief Financial Officer**
Title of Authorized Individual

**September 14, 2008**
Date

## <u>CERTIFICATE OF RESOLUTIONS</u>

I, Ian T. Lowitt, a duly authorized officer of Lehman Brothers Holdings Inc., a Delaware corporation (the "<u>Company</u>"), hereby certify that at a special meeting of the Board of Directors (the "<u>Board</u>") for the Company, duly called and held on September 14, 2008, the following resolutions were adopted in accordance with the requirements of the Delaware General Corporation Law and that these resolutions have not been modified or rescinded and are still in full force and effect as of the current date.

RESOLVED, that in the judgment of the Board, it is desirable and in the best interests of the Company, its creditors, employees, and other interested parties that a petition be filed by the Company seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

RESOLVED, that each of the Chief Executive Officer, the Chief Financial Officer, the Chief Legal Officer, and the Chief Operating Officer (each such officer or designee being an "<u>Authorized Person</u>" and all being the "<u>Authorized Persons</u>") are hereby authorized, empowered and directed, in the name, and on behalf of the Company, to execute and verify petitions and amendments thereto under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Case</u>") and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of New York at such time or in such other jurisdiction as such Authorized Person executing the same shall determine.

RESOLVED, that the law firm of Weil, Gotshal & Manges LLP is hereby engaged as attorneys for the Company under a general retainer in the Chapter 11 Case, subject to any requisite bankruptcy court approval.

RESOLVED, that each Authorized Person, and such other officers of the Company as the Authorized Persons shall from time to time designate, and any employees or agents (including counsel) designated by or directed by any such officers, be, and each hereby is, authorized, empowered and directed, in the name and on behalf of the Company, to execute and file all petitions, schedules, motions, lists, applications, pleadings and other papers, and to take and perform any and all further acts and deeds which he or she deems necessary, proper or desirable in connection with the Chapter 11 Case, with a view to the successful prosecution of such case.

RESOLVED, that each Authorized Person, and such other officers of the Company as the Authorized Persons shall from time to time designate, be, and each hereby is, authorized, empowered and directed, in the name and on behalf of the Company, to engage and retain all assistance by legal counsel, accountants, financial advisors, restructuring advisors, and other professionals in connection with the Chapter 11 Case, with a view to the successful prosecution of such case.

RESOLVED, that each Authorized Person, and such other officers of the Company as the Authorized Persons shall from time to time designate, and any employees or agents (including counsel) designated by or directed by any such officers, be, and each hereby is, authorized, empowered and directed, in the name and on behalf of

the Company, to cause the Company to enter into, execute deliver, certify, file and/or record, and perform such agreements, instruments, motions, affidavits, applications for approvals or ruling of governmental or regulatory authorities, certificates or other documents, and to take such other action as in the judgment of such person shall be or become necessary, proper, and desirable to effectuate a successful reorganization of the business of the Company.

RESOLVED, that in connection with the Chapter 11 Case, each Authorized Person, and such other officers of the Company as the Authorized Persons shall from time to time designate, be, and each hereby is, authorized and empowered on behalf of and in the name of the Company, to negotiate, execute, deliver, and perform or cause the performance of any notes, guarantees, security agreements, other agreements, consents, certificates or instruments as such person considers necessary, appropriate, desirable, or advisable to effectuate borrowings or other financial arrangements, such determination to be evidenced by such execution or taking of such action.

RESOLVED, each Authorized Person, and such other officers of the Company as the Authorized Persons shall from time to time designate, be, and each hereby is, authorized, empowered and directed, in the name and on behalf of the Company, and any such actions heretofore taken by any of them are hereby ratified, confirmed and approved in all respects: (i) to negotiate, execute, deliver and/or file any and all of the agreements, documents and instruments referenced herein, and such other agreements, documents and instruments and assignments thereof as may be required or as such officers deem appropriate or advisable, or to cause the negotiation, execution and delivery thereof, in the name and on behalf of the Company, as the case may be, in such form and substance as such officers may approve, together with such changes and amendments to any of the terms and conditions thereof as such officers may approve, with the execution and delivery thereof on behalf of the Company by or at the direction of such officers to constitute evidence of such approval, (ii) to negotiate, execute, deliver and/or file, in the name and on behalf of the Company, any and all agreements, documents, certificates, consents, filings, and applications relating to the resolutions adopted and matters ratified or approved herein and the transactions contemplated thereby, and amendments and supplements to any of the foregoing, and to take such other action as may be required or as such officers deem appropriate or advisable in connection therewith, and (iii) to do such other things as may be required, or as may in their judgment be appropriate or advisable, in order to effectuate fully the resolutions adopted and matters ratified or approved herein and the consummation of the transactions contemplated hereby.

RESOLVED, that, any and all past actions heretofore taken by officers of the Company in the name and on behalf of the Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved.

IN WITNESS WHEREOF, I have set my hand this 14th day of September, 2008.

/s/ Ian T. Lowitt
Ian T. Lowitt
Chief Financial Officer, Controller and
Executive Vice President

## Schedule 1

### 30 Largest Unsecured Claims (Excluding Insiders) [1]

Pursuant to Local Bankruptcy Rule 1007-2(a)(4), the following lists the Debtors' thirty largest unsecured claims, on a consolidated basis, excluding claims of insiders as defined in 11 U.S.C. § 101.

| *(1)* *Name of creditor and complete mailing address, including zip code* | *(2)* *Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted* | *(3)* *Nature of claim (trade debt, bank loan, government contract, etc.)* | *(4)* *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff [2]* | *(5)* *Estimated amount of claim as of July 2, 2008 (if secured also state value of security)* |
|---|---|---|---|---|
| Citibank, N.A., as indenture trustee, and The Bank of New York Mellon Corporation (with respect to the Euro Medium Term Notes only), as indenture trustee, under the Lehman Brothers Holdings Inc. Senior Notes | Citibank, NA<br>399 Park Avenue<br>New York, NY 10043<br>attn: Wafaa Orfy<br>1-800-422-2066<br>212-816-5773<br>wafaa.m.orfy@citigroup.com<br><br>The Bank of New York<br>One Canada Square<br>Canary Wharf, London E14 5AL<br>attn: Raymond Morison<br>44-207-964-8800<br>Raymond.morison@bnymellon.com | Bond Debt | | Approximately $138 billion |

---

[1] The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. All claims are subject to customary offsets, rebates, discounts, reconciliations, credits, and adjustments, which are not reflected on this schedule.

[2] All claims are subject to reconciliations, credits, and adjustments, which are not reflected on this list.

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address, including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[2]* | *Estimated amount of claim as of July 2, 2008 (if secured also state value of security)* |
| The Bank of New York Mellon Corporation, as indenture trustee under the Lehman Brothers Holdings Inc. Subordinated Debt | The Bank of New York Mellon Corporation 101 Barclay Street New York, NY 10286 attn: Chris O'Mahoney 1-212-815-4107 1-212-815-4000 (fax) chris.omahoney@bnymellon.com | Bond Debt | | Approximately $12 billion |
| The Bank of New York Mellon Corporation, as indenture trustee under the Lehman Brothers Holdings Inc. Junior Subordinated Debt | The Bank of New York Mellon Corporation 101 Barclay Street New York, NY 10286 attn: Chris O'Mahoney 1-212-815-4107 1-212-815-4000 (fax) chris.omahoney@bnymellon.com | Bond Debt | | Approximately $5 billion |
| AOZORA 1-3-1 Kudan-Minami, Chiyoda-ku, Tokyo, 102-8660 | Koji Nomura Joint General Manager Financial Institutions Div. Aozora Bank, Ltd. 1-3-1 Kudan-Minami, Chiyoda-ku, Tokyo, 102-8660 Tel: 81-3-5212-9631 Fax: 81-3-3265-9810 k4.nomura@aozorabank.co.jp | Bank Loan | | $463,000,000 |
| Mizuho Corporate Bank, Ltd. Global Syndicated Finance Division 1-3-3, Marunouchi, Chiyoda-ku Tokyo, Japan 100-8210 | Timothy White Managing Director - Head of Originations Corporate and Investment Banking Department 1251 Avenue of the Americas, 32nd Floor New York, NY 10020-1104 212-282-3360 212-282-4487 (fax) timothy.white@mizuhocbus.com | Bank Loan | | $289,000,000 |

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address, including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[2]* | *Estimated amount of claim as of July 2, 2008 (if secured also state value of security)* |
| Citibank N.A. Hong Kong Branch Financial Institutions Group Asia Pacific, 44/F Citibank Tower, 3 Garden Rd, Central, Hong Kong | Michael Mauerstein MD - FIG 388 Greenwich Street New York, NY 10013 212-816-3431 | Bank Loan | | $275,000,000 |
| BNP Paribas 787 7th Avenue New York, NY 10019 | Frank Sodano BNP Paribas 787 7th Ave. New York, NY 10019 212-841-2084 | Bank Loan | | $250,000,000 |
| Shinsei Bank Ltd. 1-8, Uchisaiwaicho 2-Chome Chiyoda - Ku, Tokyo 100-8501 Japan | Tetsuhiro Tomata General Manager Financial Institutions Business Div. 2 Shinsei Bank Ltd. 1-8, Uchisaiwaicho 2-Chome Chiyoda - Ku, Tokyo 100-8501, Japan Tel: 81-3-5511-5377 Fax: 81-3-4560-2834 tetsuhiro.toomata@shinseibank.com | Bank Loan | | $231,000,000 |
| UFJ Bank Limited 2-7-1,Marunouchi Chiyoda-ku, TKY 100-8388 Japan | Stephen Small Vice President Head of Financial Institutions Bank of Tokyo-Mitsubishi UFJ Trust Company 1251 Avenue of the Americas New York, New York 10020-1104 212-782-4352 212-782-6445 (fax) ssmall@us.mufg.jp | Bank Loan | | $185,000,000 |

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| **Name of creditor and complete mailing address, including zip code** | **Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted** | **Nature of claim (trade debt, bank loan, government contract, etc.)** | **Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[2]** | **Estimated amount of claim as of July 2, 2008 (if secured also state value of security)** |
| Sumitomo Mitsubishi Banking Corp 13-6 Nihobashi-Kodenma-Cho, Chuo-ku, Tokyo, 103-0001 | Yas Imai Senior Vice President Head of Financial Institutions Group Sumitomo Mitsui Banking Corporation 277 Park Avenue New York, NY 10172 212-224-4031 fax: 212 224 4384 yasuhiko_imai@smbcgroup.com | Bank Loan | | $177,000,000 |
| Svenska Handelsbanken 153 E. 53rd St 37th Floor New York, NY 10022 | Gail Doulgas 212-326-2754 | Letter of Credit | | $140,610,543 |
| KBC Bank 125 W. 55th St. New York, NY 10019 | Denis Graham 212-258-9487 | Letter of Credit | | $100,000,000 |
| Mizuho Corporate Bank Ltd. 1-3-3, Marunouchi Chiyoda-ku, TKY 100-8210 Japan | Timothy White Managing Director - Head of Originations Corporate and Investment Banking Department 1251 Avenue of the Americas, 32nd Floor New York, NY 10020-1104 212-282-3360 | Bank Loan | | $93,000,000 |
| Shinkin Central Bank 8-1, Kyobashi 3-Chome Chuo-Ku, Tokyo 104-0031, Japan | Shuji Yamada Deputy General Manager Financial Institutions Dept. Shinkin Central Bank 3-7, Yaesu 1-chome, Chuo-Ku Tokyo 104-0028, Japan Tel: 81-3-5202-7679 Fax: 81-3-3278-7051 shuji.yamada@e-scb.co.jp | Bank Loan | | $93,000,000 |

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address, including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[2]* | *Estimated amount of claim as of July 2, 2008 (if secured also state value of security)* |
| The Bank of Nova Scotia Singapore Branch 1 Raffles Quay #20-01 One Raffles Quay North Tower Singapore 048583 | George Neofitidis Director Financia Institutions Group One Liberty Plaza, New York New York 10006 212-225-5379 fax: 212-225-5254 george_neofitidis@scotiacapital.com | Bank Loan | | $93,000,000 |
| Chuo Mitsui Trust & Banking 3-33-1 Shiba, Minato-ku, Tokyo, 105-0014 | Noriyuki Tsumura Chuo Mitsui Trust & Banking 3-33-1 Shiba, Minato-ku, Tokyo, 105-0014 Tel: 81-3-5232-8953 Fax: 81-3-5232-8981 noriyuki_tsumura@chuomitsui.jp | Bank Loan | | $93,000,000 |
| Lloyds Bank 1251 Avenue of the Americas, 39th Fl., P.O. Box 4873 New York, NY 10163 | Matthew Tuck 212-930-8967 212-930-5098 (fax) mtuck@lloydstsb-usa.com | Letter of Credit | | $75,381,654 |
| Hua Nan Commercial Bank, Ltd 38 Chung-King South Road Section 1 Taipei, Taiwan | Hua Nan Commercial Bank, Ltd 38 Chung-King South Road Section 1 Taipei, Taiwan | Bank Loan | | $59,000,000 |
| Bank of China, New York Branch 410 Madison Avenue New York, New York 10017 Attention: Chief Loan Officer | William Warren Smith Chief Loan Officer, Deputy General Manager Bank of China, New York Branch 410 Madison Avenue New York, NY 10017 212-935-3101 ext 264 212-758-3824 (fax) wsmith@bocusa.com | Bank Loan | | $50,000,000 |

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address, including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[2]* | *Estimated amount of claim as of July 2, 2008 (if secured also state value of security)* |
| Nippon Life Insurance Co. 1-6-6, Marunouchi, Chiyoda-ku, Tokyo, 100-8288 | Takayuki Murai Deputy General Manager Corporate Finance Dept. #1 Nippon Life Insurance Co. 1-6-6, Marunouchi, Chiyoda-ku, Tokyo, 100-8288 Tel: 81-3-5533-9814 Fax: 81-3-5533-5208 murai24234@nissay.co.jp | Bank Loan | | $46,000,000 |
| ANZ Banking Group Limited, 18th Floor Kyobo Building 1 Chongro 1 Ku, Chongro Ka, Seoul Korea | Michael Halevi Director, Financial Institutions ANZ Banking Group 1177 Avenue of Americas New York, NY 10036 212-801-9871 212-801-9715 (fax) | Bank Loan | | $44,000,000 |
| Standard Chartered Bank One Madison Avenue New York, NY 10010 - 3603 | Bill Hughes SVP-FIG Standard Chartered Bank One Madison Avenue New York, NY 10010 - 3603 212-667-0355 212-667-0273 (fax) bill.hughes@us.standardchartered.com | Bank Loan | | $41,000,000 |
| Standard Chartered Bank 1 Madison Ave. New York, NY 10010 | Bill Hughes 212-667-0355 212-667-0251 (fax) bill.hughes@us.standardchartered.com | Letter of Credit | | $36,114,000 |
| First Commercial Bank Co., Ltd, New York Agency 750 3rd Avenue, 34th floor New York, NY 10017 | Jason C. Lee Deputy General Manager First Commercial Bank Co., Ltd, New York Agency 34th floor, 750, 3rd Avenue, New York, NY 10017 212-599-6868 212-599-6133 (fax) i82240@firstbank.com.tw | Bank Loan | | $25,000,000 |

| (1) Name of creditor and complete mailing address, including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[2] | (5) Estimated amount of claim as of July 2, 2008 (if secured also state value of security) |
|---|---|---|---|---|
| Bank of Taiwan, New York Agency 100 Wall Street, 11th Floor New York, NY 10005 | Eunice S.J. Yeh Senior Vice President & General Manager 100 Wall Street, 11th Floor New York, NY 10005 212-968-0580 212-968-8370 (fax) bankoftaiwan@botnya.com | Bank Loan | | $25,000,000 |
| DnB NOR Bank ASA Postal address: NO-0021, Oslo, Norway Office: Stranden 21, Aker Brygge | Rolf Nagel Dahl SVP International Financial Institutions Postal address: NO-0021, Oslo, Norway Office: Stranden 21, Aker Brygge Phone: 47 22 94 87 46 fax: 47 22 48 29 84 rolfnagel.dahl@dnbnor.no | Bank Loan | | $25,000,000 |
| Australia and New Zealand Banking Group Limited, Melbourne Office Level 6, 100 Queen Street Victoria Melbourne, VIC 3000 Australia | Michael Halevi Director, Financial Institutions ANZ Banking Group 1177 Avenue of Americas New York, NY 10036 212-801-9871 212-801-9715 (fax) Michael.Halevi@anz.com | Bank Loan | | $25,000,000 |
| Australia National Bank 1177 Avenue of the Americas, 6th Fl. New York, NY 10036 | Michael Halevi 212-801-9871 | Letter of Credit | | $12,588,235 |
| National Australia Bank 245 Park Ave. 28th, Fl. New York, NY 10167 | Rosemarie O'Canto 212-916-3575 | Letter of Credit | | $10,294,163 |

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address, including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[2]* | *Estimated amount of claim as of July 2, 2008 (if secured also state value of security)* |
| Taipei Fubon Bank, New York Agency 100 Wall Street, 14th Floor, NY NY 10005 212 968 9888  Head Office: No. 36, Sec 3, Nanking, East Rd, Taipei, Taiwan | Sophia J.H. Jing FVP & General Manager Taipei Fubon Bank, New York Agency 100 Wall Street, 14th Floor, New York, NY 10005 212-968-9888 212-968-9800 (fax) sophia.jing@fubonny.com | Bank Loan | | $10,000,000 |

**DECLARATION UNDER PENALTY OF PERJURY:**

    I, the undersigned authorized officer of Lehman Brothers Holdings Inc., named as the debtor in this case (the "<u>Debtor</u>"), declare under penalty of perjury that I have read the foregoing list of creditors holding the thirty largest unsecured claims against the Debtor and that it is true and correct to the best of my information and belief.

Dated:  September 14, 2008

             /s/ Ian T. Lowitt
            Signature

            By:   Ian T. Lowitt

            Title:  Chief Financial Officer

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
In re                             :        **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**   :      **08-_____ (__)**
:
           **Debtor.**             :
:
-------------------------------------------------------------------x

# LIST OF CREDITORS[1]

       Contemporaneously herewith, the Debtor has filed a motion requesting a waiver of the requirement for filing a list of creditors pursuant to sections 105(a), 342(a), and 521(a)(1) of title 11 of the United States Code, Rules 1007(a) and 2002(a), (f), and (l) of the Federal Rules of Bankruptcy Procedure, and Rule 1007-1 of the Local Bankruptcy Rules for the Southern District of New York, and General Orders M-133, M-137, M-138, and M-192 of the United States Bankruptcy Court for the Southern District of New York. The Debtor proposes to furnish its list of creditors to a claims and noticing agent to be engaged by the Debtor.

       The list of creditors will contain only those creditors whose names and addresses were maintained in the Debtor's database or were otherwise ascertainable by the Debtor. The schedule of liabilities to be subsequently filed should be consulted for a list of the Debtor's creditors that is comprehensive and current as of the date of the commencement of this case.

---

[1] The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtor.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                        :
In re                                   :        **Chapter 11 Case No.**
                                        :
**LEHMAN BROTHERS HOLDINGS INC.**       :        **08-_____ (__)**
                                        :
          **Debtor.**                   :
                                        :
-------------------------------------------------------------x

## EXHIBIT "A" TO VOLUNTARY PETITION

     The Debtor has securities registered under Section 12 of the Securities and Exchange Act of 1934. The Debtor's SEC file number is 333-134553.

1. The following consolidated financial data is the latest available information and refers to the Debtor's condition as of May 31, 2008.

    Total assets                                 $     639 billion

    Total debts (including debts listed in 2.c., below)     $     613 billion

    a. Debt securities held by more than 500 holders

| | | | | Approximate number of holders |
|---|---|---|---|---|
| secured ☐ | unsecured ☒ | subordinated ☐ | $110.553 billion | Greater than 500 |
| secured ☐ | unsecured ☒ | subordinated ☒ | $12.625 billion | Greater than 500 |
| secured ☐ | unsecured ☒ | subordinated ☒ | $5.004 billion | Greater than 500 |
| secured ☐ | unsecured ☐ | subordinated ☐ | | |
| | | total: | $128.182 billion | |

    b. Number of shares of preferred stock

        1) 5.94% Cumulative Preferred Stock, Series C: up to 5.0 million
        2) 5.67% Cumulative Preferred Stock, Series D: up to 4.0 million
        3) 6.50% Cumulative Preferred Stock, Series F: up to 12.0 million
        4) Floating Rate Convertible Preferred Stock, Series G: up to 5.2 million
        5) 7.95% Non-Convertible Perpetual Preferred Stock, Series J: up to 66.0 million
        6) 6.375% Preferred Securities, Series K: up to 12.0 million
        7) 6.375% Preferred Securities, Series L: up to 12.0 million
        8) 6.00% Preferred Securities, Series M: up to 16 million
        9) 6.24% Preferred Securities, Series N: up to 8 million
        10) 7.25% Non-Cumulative Perpetual Convertible Preferred Stock, Series P: up to 4.0 million
        11) 8.75% Non-Cumulative Mandatory Convertible Preferred Stock, Series Q: up to 2.0 million

    c. Number of shares of common stock      694,401,926 (outstanding)[1]

---

[1] This number is as of June 30, 2008

2.  Brief description of Debtor's business:

    The Debtor is a financial services company which, together with its direct and indirect subsidiaries, is the fourth largest investment bank in the United States, serving the financial needs of corporations, governments and municipalities, institutional clients and high net worth individuals worldwide with business activities organized in three segments: Capital Markets, Investment Banking, and Investment Management.

3.  List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of Debtor:

| Beneficial Owner | Percentage of Outstanding Common Stock |
|---|---|
| (1) AXA and related parties | 7.25 |
| (2) ClearBridge Advisors, LLC and related parties | 6.33 |
| (3) FMR LLC and related parties | 5.87 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                    :
**In re**                                           :          **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**                   :          **08-_____ (__)**
                                                    :
                            **Debtor.**             :
                                                    :
-------------------------------------------------------------x

## EXHIBIT "C" TO VOLUNTARY PETITION

1.  Identify and briefly describe all real or personal property owned by or in possession of the debtor that, to the best of the debtor's knowledge, poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

    The Debtor does not believe it owns or possesses any real or personal property that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety. To the extent the Debtor has an interest in such property, to the best of the Debtor's knowledge, the Debtor is in compliance with all applicable laws, including, without limitation, all environmental laws and regulations.

2.  With respect to each parcel of real property or item of personal property identified in question 1, describe the nature and location of the dangerous condition, whether environmental or otherwise, that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

    The Debtor is not aware of any real or alleged dangerous conditions existing on or related to any real or personal property owned or possessed by the Debtor.

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
:
In re                                                   :          **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :          **08-13555 (JMP)**
:
Debtors.                               :          **(Jointly Administered)**
:
:
-------------------------------------------------------------------x

## ORDER PURSUANT TO SECTION 502(b)(9) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3003(c)(3) ESTABLISHING THE DEADLINE FOR FILING PROOFS OF CLAIM, APPROVING THE FORM AND MANNER OF NOTICE <u>THEREOF AND APPROVING THE PROOF OF CLAIM FORM</u>

Upon the motion, dated May 26, 2009 (the "<u>Motion</u>"),[1] of Lehman Brothers

Holdings Inc. and its affiliates, as debtors and debtors in possession in the above referenced

chapter 11 cases (collectively, the "<u>Debtors</u>"),[2] pursuant to sections 502(b)(9) of the Bankruptcy

Code and Bankruptcy Rule 3003(c)(3) seeking an order (i) establishing the deadline for filing

proofs of claim, (ii) approving the form and manner of notice thereof and (iii) approving the

proof of claim form, all as more fully set forth in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed thereto in the Motion.

[2] Lehman Brothers Holdings Inc. (08-13555); LB 745 LLC (08-13600); PAMI Statler Arms LLC (08-13664); Lehman Brothers Commodity Services Inc. (08-13885); Lehman Brothers Special Financing Inc. (08-13888); Lehman Brothers OTC Derivatives Inc, (08-13893); Lehman Brothers Derivatives Products Inc. (08-13899); Lehman Commercial Paper Inc. (08-13900); Lehman Brothers Commercial Corporation (08-13901); Lehman Brothers Financial Products Inc. (08-13902); Lehman Scottish Finance L.P. (08-13904); CES Aviation LLC (08-13905); CES Aviation V LLC (08-13906); CES Aviation IX LLC (08-13907); East Dover Limited (08-13908); Luxembourg Residential Properties Loan Finance S.a.r.l. (09-10108); BNC Mortgage LLC (09-10137); Structured Asset Securities Corporation (09-10558); LB Rose Ranch LLC (09-10560); and LB Kalakaua Owners LLC (09-12516).

the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the

Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of

the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and

due and proper notice of the Motion having been provided to the Notice Parties; and it appearing

that no other or further notice need be provided; and the Court having determined that the relief

sought in the Motion is in the best interests of the Debtors, its creditors and all parties in interest;

and upon the record of the hearings held on June 24, 2009 and June 29, 2009; and the Court

having determined that the legal and factual bases set forth in the Motion establish just cause for

the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Rule 3003(c)(3) of the Bankruptcy Rules, and except

as otherwise provided herein, **September 22, 2009, at 5:00 p.m. (prevailing Eastern Time)** is

established as the deadline (the "Bar Date") for each person or entity (including, without

limitation, each individual, partnership, joint venture, corporation, estate, trust and governmental

unit) to file proofs of claim (each a "Proof of Claim") based on prepetition claims (as defined in

section 101(5) of the Bankruptcy Code) against the Debtors; and it is further

ORDERED that all Proofs of Claim filed against the Debtors must substantially

conform to the form attached as Exhibit B hereto ("Proof of Claim Form") and must be received

on or before the Bar Date by the official noticing and claims agent in the Debtors' chapter 11

cases, Epiq Bankruptcy Solutions, LLC ("Epiq") or the Court. The original Proof of Claim Form

should be sent to the following address:

If by overnight mail, to:

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims
Processing
757 Third Avenue, 3rd Floor
New York, New York 10017

If by hand delivery, to:

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims
Processing
757 Third Avenue, 3rd Floor
New York, New York 10017

       or

Clerk of the United States Bankruptcy Court
Attn: Lehman Brothers Holdings Claims
Processing
One Bowling Green
New York, New York 10004

If by first-class mail, to:

Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5286
New York, New York  10150-5076

; and it is further

ORDERED that Proofs of Claim will be deemed timely filed only if **actually received** by Epiq or the Court on or before the Bar Date; and it is further

ORDERED that neither the Court nor Epiq shall be required to accept Proofs of Claim sent by facsimile, telecopy, or electronic mail transmission; and it is further

ORDERED that the following persons or entities are **not** required to file a Proof of Claim on or before the Bar Date:

(a)    any person or entity whose claim is listed on the Schedules and (i) whose claim is **not** described as "disputed," "contingent," or "unliquidated," and (ii) who does not dispute the amount, priority or nature of the claim set forth in the Schedules;

(b)    any person or entity whose claim has been paid in full by the Debtors;

3

(c) any person or entity that holds an interest in the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided**, **however**, that interest holders who wish to assert claims (as opposed to ownership interests) against the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the Bar Date, unless another exception identified herein applies;

(d) any person or entity that holds a claim that has been allowed by an order of this Court entered on or before the Bar Date;

(e) any holder of a claim for which a separate deadline is fixed by this Court;

(f) any holder of a claim who has already properly filed a Proof of Claim with the Clerk of the Court or Debtors' court-approved claims agent, Epiq, against the Debtors utilizing a claim form which substantially conforms to the Proof of Claim Form; **provided**, **however**, any holder that has filed a Proof of Claim based on a Derivative Contract or a Guarantee on or prior to the Bar Date, is required to amend such Proof of Claim to conform to the procedures set forth in this Motion for the filing of Proofs of Claims based on Derivative Contracts and Guarantees;

(g) any holder of any claim solely against (i) Lehman Brothers Inc. or (ii) any other entity affiliated with the Debtors that is involved in a bankruptcy, insolvency proceeding or similar proceeding, in a foreign jurisdiction; **provided**, **however**, if such claim is based on an obligation guaranteed by a Debtor, the holder of such claim must file a Proof of Claim on or before the Bar Date;

(h) any holder of a security listed on the Master List of Securities available on the Debtors' website http://www.lehman-docket.com (the "Master List of Securities") due to the fact that the indenture trustee for such securities will file a global proof of claim on behalf of all holders of securities issued thereunder; (Wilmington Trust Company, US Bank National Association, and the indenture trustee for each of the other securities included on the Master List of Securities, each will file a global proof(s) of claim on behalf of all holders of securities for which it is identified as Indenture Trustee on the Master List of Securities); **provided**, **however**, that security holders who wish to assert claims against the Debtors arising out of or relating to the sale, issuance, or distribution of a security, must file Proofs of Claim on or before the Bar Date, unless another exception identified herein applies; and

      (i)     any entity included on the Exempt Entities List available on the Debtors' website http://www.lehman-docket.com (the "Exempt Entities List") and any subsidiary for which the entity on the Exempt Entities List owns at least a fifty percent equity interest in such subsidiary, specifically excluding any subsidiary that is in a bankruptcy, insolvency or similar proceeding in a foreign jurisdiction and Lehman Brothers Inc.;

and it is further

      ORDERED that, any holder of a security that is not listed on the Master List of Securities may request that a security be added to the Master List of Securities by completing the form entitled "Inquiry Regarding Security Not on Master List of Securities" available on the Debtors' website http://www.lehman-docket.com and submitting it to the Debtors as directed on such form on or prior to August 5, 2009.  The Debtors will investigate the inquiry and within 15 days of the receipt of such inquiry, the Debtors will (x) add the security to the Master List of Securities (if appropriate) or (y) provide an explanation solely to the party submitting such inquiry as to why the security will not be added to the Master List of Securities.  The Master List of Securities listed on the website shall be **final** as of August 20, 2009; and it is further

      ORDERED that any security that is listed on the Master List of Securities is not a Derivative Contract and the holders of such security are not required to complete the Derivative Questionnaire on account of such security; and it is further

      ORDERED that a holder (or any other party authorized under the Bankruptcy Code and the Bankruptcy Rules to submit a Proof of Claim on behalf of such holder) of a security that is guaranteed by a Debtor shall be required to file a Proof of Claim against such Debtor based on the Guarantee and complete the Guarantee Questionnaire; and it is further

      ORDERED that any person or entity that holds a claim arising from the rejection of an executory contract or unexpired lease must file a Proof of Claim based on such rejection by

the later of (i) the Bar Date and (ii) the date which is forty-five (45) days following the effective

date of such rejection or be forever barred from doing so; and it is further

ORDERED that each Proof of Claim must: (i) be written in the English language;

(ii) be denominated in lawful currency of the United States; (iii) conform substantially with the

Proof of Claim Form; (iv) state the name and case number of the specific Debtor against which it

is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include

supporting documentation or an explanation as to why documentation is not available; and (vii)

be signed by the claimant or by an authorized agent of the claimant; and it is further

ORDERED that for the purposes of this Order, the term "Derivative Contract"

shall mean any contract that is any of (i) a "swap agreement" as such term is defined in section

101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section

101(25) of the Bankruptcy Code; provided that a cash-market purchase or sale of a security or

loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement

cycle for the relevant market), exchange-traded future or option, securities loan transaction,

repurchase agreement in respect of securities or loans, and any guarantee or reimbursement

obligations which would otherwise be included in the definition of "swap agreement" or

"forward contract" pursuant to the definition of such terms in the Bankruptcy Code shall not be

considered a Derivative Contract for the purposes of this definition; provided further that, any

notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not

limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman

Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and

Lehman Brothers (Luxembourg) Equity Finance S.A.) shall not be considered "Derivatives

Contracts" within the meaning of this Order; and it is further

6

ORDERED that each holder of a claim against a Debtor based on amounts owed

pursuant to any Derivative Contract must:

(a)    on or before the Bar Date, fill-out and return a Proof of Claim in the same
manner as all other claimants;

(b)    check the appropriate box on the Proof of Claim;

(c)    on or before **October 22, 2009, at 5:00 pm (prevailing Eastern Time)**
(the "Questionnaire Deadline"), log on to http://www.lehman-claims.com,
enter the unique identification number included (the "Unique ID
Number") on the Proof of Claim mailed to such holder by the Debtors and
complete the electronic Derivative Questionnaire, substantially in the form
attached as Exhibit C hereto (the "Derivative Questionnaire"); and

(d)    on or before the Questionnaire Deadline, electronically upload supporting
documentation on the website (as required in the Derivative
Questionnaire), rather than attaching such documents to the Proof of
Claim;

and it is further

ORDERED that each holder of a claim against a Debtor based on amounts owed

pursuant to a promise, representation or agreement to answer for the payment of some debt or the

performance of some duty in case of the failure of another person or entity who is liable in the

first instance (a "Guarantee") must:

(a)    on or before the Bar Date fill-out and return a Proof of Claim in the same
manner as all other claimants;

(b)    on or before the Bar Date check the appropriate box on the Proof of
Claim;

(c)    on or before the Questionnaire Deadline (**October 22, 2009, at 5:00 pm
(prevailing Eastern Time)**), log on to http://www.lehman-claims.com,
enter the Unique ID Number included on the Proof of Claim mailed to
such holder by the Debtors and complete the electronic Guarantee
Questionnaire, substantially in the form attached as Exhibit D hereto (the
"Guarantee Questionnaire"); and

(d)    on or before the Questionnaire Deadline, electronically upload supporting
documentation and evidence of the underlying claim amount on the

website, as required in the Guarantee Questionnaire, rather than attaching such documents to the Proof of Claim;

and it is further

ORDERED that, each holder of a claim against a Debtor based on a Guarantee by a Debtor of the obligations of a non-Debtor entity under a Derivative Contract must:

(a)     on or before the Bar Date, fill-out and return a Proof of Claim in the same manner as all other claimants;

(b)     check both boxes on the Proof of Claim that such claim is based on a Derivative Contract and based on a Guarantee;

(c)     on or before the Questionnaire Deadline (**October 22, 2009, at 5:00 pm (prevailing Eastern Time)**), log on to http://www.lehman-claims.com, enter the Unique ID Number of the Proof of Claim and complete the electronic Guarantee Questionnaire and electronically upload supporting documentation on the website (as required in the Guarantee Questionnaire), rather than attaching such documents to the Proof of Claim; and

(d)     on or before the Questionnaire Deadline, log on to http://www.lehman-claims.com, enter the Unique ID Number of the Proof of Claim and complete the electronic Derivative Questionnaire and electronically upload supporting documentation on the website (as required in the Derivative Questionnaire), rather than attaching such documents to the Proof of Claim;

and it is further

ORDERED that if a holder is required to complete the Derivative Questionnaire or Guarantee Questionnaire, such holder need only submit the documentation required by the applicable Questionnaire by the Questionnaire Deadline and need not submit the documentation required by the applicable Questionnaire with such holder's Proof of Claim by the Bar Date; and it is further

ORDERED that if a holder files a Proof of Claim based on a Derivative Contract or a Guarantee that does not have a Unique ID Number, such holder shall comply with the

procedures set forth in the prior three paragraphs, except that instead of entering a Unique ID

Number on the website, such holder shall instead indicate on the website that they filed a Proof

of Claim that did not have a Unique ID Number; and it is further

ORDERED that entities affiliated with the Debtors that are the subject of a

bankruptcy, insolvency proceeding or similar proceeding in a foreign jurisdiction that file a claim

against a Debtor shall not be required to complete the Derivative Questionnaire; and it is further

ORDERED that the information submitted on the website http://www.lehman-

claims.com in respect of Derivative Contracts and Guarantees will not be accessible on the

website other than by the party that submitted such information, the Debtors, the Creditors'

Committee and their respective advisors and counsel; and it is further

ORDERED that the website http://www.lehman-claims.com and the information

submitted thereon will remain accessible by the party that submitted such information following

the Bar Date and the information submitted on the website will be subject to the same rules and

standards as amendments and supplements to proofs of claim; and it is further

ORDERED that if a holder asserts a claim against more than one Debtor or has

claims against different Debtors, a separate Proof of Claim must be filed with respect to each

Debtor; and it is further

ORDERED that pursuant to Bankruptcy Rule 3003(c)(2), any holder of a claim

against the Debtors who is required, but fails to file a proof of such claim in accordance with the

Bar Date Order on or before the Bar Date, specifically, including filling out the Derivative

Questionnaire or the Guarantee Questionnaire and uploading required information to the website

http://www.lehman-claims.com (which Derivative Questionnaire or Guarantee Questionnaire

shall not be required to be completed until the Questionnaire Deadline), specifying the applicable

9

Debtor and other requirements set forth herein, shall be forever barred, estopped and enjoined

from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto),

and the Debtors and their property shall be forever discharged from any and all indebtedness or

liability with respect to such claim, and such holder shall not be permitted to vote to accept or

reject any chapter 11 plan filed in these chapter 11 cases, or participate in any distribution in the

Debtors' chapter 11 cases on account of such claim or to receive further notices regarding such

claim; and it is further

ORDERED that notice of the entry of this Order and of the Bar Date in

substantially the form attached as <u>Exhibit A</u> hereto (the "<u>Bar Date Notice</u>"), which Bar Date

Notice are approved in all respects, shall be deemed good, adequate, and sufficient notice if it is

served by deposit in the United States mail, first class postage prepaid, on or before July 8, 2009

upon:

| | |
|---|---|
| (a) | the U.S. Trustee; |
| (b) | attorneys for the Creditors' Committee; |
| (c) | all known holders of claims listed on the Schedules at the addresses stated therein; |
| (d) | all (i) current employees of the Debtors, (ii) all former employees of the Debtors terminated after September 1, 2006 and (iii) all of the Debtors' retirees; |
| (e) | all parties known to the Debtors as having potential claims against the Debtors' estates; |
| (f) | all counterparties to the Debtors' executory contracts and unexpired leases listed on the Schedules at the addresses stated therein; |
| (g) | all parties to litigation with the Debtors (as of the date of the entry of the Bar Date Order); |
| (h) | the Internal Revenue Service for the district in which the case is pending and, if required by Bankruptcy Rule 2002(j), the Securities and Exchange |

Commission and any other required governmental units (a list of such agencies is available from the Office of the Clerk of the Court); and

(i)    all parties who have requested notice pursuant to Bankruptcy Rule 2002; and it is further

ORDERED that the Debtors shall mail one or more Proof of Claim Forms (as appropriate) to all parties listed in the preceding paragraph, each with a Unique ID Number printed on the form, together with instructions for filing a Proof of Claim, except that the Proof of Claim Form shall be omitted from any mailing to holders of LBHI securities that are on the Master List of Securities; and it is further

ORDERED that, pursuant to Bankruptcy Rules 2002(f) and (*l*), the Debtors shall publish the notice substantially in the form of the Bar Date Notice once in The New York Times (International Edition), The Wall Street Journal (International Edition) and The Financial Times, each at least forty-five (45) days prior to the Bar Date, which publication is hereby approved in all respects and shall be deemed good, adequate, and sufficient publication notice of the Bar Date and the procedures for filing Proofs of Claim in these cases; and it is further

ORDERED that, if the Debtors amend or supplement their Schedules subsequent to the date hereof, the Debtors shall give notice of any amendment or supplement to the holders of claims affected thereby, and such holders shall be required to file Proofs of Claim in respect of their claims prior to the later of (i) the Bar Date and (ii) thirty (30) days from the date on which such notice is given, or be forever barred from doing so; and it is further

ORDERED that Proofs of Claims may only be filed by parties that are authorized to file such claims in accordance with Bankruptcy Code and the Bankruptcy Rules; and it is further

ORDERED that any current or former affiliate of the Debtors, other than affiliates

listed on the Exempt Entities List, that has a claim (as defined in section 101(5) of the

Bankruptcy Code) against any of the Debtors that arose prior to the applicable Commencement

Date must file a Proof of Claim in accordance with this Order or be forever barred from doing

so; and it is further

ORDERED that (other than stipulations, agreements and orders entered into by

the Debtors with JPMorgan Chase Bank, N.A, Pacific Investment Management Company LLC

and the Internal Revenue Service) the Debtors shall not enter into any stipulations or agreements

that modify the procedures set forth in this Order for the filing of Proofs of Claim based on

Derivative Contracts (including the completion of the Derivative Questionnaire) without either

the consent of the Creditors' Committee or the approval of the Court; and it is further

ORDERED that notwithstanding anything to the contrary contained in this Order, the

following procedures apply to the filing of any and all claims (including any claims under a related

Guarantee) against the Debtors arising from securities issued by the Debtors or any of the Debtors'

affiliates outside of the United States, solely to the extent identified on http://www.lehman-

docket.com under the heading "Lehman Programs Securities" (any such security, a "Lehman

Program Security") as of July 17, 2009 at 5:00 pm (prevailing Eastern Time):

(a)   **November 2, 2009, at 5:00 p.m. (prevailing Eastern Time)** is established as the deadline (the "Securities Programs Bar Date") for each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, trust and governmental unit) (the "Filing Entities" and each a "Filing Entity") to file proofs of claim based on any Lehman Program Security;

(b)   the Debtors, in coordination with the Creditors' Committee, are authorized to, and will, create a notice of the Securities Programs Bar Date (the "Securities Programs Bar Date Notice") and a proof of claim form (the "Securities Programs Proof of Claim Form") as necessary to provide notice of the Securities Programs Bar Date;

(c)     the Debtors are authorized to, and will, translate the Securities Programs Bar Date Notice into relevant foreign languages; it being understood that claims submitted in respect of any Lehman Program Security must: (i) be written in the English language; (ii) to the extent a claim amount is reflected thereon, be denominated in lawful currency of the United States using the exchange rate as applicable as of September 15, 2008; (iii) conform substantially with the Securities Programs Proof of Claim Form; (iv) state the name and case number of the specific Debtor against which it is filed; (v) identify the International Securities Identification Number ("ISIN") and/or Committee on Uniform Securities Identification Procedures ("CUSIP") number, as applicable, for each Lehman Program Security; (vi) include either a Euroclear electronic instruction reference number or a Clearstream blocking reference number; (vii) be signed by the Filing Entity or by an authorized agent of the Filing Entity; and (viii) be submitted in hard copy form with an original signature;

(d)     the Debtors shall publish on http://www.lehman-docket.com a proposed list of "Lehman Programs Securities," to include at a minimum issuances under (i) that certain U.S.$100,000,000,000 Euro Medium Term-Note Program, (ii) that certain U.S.$4,000,000,000 German Note Issuance Programme, as described in a certain Base Prospectus, dated August 28, 2007, (iii) the Swiss Certificates Programme, as described in a certain Programme Prospectus, dated November 29, 2007 and (iv) the Italian Inflation Linked Notes, dated December 2005 – December 2017, which list will include the ISIN and/or CUSIP, as applicable, for each Lehman Program Security, no later than July 6, 2009 at 5:00 pm (prevailing Eastern Time), and the Debtors, the Creditors' Committee, the account holders or holders of any Lehman Program Security that identify themselves in writing to the Debtors, and the trustees for Lehman Brothers Treasury Co. B.V. and other applicable foreign proceedings will work in good faith to agree on a list of "Lehman Programs Securities" by no later than July 13, 2009;

(e)     in the event there are any disputes concerning the contents of the list of "Lehman Program Securities," the Court may consider such disputes on an expedited basis with notice to the disputing parties;

(f)     notice of the entry of this Order, of the Bar Date and of the Securities Programs Bar Date in the form of the Securities Programs Bar Date Notice shall be deemed good, adequate, and sufficient notice if (i) it is  served by deposit in the United States mail, first class postage prepaid, and/or delivered by electronic mail on or before July 27, 2009 upon (1) the U.S. Trustee, (2) Euroclear, Clearstream and the Depository Trust Company and other similar clearing systems, as applicable (collectively, the "Clearing Systems") and (3) each of the issuers (and their representative or administrator) of the Lehman Program Securities (the "Issuers"), and (ii) the Debtors request that the Clearing Systems and the Issuers promptly distribute the Securities Program

13

Bar Date Notice to the account holders and/or holders of any Lehman Program Security;

(g)    pursuant to Bankruptcy Rules 2002(f) and (l), the Debtors shall publish notice (translated into the appropriate language, if necessary) substantially in the form of the Securities Programs Bar Date Notice at least once in one leading national newspaper in each of Italy, Spain, France, Germany, The Netherlands (in English), Switzerland, Luxembourg, United Kingdom, Hong Kong, Mexico, Belgium, Austria, Greece, Brazil, Argentina, Australia and Japan, each at least sixty (60) days prior to the Securities Programs Bar Date, which publication notice hereby is approved in all respects and shall be deemed good, adequate, and sufficient notice of the Bar Date and the Securities Programs Bar Date and the procedures for filing Proofs of Claim and Securities Programs Proofs of Claim in these cases;

(h)    any person or entity that files a claim based on both (i) a Lehman Program Security and (ii) any other claim, is not required to complete the Guarantee Questionnaire or Derivative Questionnaire in respect of the portion of the claim that relates to such Lehman Program Security, but is required to complete the Guarantee Questionnaire and Derivative Questionnaire, as applicable, prior to the Questionnaire Deadline with respect to all other claims that are not based on a Lehman Program Security;

(i)    persons or entities that file claims based on any Lehman Program Security are not required to attach or submit any documentation supporting any claim based on such Lehman Program Security; provided however that, the Debtors reserve the right to seek production of all documentation required by Bankruptcy Rule 3001(c) as part of the claims reconciliation process;

(j)    claims based on any Lehman Program Security shall not be disallowed on the ground that such claims were not filed by the proper party or an authorized agent, as contemplated by Bankruptcy Rule 3001(b);

(k)    a Filing Entity that files a claim based on any Lehman Program Security, by filing such claim, for the purposes of U.S. Bankruptcy proceedings, consents to and hereby is deemed to be the claimant for the purpose of receiving notices and distributions, if any, except as otherwise provided in a confirmation order related to a plan, and responding to any objection interposed as to such claim.  For the avoidance of doubt, a Filing Entity that files a claim on behalf of multiple account holders or holders of any Lehman Program Security shall not be required to provide identifying information for such account holders or holders of any Lehman Program Security;

(l)    nothing in this Order shall impose a duty or obligation on any party to any agreement related to any Lehman Program Security to file a claim beyond whatever duty or obligation currently exists in the applicable agreements for the Lehman Program Security or applicable law;

(m)     nothing in this Order shall prevent a holder of a Lehman Program Security that has filed a proof of claim from buying or selling claims based on a Lehman Program Security in a manner consistent with the applicable clearing system practice; and

(n)     other than as specifically provided in clauses (a) through (m) above, all provisions of this Order apply to holders of claims under any Lehman Program Security and holders of claims based on such Lehman Program Security are required to comply with all provisions of this Order;

and it is further

ORDERED that nothing in this Order shall prejudice the right of the Debtors or any other party in interest to dispute or assert offsets or defenses to any claim reflected in the Schedules; and it is further

ORDERED that the Debtors and Epiq are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Order; and it is further

ORDERED that notification of the relief granted by this Order as provided herein and in the Motion is fair and reasonable and will provide good, sufficient, and proper notice to all creditors of their obligations in connection with claims they may have against the Debtors in these chapter 11 cases; and it is further

ORDERED that any person or entity who desires to rely on the Schedules will have the responsibility for determining that the claim is accurately listed in the Schedules; and it is further

ORDERED that entry of this Order is without prejudice to the right of the Debtors to seek a further order of this Court fixing the date by which holders of claims **not** subject to the Bar Date established herein must file such claims against the Debtors or be forever barred from voting upon any chapter 11 plan of the Debtors, from receiving any payment or distribution of property from the Debtors, Debtors' estates, or their successors or assigns with respect to such claims, and from asserting such claims against the Debtors.

Dated: New York, New York
       July 2, 2009

        *s/ James M. Peck*
        UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**Notice of Bar Date**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                        :
In re                                                   :        **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,            :        **08-13555 (JMP)**
                                                        :
                        Debtors.                        :        **(Jointly Administered)**
                                                        :
                                                        :
------------------------------------------------------------------x

<u>**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM**</u>

TO ALL PERSONS AND ENTITIES WITH
CLAIMS AGAINST THE DEBTOR LISTED BELOW:

      PLEASE TAKE NOTICE THAT, on July 2, 2009, the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>"), having jurisdiction over the chapter 11 cases of Lehman Brothers Holdings Inc. and certain of its affiliates, as debtors and debtors in possession in the above referenced chapter 11 cases (collectively, the "<u>Debtors</u>"), entered an order (the "<u>Bar Date Order</u>") establishing **September 22, 2009, at 5:00 p.m. (prevailing Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("<u>Proof of Claim</u>") based on prepetition claims against the Debtors (the "<u>Bar Date</u>"). The Bar Date Order, the Bar Date and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to the applicable Commencement Date (the "<u>Commencement Date</u>"), the date on which the Debtors commenced their case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), as set forth in Schedule A hereto.

      **If you have any questions with respect to this Notice, please feel free to contact the Debtors' court-approved claims agent Epiq Bankruptcy Solutions, LLC ("Epiq") at (866)-879-0688.**

      **A CLAIMANT SHOULD CONSULT AN ATTORNEY IF THE CLAIMANT HAS ANY QUESTIONS, INCLUDING WHETHER SUCH CLAIMANT SHOULD FILE A PROOF OF CLAIM. PLEASE NOTE THAT EPIQ IS NOT PERMITTED TO GIVE LEGAL ADVICE.**

      **Some parties are required to file a Proof of Claim in order to preserve their claim against the Debtors. Other parties are not required to file a Proof of Claim in order to preserve their claim against the Debtors. The following is a summary explanation of each.**

1.      **WHO MUST FILE A PROOF OF CLAIM**

      You **MUST** file a **Proof of Claim** to share in the Debtors' estates if you have a claim that arose prior to the applicable Commencement Date, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before the applicable Commencement Date, may give rise to claims against the Debtors that must be filed by the Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated prior to the applicable Commencement Date. Pursuant to section 101(5) of the Bankruptcy Code and as used herein, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**2.**    **WHO NEED <u>NOT</u> FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(1)    Your claim is listed on the Schedules and (i) is <u>**not**</u> described as "disputed," "contingent," or "unliquidated," and (ii) you do <u>**not**</u> dispute the amount, priority or nature of the claim set forth in the Schedules;

(2)    Your claim has been paid in full by the Debtors;

(3)    You hold an interest in the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; <u>**provided**</u>, <u>**however**</u>, that interest holders who wish to assert claims (as opposed to ownership interests) against the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the Bar Date, unless another exception identified herein applies;

(4)    You hold a claim that has been allowed by an order of this Court entered on or before the Bar Date;

(5)    You hold a claim for which a separate deadline is fixed by this Court;

(6)    You hold a claim for which you have already properly filed a Proof of Claim with the Clerk of the Court or Debtors' court-approved claims agent, Epiq, against the Debtors utilizing a claim form which substantially conforms to the Proof of Claim Form; <u>**provided**</u>, <u>**however**</u>, any holder that has filed a Proof of Claim based on a Derivative Contract (as defined below) or a Guarantee (as defined below) on or prior to the Bar Date, is required to amend such Proof of Claim to conform to the procedures set forth in this Motion for the filing of Proofs of Claims based on Derivative Contracts and Guarantee;

(7)    You hold a claim solely against (i) Lehman Brothers Inc. or (ii) any other entity affiliated with the Debtors that is involved in a bankruptcy or insolvency proceeding or similar proceeding, in foreign jurisdiction; <u>**provided**</u>, <u>**however**</u>, if such claim is based on an obligation guaranteed by a Debtor, the holder of such claim must file a Proof of Claim on or before the Bar Date;

(8)    You hold a security listed on the Master List of Securities available on the Debtors' website http://www.lehman-docket.com (the "<u>Master List of Securities</u>") due to the fact that the indenture trustee for such securities will file a global proof of claim on behalf of all holders of securities issued thereunder; (Wilmington Trust Company, US Bank National Association, and the indenture trustee for each of the other securities included on the Master List of Securities, each will file a global proof(s) of claim on behalf of all holders of securities for which it is identified as Indenture Trustee on the Master List of Securities); <u>**provided**</u>, <u>**however**</u>, that security holders who wish to assert claims against the Debtors arising out of or relating to the sale, issuance, or distribution of a security, must file Proofs of Claim on or before the Bar Date, unless another exception identified herein applies; and

(9)    You are an entity included on the Exempt Entities List available on the Debtors' website http://www.lehman-docket.com (the "<u>Exempt Entities List</u>") and any subsidiary for which the entity on the Exempt Entities List owns at least a fifty percent equity interest in such subsidiary, <u>specifically</u> <u>excluding</u> any subsidiary that is in a bankruptcy, insolvency or similar proceeding in a foreign jurisdiction and Lehman Brothers Inc.

If your claim falls within any of the above categories, your rights as the holder of such claim will be preserved without you filing of a Proof of Claim.  Any other person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, trust or governmental entity) that has a claim against a Debtor must file a Proof of Claim, as described herein, before the Bar Date.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**THE FACT THAT YOU HAVE RECEIVED THIS NOTICE DOES NOT MEAN THAT YOU HAVE A CLAIM OR THAT THE DEBTORS OR THE COURT BELIEVE THAT YOU HAVE A CLAIM.  MANY PARTIES ARE REQUIRED TO BE SERVED WITH THIS NOTICE AND IT IS REQUIRED TO REACH A BROAD AUDIENCE OF POTENTIAL CLAIMANTS.**

---

**SPECIAL NOTE TO HOLDERS OF LEHMAN SECURITIES**

Holders of securities are **NOT** required to file a proof of claim on account of their ownership if, and only if, such security is listed on the Debtors' Master List of Securities because such security was issued under an indenture pursuant to which an indenture trustee will file a global proof of claim on behalf of all holders of securities issued thereunder; (Wilmington Trust Company, US Bank National Association, and the indenture trustee for each of the other securities included on the Master List of Securities, each will each file a global proof(s) of claim on behalf of all holders of securities for which it is identified as Indenture Trustee on the Master List of Securities). The Master List of Securities is available for review at http://www.lehman-docket.com. The list is fully searchable by code (CUSIP or ISIN) or by security description.

If you do not see your security listed on the Master List of Securities and you have a question about the Master List of Securities, please download the form entitled "Inquiry Regarding Security Not on Master List of Securities," and complete and return it as directed on the form prior to August 5, 2009.

Inquiries will be investigated, and within 15 days of the Debtors receipt of such inquiry, either the security will either be added to the Master List of Securities (if appropriate), or, if you have provided contact information, you will be notified that the security is not being added to the Master List of Securities and given further information.

The Master List of Securities shall be finalized on August 20, 2009 and not subject to further change.

A Proof of Claim form is being included with the Bar Date Notices being served on holders of LBHI securities other than to holders of securities that are on the Master List of Securities.

**IF YOU BELIEVE YOU HAVE A CLAIM AGAINST LBHI OTHER THAN ON ACCOUNT OF YOUR LEHMAN SECURITIES OWNERSHIP, YOU MUST FILE A PROOF OF CLAIM FORM, AS DIRECTED IN THIS BAR DATE NOTICE. A COPY OF THE PROOF OF CLAIM FORM IS AVAILABLE AT HTTP://WWW.LEHMAN-DOCKET.COM.**

---

3.      **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Any person or entity that holds a claim arising from the rejection of an executory contract or unexpired lease must file a Proof of Claim based on such rejection by the later of (i) the Bar Date, and (ii) the date which is forty-five (45) days following the effective date of such rejection or be forever barred from doing so.

4.      **WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually** **received** on or before the Bar Date at the following address:

If by overnight mail, to:                                    If by first-class mail, to:

Epiq Bankruptcy Solutions, LLC                      Lehman Brothers Holdings Claims Processing
Attn: Lehman Brothers Holdings Claims Processing      c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor                          FDR Station, P.O. Box 5286
New York, New York 10017                             New York, New York  10150-5076

If by hand delivery, to:

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, New York 10017

    or

Clerk of the United States Bankruptcy Court
Attn: Lehman Brothers Holdings Claims Processing
One Bowling Green
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually** **received** by Epiq or the Court on or before the Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

In the event the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated or undetermined, (b) change the amount of a claim reflected therein, or (c) add a claim that was not listed on the Schedules or remove a claim that was listed on the Schedules, then, and in such event, the Debtors will notify the affected claimant be notified of such amendment and be granted thirty (30) days from the date of such notification within which to file a claim or be forever barred from doing so.

**5.**  **WHAT TO FILE**

   If you file a Proof of Claim, your filed Proof of Claim must: (i) be written the English language; (ii) be denominated in the lawful currency of the United States; (iii) conform substantially with the form attached to this notice (the "Proof of Claim Form"); (iv) state the name and case number of the specific Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why documentation is not available; and (vii) be signed by the claimant or by an authorized agent of the claimant.

If you are asserting a claim against more than one Debtor or have claims against different Debtors, a separate Proof of Claim must be filed with respect to each such Debtor.

**EXCEPT AS SET FORTH IN THE FOLLOWING THREE PARAGRAPHS, YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, ATTACH A SUMMARY.**

**CLAIMS BASED ON DERIVATIVE CONTRACTS**

**IF YOU FILE A PROOF OF CLAIM BASED ON AMOUNTS OWED PURSUANT TO A DERIVATIVE CONTRACT, YOU MUST: (A) ON OR BEFORE THE BAR DATE, FILL-OUT AND RETURN A PROOF OF CLAIM FORM IN THE SAME MANNER AS ALL OTHER CLAIMANTS INCLUDING CHECKING THE APPROPRIATE BOX ON THE PROOF OF CLAIM FORM AND (B) ON OR BEFORE THE QUESTIONNAIRE DEADLINE, LOG ON TO http://www.lehman-claims.com, ENTER THE UNIQUE IDENTIFICATION NUMBER INCLUDED ON THE PROOF OF CLAIM FORM MAILED TO SUCH HOLDER BY THE DEBTORS AND COMPLETE THE ELECTRONIC DERIVATIVE QUESTIONNAIRE SUBSTANTIALLY IN THE FORM ATTACHED AS EXHIBIT C TO THE BAR DATE ORDER (THE "DERIVATIVE QUESTIONNAIRE") AND ELECTRONICALLY UPLOAD SUPPORTING DOCUMENTATION ON THE WEBSITE (AS REQUIRED IN THE DERIVATIVE QUESTIONNAIRE), RATHER THAN ATTACHING SUCH DOCUMENTS TO THE PROOF OF CLAIM FORM.**

**A "DERIVATIVE CONTRACT" IS A CONTRACT THAT IS ANY OF (I) A "SWAP AGREEMENT" AS SUCH TERM IS DEFINED IN SECTION 101(53B) OF THE BANKRUPTCY CODE OR (II) A "FORWARD CONTRACT" AS SUCH TERM IS DEFINED IN SECTION 101(25) OF THE BANKRUPTCY CODE. A CASH-MARKET PURCHASE OR SALE OF A SECURITY OR LOAN (I.E. ANY PURCHASE OR SALE OF A SECURITY OR LOAN FOR SETTLEMENT WITHIN THE STANDARD SETTLEMENT CYCLE FOR THE RELEVANT MARKET), EXCHANGE-TRADED FUTURE OR OPTION, SECURITIES LOAN TRANSACTION, REPURCHASE AGREEMENT IN RESPECT OF SECURITIES OR LOANS, AND ANY GUARANTEE OR REIMBURSEMENT OBLIGATIONS WHICH WOULD OTHERWISE BE INCLUDED IN THE DEFINITION OF "SWAP AGREEMENT"**

OR "FORWARD CONTRACT" PURSUANT TO THE DEFINITION OF SUCH TERMS IN THE BANKRUPTCY CODE <u>SHALL NOT BE CONSIDERED</u> A DERIVATIVE CONTRACT FOR THE PURPOSES OF THIS DEFINITION NOR SHALL ANY NOTES, BONDS, OR OTHER SECURITIES ISSUED BY THE DEBTORS OR THEIR AFFILIATES (INCLUDING, BUT NOT LIMITED TO, LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS TREASURY CO. B.V., LEHMAN BROTHERS BANKHAUS AG, LEHMAN BROTHERS HOLDINGS PLC, LEHMAN BROTHERS SECURITIES N.V., AND LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A.).

THE "QUESTIONNAIRE DEADLINE" IS OCTOBER 22, 2009, AT 5:00 PM (PREVAILING EASTERN TIME).

<u>CLAIMS BASED ON A DEBTOR'S GUARANTEE</u>

IF YOU FILE A PROOF OF CLAIM BASED ON A GUARANTEE, YOU MUST: (A) ON OR BEFORE THE BAR DATE, FILL-OUT AND RETURN A PROOF OF CLAIM FORM IN THE SAME MANNER AS ALL OTHER CLAIMANTS INCLUDING CHECKING THE APPROPRIATE BOX ON THE PROOF OF CLAIM AND (B) ON OR BEFORE THE QUESTIONNAIRE DEADLINE, LOG ON TO http://www.lehman-claims.com, ENTER THE UNIQUE IDENTIFICATION NUMBER INCLUDED ON THE PROOF OF CLAIM FORM MAILED TO SUCH HOLDER BY THE DEBTORS AND COMPLETE THE ELECTRONIC GUARANTEE QUESTIONNAIRE SUBSTANTIALLY IN THE FORM ATTACHED AS <u>EXHIBIT D</u> TO THE BAR DATE ORDER (THE "<u>GUARANTEE QUESTIONNAIRE</u>") AND ELECTRONICALLY UPLOAD SUPPORTING DOCUMENTATION AND EVIDENCE OF THE UNDERLYING CLAIM AMOUNT ON THE WEBSITE (AS REQUIRED IN THE GUARANTEE QUESTIONNAIRE), RATHER THAN ATTACHING SUCH DOCUMENTS TO THE PROOF OF CLAIM FORM.

A "GUARANTEE" IS A PROMISE, REPRESENTATION OR AGREEMENT TO ANSWER FOR THE PAYMENT OF SOME DEBT OR THE PERFORMANCE OF SOME DUTY IN CASE OF THE FAILURE OF ANOTHER PERSON OR ENTITY WHO IS LIABLE IN THE FIRST INSTANCE.

THE "QUESTIONNAIRE DEADLINE" IS OCTOBER 22, 2009, AT 5:00 PM (PREVAILING EASTERN TIME).

<u>CLAIMS BASED ON A DEBTOR'S GUARANTEE OF A DERIVATIVE CONTRACT WITH A NON-DEBTOR</u>

IF YOU FILE A PROOF OF CLAIM BASED ON A DEBTOR'S GUARANTEE OF A DERIVATIVE CONTRACT ENTERED INTO WITH A NON-DEBTOR, YOU MUST: (A) ON OR BEFORE THE BAR DATE, FILL-OUT AND RETURN A PROOF OF CLAIM FORM IN THE SAME MANNER AS ALL OTHER CLAIMANTS INCLUDING CHECKING BOTH BOXES ON THE PROOF OF CLAIM THAT SUCH CLAIM IS BASED ON BOTH A DERIVATIVE CONTRACT AND A GUARANTEE AND (B) ON OR BEFORE THE QUESTIONNAIRE DEADLINE, LOG ON TO http://www.lehman-claims.com, ENTER THE UNIQUE IDENTIFICATION NUMBER INCLUDED ON THE PROOF OF CLAIM FORM MAILED TO SUCH HOLDER BY THE DEBTORS AND COMPLETE THE ELECTRONIC GUARANTEE QUESTIONNAIRE AND ELECTRONICALLY UPLOAD SUPPORTING DOCUMENTATION ON THE WEBSITE (AS REQUIRED IN THE GUARANTEE QUESTIONNAIRE), RATHER THAN ATTACHING SUCH DOCUMENTS TO THE PROOF OF CLAIM FORM AND LOG ON TO http://www.lehman-claims.com, ENTER THE UNIQUE IDENTIFICATION NUMBER INCLUDED ON THE PROOF OF CLAIM FORM MAILED TO SUCH HOLDER BY THE DEBTORS AND COMPLETE THE ELECTRONIC DERIVATIVE QUESTIONNAIRE AND ELECTRONICALLY UPLOAD SUPPORTING DOCUMENTATION ON THE WEBSITE (AS REQUIRED IN THE DERIVATIVE QUESTIONNAIRE), RATHER THAN ATTACHING SUCH DOCUMENTS TO THE PROOF OF CLAIM FORM.

THE "QUESTIONNAIRE DEADLINE" IS OCTOBER 22, 2009, AT 5:00 PM (PREVAILING EASTERN TIME).

If a holder is required to complete the Derivative Questionnaire or Guarantee Questionnaire, such holder need only submit the documentation required by the applicable Questionnaire by the Questionnaire Deadline and need not submit the documentation required by the applicable Questionnaire with such holder's Proof of Claim by the Bar Date.

If any holder files a Proof of Claim based on a Derivative Contract or a Guarantee which for any reason does not have a Unique ID Number, such holder shall still be required to comply with the procedures set forth in the prior two paragraphs, except that instead of entering a Unique ID Number on the website, such holder shall instead indicate on the website that they filed a Proof of Claim that did not have a Unique ID Number.

A holder (or any other party authorized under the Bankruptcy Code and the Bankruptcy Rules to submit a Proof of Claim on behalf of such holder) of a security that is guaranteed by a Debtor shall be required to file a Proof of Claim against such Debtor based on the Guarantee and complete the Guarantee Questionnaire.

Any security that is listed on the Master List of Securities is not a Derivative Contract and the holders of such security are not required to complete the Derivative Questionnaire on account of such security.

The information submitted on the website http://www.lehman-claims.com in respect of Derivative Contracts and Guarantees will not be accessible on the website other than by the party that submitted such information and the Debtors and the Creditors' Committee and their respective advisors and counsel.

The website http://www.lehman-claims.com and the information submitted thereon will remain accessible by the party that submitted such information following the Bar Date and the information submitted on the website will be subject to the same rules and standards as amendments and supplements to proofs of claim.

**6.      CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE BAR DATE OR COMPLETE THE DERIVATIVE QUESTIONNAIRE PRIOR TO THE QUESTIONNAIRE DEADLINE**

**Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim in accordance with the Bar Date Order on or before the Bar Date, <u>specifically</u>, including filling out the Derivative Questionnaire (if applicable) or the Guarantee Questionnaire (if applicable)  and uploading required information to the website <u>http://www.lehman-claims.com</u>  (which Derivative Questionnaire or Guarantee Questionnaire shall not be required to be completed until the Questionnaire Deadline), specifying the applicable Debtor and other requirements set forth in the Bar Date Order, for any claim such creditor holds or wishes to assert against the Debtors, will be forever barred, estopped, and enjoined from asserting such claim (and from filing a Proof of Claim with respect to such claim) against the Debtors and their estates, and their property will be forever discharged from any and all indebtedness or liability with respect to such claim, and the holder of such claim shall not be permitted to vote on any chapter 11 plan or participate in any distribution in the Debtors' chapter 11 cases on account of such claim or to receive further notices regarding such claim or with respect to the Debtors' chapter 11 cases.**

**7.      THE DEBTORS' SCHEDULES AND ACCESS THERETO**

You may be listed as the holder of a claim against the Debtors in the Schedules.  Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at http://www.lehman-docket.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov.).  Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (prevailing Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004.

DATED:        June __, 2009                                                    BY ORDER OF THE COURT
                    New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000
Lori R. Fife
Shai Y. Waisman

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

Schedule A

| Debtor | Case Number | Commencement Date |
| --- | --- | --- |
| Lehman Brothers Holdings Inc. | 08-13555 | September 15, 2008 |
| LB 745 LLC | 08-13600 | September 16, 2008 |
| PAMI Statler Arms LLC | 08-13664 | September 23, 2008 |
| Lehman Brothers Commodity Services Inc. | 08-13885 | October 3, 2008 |
| Lehman Brothers Special Financing Inc. | 08-13888 | October 3, 2008 |
| Lehman Brothers OTC Derivatives Inc. | 08-13893 | October 3, 2008 |
| Lehman Brothers Derivatives Products Inc. | 08-13899 | October 5, 2008 |
| Lehman Commercial Paper Inc | 08-13900 | October 5, 2008 |
| Lehman Brothers Commercial Corporation | 08-13901 | October 5, 2008 |
| Lehman Brothers Financial Products Inc. | 08-13902 | October 5, 2008 |
| Lehman Scottish Finance L.P. | 08-13904 | October 5, 2008; |
| CES Aviation LLC | 08-13905 | October 5, 2008 |
| CES Aviation V LLC | 08-13906 | October 5, 2008 |
| CES Aviation IX LLC | 08-13907 | October 5, 2008 |
| East Dover Limited | 08-13908 | October 5, 2008 |
| Luxembourg Residential Properties Loan Finance S.a.r.l. | 09-10108 | January 7, 2009 |
| BNC Mortgage LLC | 09-10137 | January 9, 2009 |
| Structured Asset Securities Corporation | 09-10558 | February 9, 2009 |
| LB Rose Ranch LLC | 09-10560 | February 9, 2009 |
| LB 2080 Kalakaua Owners LLC | 09-12516 | April 23, 2009 |

**<u>Exhibit B</u>**

**Proof of Claim Form**

# PROOF OF CLAIM

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
|--------|-----------|
| Lehman Brothers Holdings Inc., et al. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**_____
(*If known*)

Filed on: _____

Telephone number:                    Email Address:

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:                    Email Address:

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:

**1.    Amount of Claim as of Date Case Filed:**  $ _____

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐   Check this box if all or part of your claim is based on a Derivative Contract.*
☐   Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐   Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.    Basis for Claim:** _____
(See instruction #2 on reverse side.)

**3.    Last four digits of any number by which creditor identifies debtor:** _____
   **3a. Debtor may have scheduled account as:** _____
      (See instruction #3a on reverse side.)

**4.    Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate     ☐ Motor Vehicle     ☐ Other

Describe: _____

Value of Property: $_____  Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any:

$_____  Basis for perfection: _____

**Amount of Secured Claim: $**_____  **Amount Unsecured: $**_____

**5.    Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).  If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(_____).

**Amount entitled to priority:**

$_____

**6.    Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $**_____
(See instruction #6 on reverse side.)

**7.    Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.    Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**

If the documents are not available, please explain:

**FOR COURT USE ONLY**

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|-------|-----------|

*Penalty for presenting fraudulent claim:*  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

## Items to be completed in Proof of Claim

**Name of Debtor, and Case Number:**
Fill in the name of the Debtor in the bankruptcy case, and the bankruptcy case number.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

   **3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
**Lehman Brothers Holdings Claims Processing**
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

## Exhibit C

### Derivative Questionnaire

*Please note that information stated on or uploaded on this website is being submitted as part of the Proof of Claim form. As such, criminal penalties apply for making a false statement. The penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

YOU MUST COMPLETE ONE DERIVATIVE QUESTIONNAIRE PER PROOF OF CLAIM BASED ON AMOUNTS OWED PURSUANT TO A MASTER AGREEMENT. IF A MASTER AGREEMENT DOES NOT EXIST, YOU MUST COMPLETE ONE DERIVATIVE QUESTIONNAIRE PER DERIVATIVE CONTRACT.

General: _____

Name of Debtor (drop down of Lehman entities):

Name of Creditor:

Name and address where notices should be sent:

Creditor contact person and phone number:

Name and address where payment should be sent if different from above:

_____

**1. Is the Debtor identified above (i) a counterparty to the derivative contract or (ii) a guarantor or credit support provider? Please identify the counterparties, guarantors and/or credit support providers to the derivative contract.**


**2. Have Termination Agreement(s) related to the allowance of a claim in respect of derivatives been entered into with the debtor?**


If Yes---Enter the amount of the derivative claim $_____

Please attach Termination Agreement and go to ___(end).

If No, proceed to #3.

**3. Have the derivatives matured or been terminated?**

If Yes--Enter the derivative claim amount and each line item included in the calculation thereof on the provided table and provide the information in 4.

If No, STOP HERE.  For Derivative Contracts that have not matured or been terminated, you do not need to complete the rest of the Derivative Questionnaire or submit any of the documents or information requested below.

4. a. <u>Documentation of Transactions.</u>   Please provide copies of all master agreements and schedules thereto, netting agreements, credit support agreements, guarantees and other agreements (other than confirmations) evidencing the transactions, in each case that relate to the claim.

b. <u>Termination Notice.</u>  Please provide a copy of the termination notice, including evidence supporting delivery date of the termination notice.

c. <u>Valuation Statement</u>. Please provide a copy of the valuation statement.  Please identify any collateral that has been posted by any party in connection with the transactions and any claims of set-off against other transactions reflected in the claim.

d. <u>Individual Trade Level Detail</u>.  Please provide with respect to each transaction (i) the valuation date (to the extent not included in your valuation statement) and value and (ii) details for the purpose of identifying and reconciling each transaction (e.g. including, as applicable, trade id, electronic trade reference id, trade type, product, trade date, reference obligation or reference entity, factor and original contract notional amount, quantity/unit of measure, currency,  price or strike price, buy/sell, call or put, cap or floor, effective date, and maturity date. (For the avoidance of doubt, you are not required to submit each and every one of the foregoing)).  Please provide this information in Microsoft Excel format.

e. <u>Trade Valuation Methodology and Quotations</u>.  Please check the box next to each valuation methodology used to support the claim (if multiple methodologies were used, please check multiple boxes and identify the trade population listed in clause d. above to which each valuation method applies):

_____ ISDA Master Agreements Specifying Market Quotation Methodology:  If not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

_____ ISDA Master Agreements Specifying Loss Methodology.  To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

_____ ISDA Master Agreements Specifying Close-Out Amount Methodology.  To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

_____ ISDA Master Agreements Specifying Any Other Methodology.  To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

_____ Non-ISDA Master Agreements. To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

_____ Replacement Transactions:  If you replaced a terminated transaction with a transaction with the same economic terms as the terminated transaction, provide documentation evidencing such replacement transaction and the quotation(s) used, including specifying any cash (or other consideration) paid or received by or to any person to replace the transactions, the name of each entity that effectuated a replacement and when any such transactions were effected.

f. Unpaid Amounts.  Please specify any unpaid amounts and interest accrued thereon included in calculation of any amounts due with respect to the transactions.

g. Collateral.  Please provide CUSIP/ISIN for collateral listed, if applicable, or other information that reasonably identifies collateral reflected in the claim calculation and the valuation of such collateral.  Please provide this information in Microsoft Excel format.

h. Other costs.
        i.        If claim includes other costs, please include a schedule that lists each such cost by vendor and indicates the service provided and amount paid.

        ii.       If claim includes interest charges, please provide calculation in Microsoft Excel format of interest including principal amount, interest rate, term and assumptions.

## Exhibit D

### Guarantee Questionnaire

*Please note that information stated on or uploaded on this website is being submitted as part of the Proof of Claim form.  As such, criminal penalties apply for making a false statement.  The penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.*

General: _____

Name of Creditor:

Name and address where notices should be sent:

Creditor contact person and phone number:

Name and address where payment should be sent if different from above:

_____

1. Name of Debtor, or other entity, against which you have a direct claim (the "Obligor"):

2. If such Obligor is in a bankruptcy or insolvency proceeding, administration, receivership, conservatorship, liquidation or similar proceeding (and is not a Debtor in these chapter 11 cases), please provide the proof of claim and any attachments thereto filed against such Obligor or describe the claim against such Obligor if a proof of claim has not yet been filed.

3. List the agreement(s) under which your claim arises against the Obligor and, unless you have uploaded information in compliance with question 4a of the Derivative Questionnaire, provide documentation evidencing your claim <u>and</u> supporting the calculation of the claim amount.*

4. Amount of claim against Obligor: $_____.

5. Name of Debtor that guarantees the payment/obligations of the Obligor against which you have a direct claim (the "Guarantor"):

6. Please upload the specific promise, representation and/or agreement(s) (including any corporate resolutions) under which your claim arises against the Guarantor and describe the obligations/performance that is guaranteed.  If you do not have possession of such document, please upload a written explanation of such guarantee in reasonable detail. You do not need to comply with this question if you have uploaded information in compliance with question 4a of the Derivative Questionnaire.

7.  Amount of claim against the Guarantor: $_____.

* Pursuant to Federal Rule of Bankruptcy Procedure 3001(c), if your claim is based on a written agreement, you are required to attach a copy of the writing evidencing such agreement.

# EXHIBIT C

FILED

1   Daniel K. Calisher (State Bar No. 181821)
    calisher@fostergraham.com
2   Christopher P. Carrington (*To Be Filed*)
    ccarrington@fostergraham.com
3   Julia R. Harvey (*To Be Filed*)
    jharvey@fostergraham.com
4   FOSTER GRAHAM MILSTEIN & CALISHER LLP
    621 Seventeenth Street, 19th Floor
5   Denver, Colorado 80293
    Telephone: (303) 333-9810
6   Facsimile: (303) 333-9786

7   Michael A. Rollin (State Bar No. 251557)
    mrollin@rplaw.com
8   REILLY POZNER LLP
    10833 Wilshire Boulevard, Unit 604
9   Los Angeles, California 90024
    Telephone:  (310) 425-0922
10  Facsimile:  (303) 893-6110

11  Attorneys for Plaintiff LEHMAN BROTHERS
    HOLDINGS, INC.

12

2009 MAY 28  AM 11: 21

CLERK U.S. DISTRICT COURT
CENTRAL DIST. O  CALIF.
LOS ANGELES

BY _____

FAXED

13              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA

14  LEHMAN BROTHERS HOLDINGS, INC.      CASE NO. _____

15              Plaintiff,

16          vs.                          CV09-3785 SJO (SHx)

17  PMAC LENDING SERVICES, INC., f/k/a   COMPLAINT FOR DAMAGES
    PREFERRED MORTGAGE ALLIANCE
18  CORP.,                               1)  BREACH OF CONTRACT
                                         2)  BREACH OF EXPRESS WARRANTY
19              Defendant.

20      Plaintiff, Lehman Brothers Holdings, Inc. ("LBHI"), by and through its undersigned

21  counsel, and for its claims for relief and/or causes of action against defendant PMAC Lending

22  Services, Inc. f/k/a Preferred Mortgage Alliance Corp., ("PMAC"), hereby and states and alleges

23  as follows:

24                              **NATURE OF ACTION**

25      1.      Lehman Brothers Bank, FSB ("LBB," and collectively with LBHI, "Lehman")

26  purchased a number of residential mortgage loans from PMAC pursuant to one or more written

27  contracts.  LBB subsequently assigned its rights under those contracts to LBHI. With respect to

28

                                         1

                            **COMPLAINT FOR DAMAGES**

certain mortgage loans. PMAC breached one or more of its agreements, representations, warranties and/or covenants set forth in the contract(s). By this action, LBHI seeks to recover losses resulting from PMAC's breach of contract and/or warranty, or otherwise arising from or relating to the subject mortgage loans.

## PARTIES

2.     LBHI is a Delaware corporation with its principal place of business in New York.

3.     Upon information and belief, PMAC is a California corporation, with a principal place of business in Chino Hills, California.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between LBHI and PMAC, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because PMAC resides in Chino Hills, California.

## FACTUAL ALLEGATIONS

6.     At all times relevant hereto, Lehman engaged in the purchase and sale of mortgage loans.

7.     At all times relevant hereto, PMAC engaged in mortgage lending, as well as the sale of mortgage loans on the secondary mortgage market to investors such as Lehman.

8.     On or about January 22, 2004 and September 1, 2005, PMAC entered into a written Loan Purchase Agreement with LBB ("Agreement").

9.     The Agreement specifically incorporated the terms and conditions of the Seller's Guide ("Seller's Guide") of Aurora Loan Services LLC ("Aurora"), LBB's wholly-owned subsidiary, which sets forth additional duties and obligations of PMAC.

10.     The Agreement and Seller's Guide constitute a valid and enforceable contract that is binding upon PMAC.

2

11.    The Agreement and Seller's Guide set forth the duties and obligations of the parties with respect to the purchase and sale of the subject mortgage loans, including but not limited to the following: (a) purchase price; (b) delivery of the loans and attendant documentation; (c) examination of loan files; (d) underwriting; (e) representations and warranties concerning the individual loans; and (f) remedies for breach.

12.    PMAC sold a number of mortgage loans to LBB under the Agreement and Seller's Guide, including the certain mortgage loans as set forth on **Exhibit A** hereto, which is incorporated by this reference as though fully set forth herein.

13.    Subsequent to the sale, LBB assigned all of its rights and remedies under the Agreement and Seller's Guide with respect to the subject mortgage loans to LBHI.

## Breach Of Representations, Warranties And/Or Covenants

14.    With respect to each of the subject mortgage loans, PMAC made a number of representations, warranties, and/or covenants concerning the loans, including but not limited to: (a) the validity of all mortgage loan documentation; (b) the accuracy of all information regarding borrower identity, income, employment, credit, debt, assets, and liabilities used in making the decision to originate the mortgage loans; (c) occupancy by the borrower of the property securing the mortgage loans; (d) the ownership, nature, condition, and value of the real property securing the mortgage loans; (e) the absence of early payment defaults; (f) the absence of straw purchaser transactions; (g) conformance of the mortgage loans with applicable underwriting guidelines and loan program requirements; and (h) its obligation to repurchase the loan in the event of a breach of any representation, warranty, and/or covenant, including an early payment default(s).

15.    PMAC also represented and/or warranted that no error, omission, misrepresentation, negligence, fraud, or similar occurrence took place with respect to the mortgage loans by any person involved in the origination of the mortgage loans, and that no predatory or deceptive lending practices were used in the origination of the mortgage loans.

16.    PMAC further represented and/or warranted that it had the ability to perform its obligations, and satisfy all requirements of, the Agreement and Seller's Guide.

17.    Lehman ultimately discovered one or more material defects in the subject loans,

3

and further discovered that PMAC had breached one or more of its representations, warranties and/or covenants under the Agreement and/or Seller's Guide.

18.    Lehman provided PMAC with written notice of PMAC's breach of the representations and/or warranties with respect to the subject loans.

19.    PMAC has refused or otherwise failed to comply with its obligations under the Agreement and Seller's Guide regarding the subject loans.

### Early Payment Defaults

20.    The Agreement and Seller's Guide further specify that LBHI may demand that PMAC repurchase, and that PMAC shall repurchase, mortgage loans that become Early Payment Defaults.

21.    A loan becomes an Early Payment Default under the Agreement and Seller's Guide in one of two ways. For loans prior-approved by the purchaser, the loan becomes an Early Payment Default if the borrower fails to make the first monthly payment due within 30 days of the payment's due date. For loans purchased pursuant to the seller's delegated underwriting authority, eligible for delegated underwriting or purchased in bulk transactions, the loan becomes an Early Payment Default if the borrower fails to make the first or second monthly payment due within 30 days of each such monthly payment's respective due date.

22.    PMAC received delegated underwriting authority before it sold the subject loans.

23.    Certain loans that LBB purchased from PMAC became Early Payment Defaults. Specifically, with respect to loans as set forth on **Exhibit A** hereto, the borrower failed to make the first and/or second payment within 30 days of the due dates for those payments.

24.    LBHI provided PMAC with written notice concerning the Early Payment Defaults and demanded that PMAC repurchase those mortgage loans.

25.    PMAC has refused or otherwise failed to repurchase the mortgage loans or otherwise comply with its obligations under the Agreement and Seller's Guide with respect to the subject Early Payment Default loans.

26.    LBHI, as well as its predecessors and agents, have substantially performed all of their respective obligations under the Agreement and Seller's Guide.

4

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

27.     LBHI incorporates the foregoing allegations as though fully set forth herein.

28.     As set forth herein, PMAC has breached the Agreement and Seller's Guide by: (a) breaching one or more of its agreements, representations, warranties, and/or covenants; (b) refusing or otherwise failing to repurchase the subject mortgage loans; and/or (c) refusing to pay LBHI for losses suffered arising from or relating to the subject mortgage loans.

29.     PMAC's breaches of the Agreement and Seller's Guide have resulted in actual and consequential damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Breach of Express Warranty)

30.     LBHI incorporates the foregoing allegations as though fully set forth herein.

31.     PMAC made a number of express warranties with respect to material facts concerning the loans, including but not limited to the warranties described above.

32.     The warranties contained in the Agreement and Seller's Guide were an essential part of the bargain between LBB and PMAC.

33.     PMAC breached the warranties for the loans as set forth on Exhibit A hereto.

34.     LBHI provided PMAC with written notice concerning PMAC's breaches of the express warranties.

35.     PMAC has refused or failed to remedy or compensate LBHI for PMAC's breaches of the express warranties.

36.     As a result of PMAC's breach of the express warranties contained in the Agreement and Seller's Guide, LBHI has sustained actual and consequential damages in an amount to be proven at trial.

## RELIEF REQUESTED

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor against PMAC as follows:

5

(a)   For all damages and/or losses arising from or relating to PMAC's breach of contract, in an amount to be proved at trial;

(b)   For all damages and/or losses arising from or relating to PMAC's breach of warranties, in an amount to be proven at trial;

(c)   For recoverable interest;

(d)   For the costs and expenses of suit incurred herein, including, but not limited to, attorney fees, costs, and expert witness expenses; and,

(g)   For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury herein on all issues so triable.


DATED: May 26, 2009

FOSTER GRAHAM
MILSTEIN & CALISHER, LLP


for Daniel K. Calisher
Christopher P. Carrington
Julia R. Harvey

Attorneys for Plaintiff
LEHMAN BROTHERS HOLDINGS, INC.

6

COMPLAINT FOR DAMAGES

*Lehman Brothers Holdings, Inc., v. PMAC Lending Services, Inc. f/k/a Preferred Mortgage Alliance Corp.*

## Exhibit A

|    | Loan Number | Basis of Claim |
|----|-------------|----------------|
| 1. | ****2831 | Early Payment Default; and any other discovered breach |
| 2. | ****8931 | Early Payment Default; and any other discovered breach |
| 3. | ****9194 | Early Payment Default; and any other discovered breach |
| 4. | ****4198 | Early Payment Default; and any other discovered breach |
| 5. | ****0575 | Early Payment Default; and any other discovered breach |
| 6. | ****9950 | Early Payment Default; and any other discovered breach |
| 7. | ****0164 | Early Payment Default; and any other discovered breach |

REILLY POZNER LLP
Michael A. Rollin (SBN: 251557)
mrollin@rplaw.com
10833 Wilshire Blvd, Unit 604
Los Angeles, CA 90024
T: (310) 425-0922; F: (303) 893-6110



## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| LEHMAN BROTHERS HOLDINGS INC. | CASE NUMBER |
| PLAINTIFF(S) | CV09-3785 SJO (SHx) |
| v. | |
| PMAC LENDING SERVICES, INC., f/k/a PREFERRED MORTGAGE ALLIANCE CORP., | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S):  PMAC LENDING SERVICES, INC., f/k/a PREFERRED MORTG. ALLIANCE

A lawsuit has been filed against you.

Within ___20___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Michael A. Rollin_____, whose address is _10833 Wilshire Blvd, Unit 604, Los Angeles, CA 90024_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   **MAY 2 8 2009**                    By: _Natalie Gongzra_
                                                            Deputy Clerk

                                                       *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    SUMMONS



## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| LEHMAN BROTHERS HOLDINGS, INC. | PMAC LENDING SERVICES, INC., f/k/a PREFERRED MORTGAGE ALLIANCE CORP. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Daniel K. Calisher (#181821)<br>Foster Graham Milstein & Calisher, LLP<br>621 Seventeenth Street, 19th Floor, Denver, CO 80293   303-333-9810 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $ In excess of $75,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC § 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Act
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Info. Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☑ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed. Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury-Med Malpractice
- ☐ 365 Personal Injury-Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus-Alien Detainee
- ☐ 465 Other Immigration Actions

**TORTS**
**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 American with Disabilities - Employment
- ☐ 446 American with Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus/Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE / PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety /Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:**   Case Number: _____ CV09-3785

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)          CIVIL COVER SHEET          Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
   ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
   ☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Lehman Brothers Holdings, Inc. - New York and Delaware |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
   ☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| PMAC Lending Services, Inc. f/k/a Preferred Mortgage Alliance Corp. Orange County |  |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** *Julia K. Fee for Daniel K. Calisher*   Date May 26, 2009

   **Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV09- 3785 SJO (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

**[X]  Western Division**      **[ ]  Southern Division**      **[ ]  Eastern Division**
      312 N. Spring St., Rm. G-8       411 West Fourth St., Rm. 1-053       3470 Twelfth St., Rm. 134
      Los Angeles, CA 90012       Santa Ana, CA 92701-4516       Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

LEHMAN BROTHERS HOLDINGS INC,

       Plaintiff,

v.

UNIVERSAL AMERICAN MORTGAGE
COMPANY, LLC,

       Defendant.

---

## COMPLAINT

---

Plaintiff, Lehman Brothers Holdings Inc. ("LBHI"),[1] by and through its undersigned attorneys, and for causes of action against Defendant Universal American Mortgage Company, LLC ("Universal"), alleges as follows:

---

[1] Plaintiff Lehman Brothers Holdings Inc. ("LBHI") commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on September 15, 2008, in the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court"). On December 6, 2011, the Bankruptcy Court entered an order confirming LBHI's Modified Third Amended Chapter 11 Plan. LBHI's chapter 11 plan became effective on March 6, 2012, and LBHI is authorized to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

In August 2009, the Bankruptcy Court authorized LBHI to pursue claims with respect to the origination and purchase of residential mortgage loans. LBHI is pursuing that exact type of claim here and prosecuting this case to preserve the value of its assets for the benefit of its creditors.

# I. <u>NATURE OF ACTION</u>

1.  At all times relevant hereto, Lehman Brothers Bank, FSB ("LBB," and collectively with LBHI, "Lehman") purchased mortgage loans from Universal pursuant to a series of written contracts.  LBB subsequently assigned its rights under those contracts to LBHI.  With respect to certain of these mortgage loans, Universal breached provisions of the contracts that required it to repurchase from, or indemnify Lehman for mortgage loans which failed to comply with the parties' contracts.   By this action, LBHI seeks to recover money damages for injuries that have been sustained as a result of Universal's failure or refusal to honor its obligation to repurchase loans and/or indemnify Lehman for its incurred losses.

2.  The claim presented in this Complaint was originally Count III of LBHI's 8-count complaint in Case No. 11-20859-CIV-KING, filed in the Southern District of Florida.  Pursuant to a ruling by the District Judge at the pretrial conference on January 4, 2013, and a subsequent Order entered on January 9, 2013, this claim was dismissed <u>without prejudice</u> to be re-filed as a separate cause of action, because the District Judge was of the opinion that each loan must be filed separately, rather than joined within one action.

# II. <u>PARTIES</u>

3.  Plaintiff LBHI is a Delaware corporation with its principal place of business in New York, New York.

4.  Defendant Universal is a Florida limited liability company with its principal place of business at 700 N.W. 107th Avenue, Suite 400, Miami, Florida.

### III. JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff LBHI and Defendant Universal, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     Personal jurisdiction comports with due process under the United States Constitution and the long-arm statutes of Colorado because Universal has been registered to do business in Colorado since 2002 and has maintained an agent in the state for the last ten years.

7.     Universal has purposefully availed itself of the benefit of doing business—both with and without Lehman—in Colorado.  On information and belief, Universal's business in Colorado includes, but is not limited to, mortgage lending.

8.     In 2004, Universal entered into a business relationship with the Lehman entities pursuant to which Universal would sell residential mortgage loans to Lehman.  That relationship was overseen by Aurora Loan Services, LLC ("Aurora"), a Lehman subsidiary then based in Littleton, Colorado.

9.     Universal has had continuous and systematic communication with Lehman entities in Colorado, including with respect to the loans and related transactions at issue in this case.  This includes:  (1) recertification of their ability to originate loans; (2) securing delegated underwriting authority, which affected Universal's ability to approve mortgage loans to sell to Lehman with less oversight from Lehman; and (3) responding to repurchase demands issued by Lehman or its agent from Colorado.

10.    Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to the claims occurred in this District and because the division of

LBHI that oversees its residential mortgage loss recovery program is based in Greenwood Village, Colorado, and thus its witnesses and documents are located here.

## IV. FACTUAL ALLEGATIONS

11.     At all relevant times, Lehman engaged in the purchase and sale of mortgage loans.

12.     Universal engages in mortgage lending, as well as the sale of mortgage loans on the secondary market to investors such as Lehman.

13.     Universal entered into a written Loan Purchase Agreement (Servicing Released Transactions) dated September 20, 2005 with LBB and thereafter amended the Agreement by Addendum dated October 1, 2006 (together the "Agreement").  A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

14.     The Agreement specifically incorporates the terms and conditions of the Seller's Guide of Lehman's agent, Aurora Loan Services LLC, which sets forth additional duties and obligations of Universal.

15.     The Seller's Guide in its entirety is valid and binding upon Universal.  Attached hereto as **Exhibit 2** are the specific Sections of the Seller's Guide most directly pertinent to the claims in this Complaint.

16.     The Agreement and the Seller's Guide set forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to purchase price, delivery and conveyance of the mortgage loans and mortgage loan documents, examination of mortgage loan files and underwriting, representations and warranties concerning the parties and individual mortgage loans purchased or sold, and remedies for breach.

17.     Universal sold mortgage loans to LBB under the Agreement and Seller's Guide, including Loan ****8749 (Reynolds).

18.     LBB purchased Loan ****8749 from Universal.

19.     Subsequent to the sale of Loan ****8749 by Universal to LBB, LBB sold Loan ****8749 to LBHI.

20.     Subsequent or simultaneously with the sale by LBB to LBHI, LBB assigned to LBHI all of its rights and remedies under the Agreement and Seller's Guide pertaining to Loan ****8749.

### Misrepresentations/Underwriting Defects

21.     With respect to each of the loans sold to Lehman under the Agreement and Seller's Guide, Universal made a number of representations, warranties and covenants concerning the mortgage loans including, but not limited to the following:

    (a)     the validity of all mortgage loan documentation;

    (b)     the accuracy and integrity of all information and documentation regarding borrower identity, income, employment, credit, assets, and liabilities used in making the decision to originate the mortgage loans;

    (c)     occupancy by the borrowers of the properties securing the mortgage loans;

    (d)     the ownership, nature, condition, and value of the real properties securing the mortgage loans; and

    (e)     the conformance of the mortgage loans with applicable underwriting guidelines and loan program requirements.

22.     Universal also represented and/or warranted that no errors, omissions, misrepresentations, negligence, fraud, or similar occurrence took place with respect to the mortgage loans by any person involved in the origination of the mortgage loans, and that no predatory or deceptive lending practices were used in the origination of the mortgage loans.

23. Universal represented and/or warranted that it had the ability to perform its obligations under, and satisfy all requirements of, the Agreement and Seller's Guide.

24. Lehman discovered material problems with Loan ****8749 (Reynolds) and that Universal had breached representations, warranties, and/or covenants under the Agreement and Seller's Guide, including, without limitation, those set forth above.

25. As to Loan ****8749 (Reynolds), the borrower and/or the loan documents, including the borrower's loan application, represented that borrower was employed as an "LVN / Nurse / Health Office" at Queen Creek Medical for a period of 3 years and 1 month. A re-verification of employment was conducted after the loan was purchased by LBB, and the employer advised that the borrower was employed on a part-time basis as a "back office medical assistant."

26. LBHI, through its agent, provided Universal with a letter informing Universal of Universal's material breaches of the representations, warranties, and covenants with respect to Loan ****8749.

27. Subsequent to the initial filing of a legal action against Universal and in the course of discovery (*see* ¶ 2 above), LBHI discovered that Loan ****8749 was also in violation of the Seller's Guide because the loan obligation resulted in "payment shock" (Loan payment is more than double borrower's previous housing payment) as described in Section 502 of the Seller's Guide and required Universal to utilize a full-documentation loan product for the borrower.

28. LBHI, through its agent, transmitted a letter on August 23, 2012, informing Universal of the existence of payment shock and the violation of Section 502.

29.     Also subsequent to the initial filing of a legal action against Universal and in the course of discovery, LBHI discovered that Loan ****8749 was also in violation of the Seller's Guide and program profile (also referred to as product guidelines) because:

(a)     Universal failed to complete a Verification of Employment ("VOE") within five (5) days of closing the loan as required by the loan program profile;

(b)     Universal had first attempted to process the borrower for a Countrywide loan product, but then switched to an Aurora product; and

(c)     Universal had received two months of the borrower's bank statements but then ignored that information and failed to take the borrower's income into consideration.

30.     LBHI notified Universal of the additional breaches discussed in paragraph 29 through its summary judgment documents filed in the prior legal action (*see* ¶ 2 above).

31.     The misrepresentation on the loan documents, including the loan application, as to position and duration of employment was a material breach of Universal's representation, warranty and covenant in Section 703(1) of the Seller's Guide that:

> No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgager), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

///

///

///

32.    The misrepresentation on the loan documents, including the loan application, also constituted a material breach of Universal's representation, warranty and covenant in Section 703(12) of the Seller's Guide that:

> The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

33.    Universal's failure to comply (i) with the loan program profile by failing to conduct a VOE within five days of closing, (ii) with Section 502 of the Seller's Guide by failing to require full-documentation due to existence of payment shock, and (iii) failure to comply with Section 502 of the Seller's Guide by failing to consider the borrower's income which was disclosed on bank statements submitted to Universal, were also material breaches of Universal's representation, warranty and covenant in Section 703(8) of the Seller's Guide that:

> Seller, . . . has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan; . . .

34.    Universal's failure to comply (i) with the loan program profile by failing to conduct a VOE within five days of closing, (ii) with Section 502 of the Seller's Guide by failing to require full-documentation due to existence of payment shock, and (iii) failure to comply with Section 502 of the Seller's Guide by failing to consider the borrower's income which was disclosed on bank statements submitted to Universal, were also material breaches of Universal's representation, warranty and covenant in Section 703(21) of the Seller's Guide that:

> The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Program Profile applicable to such Mortgage Loan. . . .

35.     Universal's failure to comply (i) with the loan program profile by failing to conduct a VOE within five days of closing, (ii) with Section 502 of the Seller's Guide by failing to require full-documentation due to existence of payment shock, and (iii) failure to comply with Section 502 of the Seller's Guide by failing to consider the borrower's income which was disclosed on bank statements submitted to Universal was a material breach of Section 717 of the Seller's Guide that:

> All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

36.     Section 701 of the Seller's Guide provides that:

> Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

37.     The breaches discussed above materially and adversely affected the value of the Loan and the interests of LBHI, causing LBHI to lose over one-hundred thousand dollars ($100,000).

38.     As assigned, the Agreement and Seller's Guide provide that in the event of a breach of the representations, warranties, and/or covenants, LBHI or its agent may demand that

Universal repurchase the loan and Universal shall repurchase the loan at a certain repurchase price, and/or that Universal shall indemnify LBHI or its agent for LBHI's losses on such a loan.

39.    Universal has refused or otherwise failed to repurchase Loan ****8749 and has otherwise failed to comply with its obligations under the Agreement and Seller's Guide, including its obligation to indemnify LBHI.

40.    Pursuant to Section 8 of the Agreement, the laws of the State of New York govern this contract action.

41.    All conditions precedent to bringing this action have been met, occurred or have been waived.

## V.  CLAIMS FOR RELIEF

### First Claim for Relief
(Breach of Contract)

42.    LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

43.    The Agreement and the Seller's Guide is a valid and enforceable contract that is binding upon Universal.

44.    Lehman, Lehman's agents and any and all assignees of Lehman's rights have substantially performed all of their obligations under the Agreement and Seller's Guide.

45.    Universal breached the Agreement and Seller's Guide by breaching the representations, warranties, and/or covenants including but not limited to those described above in Section IV.

46.    Universal further breached the Agreement and Seller's Guide by refusing or otherwise failing to repurchase Loan ****8749 and/or failing to indemnify Lehman for its losses as to Loan ****8749.

47.     Universal's breaches of the Agreement and Seller's Guide as to Loan ****8749 resulted in actual and consequential damages to LBHI in excess of $100,000.00, plus prejudgment interest pursuant to New York law, attorneys fees, litigation costs and all other fees and costs provided by the Agreement, the exact amount of which to be proven by the evidence.

## VI.  **PRAYER FOR RELIEF**

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against defendant Universal as follows:

(a)     For all damages arising from or relating to Universal's breaches of contract, in an amount to be proven at trial;

(b)     For an Order of this Court declaring that Universal is required to compensate Lehman immediately for all actual and consequential damages resulting from Universal's breaches of the Representations, Warranty, and Covenant provisions of the Agreement and Seller's Guide;

(c)     For recoverable interest;

(d)     For the costs and expenses incurred by LBHI in enforcing Universal's obligations under the Agreement and Seller's Guide, including attorneys' fees and costs and any expert witness fees incurred in litigation; and

(e)     For such other relief as the Court deems just and proper.

Dated: January 16, 2013

Respectfully submitted,

By: _____ */s/ Christopher P. Carrington*
        Justin D. Balser
        Christopher P. Carrington
Email: justin.balser@akerman.com
Email: chris.carrington@akerman.com

**AKERMAN SENTERFITT LLP**
1400 Wewatta Street, Suite 500
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
*Attorneys for Plaintiff, Lehman Brothers Holdings Inc.*

# EXHIBIT E

1    Daniel K. Calisher (State Bar No. 181821)
     calisher@fostergraham.com
2    FOSTER GRAHAM MILSTEIN & CALISHER LLP
     621 Seventeenth Street, 19th Floor
3    Denver, Colorado 80293
     Telephone: (303) 333-9810
4    Facsimile: (303) 333-9786

5    Michael A. Rollin (State Bar No. 251557)
     mrollin@rplaw.com
6    REILLY POZNER LLP
     10833 Wilshire Boulevard, Unit 604
7    Los Angeles, California 90024
     Telephone: (310) 425-0922
8    Facsimile: (303) 893-6110

9    *Attorneys for Plaintiff*
     *LEHMAN BROTHERS HOLDINGS, INC.*

10

11                    **UNITED STATES DISTRICT COURT**
12                    **CENTRAL DISTRICT OF CALIFORNIA**

13                                         CV10    7207

14   LEHMAN BROTHERS HOLDINGS,        CASE NO.
     INC.
15                                                              )
                 Plaintiff,
16         vs.                         **COMPLAINT**

17   PMC BANCORP f/k/a                 1)   BREACH OF CONTRACT
     PROFESSIONAL MORTGAGE             2)   BREACH OF EXPRESS
18   CORP.                            WARRANTY
                                       3)   BREACH OF CONTRACT –
19               Defendant.                 INDEMNIFICATION
                                      AGREEMENT
20                                     4)   BREACH OF CONTRACT –
                                      SPECIFIC PERFORMANCE
21

22

23

24         Plaintiff Lehman Brothers Holdings, Inc. ("LBHI"), by and through its

25   undersigned counsel, and for its complaint against defendant PMC Bancorp f/k/a

26   Professional Mortgage Corp. ("PMC"), hereby and states and alleges as follows:

27

28

                                        1
                                    COMPLAINT

## NATURE OF ACTION

1.      LBHI's wholly owned subsidiary, Lehman Brothers Bank, FSB ("LBB") purchased a number of residential mortgage loans from PMC pursuant to one or more written contracts. LBB subsequently assigned to LBHI its rights under those contracts. LBHI discovered that PMC breached one or more of its agreements, representations, and/or warranties under the contract(s) relating to certain loans. By this action, LBHI seeks specific performance under the subject contract(s) relating to certain loans or, alternatively, seeks to recover from PMC losses incurred by LBHI relating to certain loans.

## PARTIES

2.      LBHI is a Delaware corporation with its principal place of business in New York.

3.      Upon information and belief, PMC is a California corporation, with a principal place of business in City of Industry, California.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between LBHI and PMC, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because PMC resides in City of Industry, California.

COMPLAINT

# FACTUAL ALLEGATIONS

6.     At all times relevant hereto, PMC engaged in mortgage lending, as well as the sale of mortgage loans on the secondary mortgage market to investors such as LBB and/or LBHI.

7.     On or about March 25, 2004, PMC entered into a written Loan Purchase Agreement with LBB ("Agreement").

8.     The Agreement specifically incorporated the terms and conditions of the Seller's Guide ("Seller's Guide") of Aurora Loan Services LLC ("Aurora"), LBB's wholly-owned subsidiary, which sets forth additional duties and obligations of PMC.

9.     The Agreement and Seller's Guide constitute a valid and enforceable contract that is binding upon PMC.

10.     The Agreement and Seller's Guide set forth the duties and obligations of the parties with respect to the purchase and sale of the subject mortgage loans, including but not limited to the following: (a) purchase price; (b) delivery of the loans and attendant documentation; (c) examination of loan files; (d) underwriting; (e) representations and warranties concerning individual loans; and (f) remedies for breach.

11.     PMC sold a number of mortgage loans to LBB under the Agreement and Seller's Guide, including the certain mortgage loans set forth on **Exhibit A** hereto, which is incorporated by this reference as though fully set forth herein.

3

12. Subsequent to such sales, LBB assigned all of its rights and remedies under the Agreement and Seller's Guide with respect to the subject mortgage loans to LBHI.

13. On or about August 15, 2007, PMC entered into an Indemnification Agreement ("Indemnification Agreement") regarding Loan Nos. ****8454, ****0794, and ****8129.

14. In the Indemnification Agreement, PMC confessed liability regarding Loan Nos. ****8454, ****0794, and ****8129, formally surrendered the exclusive right to liquidate the property securing the loan, and agreed to pay certain damages.

## PMC's Breach Of Representations And/Or Warranties

15. With respect to each of the subject mortgage loans, PMC made a number of representations and/or warranties, including but not limited to: (a) the validity of the loan documentation; (b) the absence of fraud relating thereto; (c) the accuracy of information regarding borrower identity, income, employment, credit, debt, assets, and liabilities used in making the decision to originate the mortgage loans; (c) occupancy by the borrower of the real property securing the loans; (d) the ownership, nature, condition, and value of the real property securing the loans; (e) the absence of early payment defaults; (f) the absence of straw purchasers; (g) conformance of the loans with applicable underwriting guidelines and loan program requirements; and (h) its obligation to repurchase the loan in the event of a breach of any representation and/or warranty.

4

COMPLAINT

16.     LBHI discovered one or more material defects in the subject loans, and further discovered PMC had breached one or more of its representations and/or warranties under the Agreement and/or Seller's Guide.

17.     LBHI provided PMC with written notice of PMC's breach of the representations and/or warranties with respect to the subject loans.

18.     PMC has refused or otherwise failed to comply with its obligations under the Agreement and Seller's Guide regarding the subject loans.

### **Early Payment Defaults**

19.     The subject contract(s) specify that PMC shall repurchase mortgage loans that become Early Payment Defaults.

20.     For loans purchased pursuant to the seller's delegated underwriting authority, the loan becomes an Early Payment Default if the borrower fails to make the first or second monthly payment due within 30 days of each such monthly payment's respective due date.

21.     PMC received delegated underwriting authority before it sold the subject loans.

22.     As indicated on **Exhibit A** hereto, certain loans purchased from PMC became Early Payment Defaults, namely Loan Nos. ****8454, ****3863, and ****8129.

23.     Specifically, with respect to those three loans, the borrower(s) failed to make the first and/or second payment within 30 days of the applicable due date(s).

**COMPLAINT**

24.    LBHI provided PMC with written notice concerning the Early Payment Defaults and demanded that PMC repurchase those mortgage loans.

25.    PMC has refused or otherwise failed to repurchase the mortgage loans or otherwise comply with its obligations under the Agreement and Seller's Guide with respect to the subject loans suffering from an Early Payment Default.

26.    LBHI, as well as its predecessors and agents, have substantially performed any and all of their respective obligations under the Agreement and Seller's Guide.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

27.    LBHI incorporates the foregoing allegations as though fully set forth herein.

28.    PMC has breached the Agreement and Seller's Guide by: (a) breaching one or more of its agreements, representations and/or warranties; (b) refusing or otherwise failing to repurchase the subject mortgage loans; and/or (c) refusing to pay LBHI for losses suffered arising from or relating to the subject mortgage loans.

29.    PMC's breaches of the Agreement and Seller's Guide have resulted in actual and consequential damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
(Breach of Express Warranty)

30.    LBHI incorporates the foregoing allegations as though fully set forth herein.

6

31.   PMC made a number of express warranties with respect to material facts concerning the subject loans, including but not limited to the warranties described above.

32.   The warranties contained in the Agreement and Seller's Guide were an essential part of the bargain.

33.   PMC breached one or more of its warranties relating to the loans identified on **Exhibit A** hereto.

34.   LBHI provided PMC with written notice concerning PMC's breaches of its express warranties.

35.   PMC has refused or otherwise failed to remedy or compensate LBHI for PMC's breaches of one or more express warranties.

36.   As a result of PMC's breach of one or more express warranties contained in the Agreement and/or Seller's Guide, LBHI has sustained actual and consequential damages in an amount to be proven at trial.

## **THIRD CLAIM FOR RELIEF**
(Breach of Contract—Indemnification Agreement)

37.   LBHI incorporates the foregoing allegations as though fully set forth herein.

38.   The Indemnification Agreement constitutes a valid and enforceable contract that is binding upon PMC.

7

39.     PMC has liability under the Indemnification Agreement for Loan Nos. ****8454, ****0794, and ****8129 and has agreed to pay certain damages.

40.     As a result of PMC's breach of the Indemnification Agreement, LBHI has sustained actual and consequential damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract – Specific Performance)

41.     LBHI incorporates the foregoing allegations as though fully set forth herein.

42.     PMC has breached the Agreement and Seller's Guide by: (a) breaching one or more of its agreements, representations, and/or warranties; and (b) refusing or otherwise failing to repurchase the subject mortgage loans.

43.     PMC specifically agreed to the remedy of repurchase.

44.     Due to the unique and specific nature of the mortgage loans and the underlying real property securing the loans, LBHI currently has no adequate remedy at law for redress of PMC's breaches and its obligation to repurchase loans.

45.     LBHI is therefore entitled to an Order of this Court requiring specific performance by PMC of its repurchase obligations under the Agreement and Seller's Guide.

## RELIEF REQUESTED

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor against PMC as follows:

8

(a)   For all damages and/or losses arising from or relating to PMC's breach of contract, in an amount to be proved at trial;

(b)   For all damages and/or losses arising from or relating to PMC's breach of warranties, in an amount to be proven at trial;

(c)   For all damages and/or losses arising from or relating to PMC's breach of the Indemnification Agreement, in an amount to be proven at trial;

(d)   For an Order from this Court directing PMC to repurchase those mortgage loans set forth on **Exhibit A** for which repurchase is available;

(e)   For recoverable interest;

(f)   For the costs and expenses of suit incurred herein, including, but not limited to, attorney fees, costs, and expert witness expenses; and,

(g)   For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury herein on all issues so triable.

DATED:  September 27, 2010

FOSTER GRAHAM
MILSTEIN & CALISHER, LLP

Daniel K. Calisher
*Attorneys for Plaintiff*
*LEHMAN BROTHERS HOLDINGS, INC.*

9

*Lehman Brothers Holdings, Inc., v. PMC Bancorp f/k/a Professional Mortgage Corp.*

## Exhibit A

| | Loan Number | Basis of Claim |
|---|---|---|
| 1. | ****8152 | Misrepresentation – First Party Fraud, Income, Employment, Occupancy; and any other discovered breach |
| 2. | Loan No. 32403065 - new Loan No. 124895608 | Misrepresentation – First Party Fraud, Income, Employment, Occupancy; and any other discovered breach |
| 3. | ****3193 | Misrepresentation – Debts; and any other discovered breach |
| 4. | Loan No. 31013857 – new Loan No. 124895517 | Misrepresentation – Occupancy; and any other discovered breach |
| 5. | ****8454 | Early Payment Default; and any other discovered breach |
| 6. | ****0794 | Misrepresentation – Debts; and any other discovered breach |
| 7. | ****8330 | Misrepresentation – Income and employment; and any other discovered breach |
| 8. | ****2582 | Misrepresentation - Value |
| 9. | ****6622 | Misrepresentation – Income and employment |
| 10. | ****3863 | Misrepresentation – Occupancy; Early Payment Default; and any other discovered breach |
| 11. | ****8129 | Early Payment Default; and any other discovered breach |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV10- 7207 SVW (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Reilly Pozner, LLP
Michael A. Rollin (#251557)
mrollin@rplaw.com
515 South Flower Street, 36th Floor
Los Angeles, California 90071
Telephone: 213-236-3576 / Fax: 213-236-3570

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LEHMAN BROTHERS HOLDINGS INC.

v.

PMC BANCORP, f/k/a PROFESSIONAL
MORTGAGE CORP.

PLAINTIFF(S)

DEFENDANT(S).

CASE NUMBER

CV10 7207 SWW PJWx

**SUMMONS**

TO:   DEFENDANT(S):   PMC BANCORP f/k/a PROFESSIONAL MORTGAGE CORP.

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _____Michael A. Rollin_____, whose address is __515 South Flower Street, 36th Floor, Los Angeles, California 90071_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

SEP 2 7 2010

Dated: _____

Clerk, U.S. District Court

By: _____CHRISTOPHER POWERS_____

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    SUMMONS

ORIGINAL

BY FAX

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| LEHMAN BROTHERS HOLDINGS, INC. | PMC BANCORP, f/k/a PROFESSIONAL MORTGAGE CORP. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Daniel K. Calisher (#181821) Foster Graham Milstein & Calisher, LLP 621 Seventeenth Street, 19th Floor, Denver, CO 80293  303-333-9810 | Joseph A. Walker (#047223) The Walker Law Firm, P.C. 1301 Dove Street, Suite 720, Newport Beach, CA 92660  949-752-2522 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No  ☐ **MONEY DEMANDED IN COMPLAINT:** $ In excess of $75,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC § 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☒ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV10 7207

FOR OFFICE USE ONLY:  Case Number:

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☐ No ☑ Yes
If yes, list case number(s): CV-09-3829 (RGK)

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Lehman Brothers Holdings, Inc. - New York and Delaware |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| PMC Bankcorp f/k/a Professional Mortgage Corp. - Los Angeles County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Daniel K. Calvert_      Date September 27, 2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# EXHIBIT F

EFILED Document
CO Douglas County District Court 18th JD
Filing Date: Jun 14 2011 12:24PM MDT
Filing ID: 38134871
Review Clerk: Lori Reeber

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DOUGLAS, STATE OF COLORADO**<br><br>4000 Justice Way<br>Castle Rock, Colorado 80109<br>Telephone: (303) 663-7211 | |
| **Plaintiffs:** AURORA BANK FSB and AURORA LOAN SERVICES LLC<br><br>**v.**<br><br>**Defendant(s):** PMC BANCORP, f/k/a Professional Mortgage Corp., a California corporation; and DOES 1 through 50, inclusive | ▲ **COURT USE ONLY** ▲<br><br>Case No.: 2011 CV 1294<br><br>Division: 3 |
| **Attorneys for Plaintiffs:**<br><br>Justin D. Balser (Reg. No. 34365)<br>**AKERMAN SENTERFITT LLP**<br>511 Sixteenth Street, Suite 420<br>Denver, Colorado 80202<br>Telephone: (303) 260-7712<br>Facsimile: (303) 260-7714<br>E-Mail: justin.balser@akerman.com | |

### DISTRICT COURT CIVIL SUMMONS

**TO THE ABOVE NAMED DEFENDANT: PMC BANCORP, f/k/a Professional Mortgage Corp., a California corporation**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 20 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 30 days after such service upon you. Your answer or counterclaim must be accompanied by the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

{DN090904;1}                                         1



Dated: June 14, 2011

By:     /s/ Justin D. Balser
        Justin D. Balser (Reg. No. 34365)
        Email: justin.balser@akerman.com

**AKERMAN SENTERFITT LLP**
511 Sixteenth Street, Suite 420
Denver, Colorado  80202
Telephone: (303) 260-7712
Facsimile:  (303) 260-7714

*Attorneys for Plaintiffs*
*AURORA BANK FSB and*
*AURORA LOAN SERVICES LLC*

In accordance with C.R.C.P. 121 §1-26(9), a printed copy of this document with original signature(s) is maintained by **AKERMAN SENTERFITT LLP** and will be made available for inspection by other parties or the Court upon request.

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DOUGLAS, STATE OF COLORADO**<br><br>4000 Justice Way<br>Castle Rock, Colorado 80109<br>Telephone: (303) 663-7211 | **EFILED Document**<br>CO Douglas County District Court 18th JD<br>Filing Date: May 23 2011 10:14AM MDT<br>Filing ID: 37731658<br>Review Clerk: georgia courtright |
| **Plaintiffs:** AURORA BANK FSB and AURORA LOAN SERVICES LLC<br><br>**v.**<br><br>**Defendant(s):** PMC BANCORP, f/k/a Professional Mortgage Corp., a California corporation; and DOES 1 through 50, inclusive | ▲ **COURT USE ONLY** ▲<br><br>Case No.:<br><br>Division: |
| **Attorneys for Plaintiffs:**<br><br>Justin D. Balser (Reg. No. 34365)<br>**AKERMAN SENTERFITT LLP**<br>511 Sixteenth Street, Suite 420<br>Denver, Colorado  80202<br>Telephone: (303) 260-7712<br>Facsimile:  (303) 260-7714<br>E-Mail:  justin.balser@akerman.com | |

## DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case.  It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases.

2. Check the boxes applicable to this case.

☐Simplified Procedure under C.R.C.P. 16.1 **applies** to this case because this party does not seek a monetary judgment in excess of $100,000.00 against another party, including any attorney fees, penalties or punitive damages but excluding interest and costs and because this case is not a class action or forcible entry and detainer, Rule 106, Rule 120, or other expedited proceeding.

☐Simplified Procedure under C.R.C.P. 16.1, **does not apply** to this case because (check one box below identifying why 16.1 does not apply):
   ☐This is a class action or forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding,
   **or**
   ☒This party is seeking a monetary judgment for more than $100,000.00 against another party, including any attorney fees, penalties or punitive damages, but excluding interest and costs (see C.R.C.P. 16.1(c)),

**or**

☐ Another party has previously stated in its cover sheet that C.R.C.P. 16.1 does not apply to this case.

**3.** ☐ This party makes a **Jury Demand** at this time and pays the requisite fee.  See C.R.C.P. 38. (Checking this box is optional.)

Dated this 23rd day of May, 2011.

Respectfully submitted,

By:     /s/ Justin D. Balser
         Justin D. Balser (Reg. No. 34365)
         Email: justin.balser@akerman.com

AKERMAN SENTERFITT LLP
511 Sixteenth Street, Suite 420
Denver, Colorado  80202
Telephone: (303) 260-7712
Facsimile:  (303) 260-7714

*Attorneys for Plaintiffs*
*AURORA BANK FSB and*
*AURORA LOAN SERVICES LLC*

In accordance with C.R.C.P. 121  §1-26(9), a printed copy of this document with original signature(s) is maintained by **AKERMAN SENTERFITT** LLP and will be made available for inspection by other parties or the Court upon request.

<table>
<tr><td>

**DISTRICT COURT, COUNTY OF DOUGLAS, STATE OF COLORADO**

4000 Justice Way
Castle Rock, Colorado 80109
Telephone: (303) 663-7211

</td><td>

EFILED Document
CO Douglas County District Court 18th JD
Filing Date: May 23 2011 10:14AM MDT
Filing ID: 37731658
Review Clerk: georgia courtright

</td></tr>
</table>

| | |
|---|---|
| **Plaintiffs:** AURORA BANK FSB and AURORA LOAN SERVICES LLC <br><br> **v.** <br><br> **Defendant(s):** PMC BANCORP, f/k/a Professional Mortgage Corp., a California corporation; and DOES 1 through 50, inclusive | ▲ **COURT USE ONLY** ▲ |
| **Attorneys for Plaintiffs:** <br><br> Justin D. Balser (Reg. No. 34365) <br> **AKERMAN SENTERFITT LLP** <br> 511 Sixteenth Street, Suite 420 <br> Denver, Colorado  80202 <br> Telephone: (303) 260-7712 <br> Facsimile:  (303) 260-7714 <br> E-Mail:  justin.balser@akerman.com | Case No.: <br><br> Division: |

**COMPLAINT FOR (1) BREACH OF CONTRACT AND (2) BREACH OF WARRANTY**

Aurora Bank FSB (**Aurora Bank**) and Aurora Loan Services LLC (**Aurora Loan**) (or collectively, **plaintiffs**) by and through their undersigned counsel, submit this complaint and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Aurora Bank is a federally-chartered savings bank organized and existing under the laws of the United States with its home office in Wilmington, Delaware.

2.      Aurora Bank is formerly known as Lehman Brothers Bank, FSB and shall be referred to herein as **Aurora Bank**.

3.      Aurora Loan is a limited liability company organized under the laws of the State of Delaware.  Aurora Loan is a wholly-owned subsidiary of Aurora Bank.  Aurora Loan's place of business is located at 10350 Park Meadows Drive, Littleton, Colorado 80124.

4.     Defendant PMC Bancorp (**PMC**) is a California corporation duly authorized to conduct business in the State of Colorado, and at all relevant times, was doing business in the State of Colorado, and was engaged in the business of originating and selling residential real estate loans.  PMC is formerly known as Professional Mortgage Corp.

5.     This Court has personal jurisdiction over the parties hereto.

6.     This Court has subject matter jurisdiction over this case.

7.     Venue is proper in this Court pursuant to C.R.C.P. 98(c).

## FACTUAL ALLEGATIONS

8.     PMC is a correspondent seller of mortgage loans on the secondary mortgage market.  PMC would originate, fund, and then sell closed residential real estate loans to purchasers based on contractual agreements.

9.     Aurora Bank purchased mortgage loans from PMC pursuant to written contracts.

10.     This action seeks to recover damages from PMC for PMC's breaches of the contract and warranty with respect to certain mortgage loans it sold to plaintiffs.

11.     All agreements referenced herein are governed by New York law.

### The Purchase Agreement and Seller's Guide

12.     On March 25, 2004, Aurora Bank and PMC entered into a loan purchase agreement (**Purchase Agreement**) for the sale by PMC and purchase by Aurora of certain mortgage loans.  The Purchase Agreement incorporated by reference Aurora Loan's Seller's Guide (**Seller's Guide**).

13.     The Purchase Agreement and the Seller's Guide sets forth the duties and obligations of the parties with respect to the sale and purchase of mortgage loans, including, but not limited to, purchase price, delivery and conveyance of the mortgage loans and mortgage loan documents, examination of mortgage loan files and underwriting, representations and warranties concerning the parties and individual mortgage loans purchased or sold, and remedies for breach.

14.     With respect to each of the loans sold to Aurora Bank under the Purchase Agreement and Seller's Guide, PMC made representations, gave warranties and covenanted certain facts concerning the mortgage loans including, without limitation, with respect to:

(a)     the validity of all mortgage loan documentation;

(b)     the accuracy and integrity of all information and documentation regarding borrower identity, income, employment, credit, assets, and liabilities used in making the decision to originate the mortgage loans;

(c)     occupancy by the borrowers of the properties securing the mortgage loans;

     (d)    the ownership, nature, condition, and value of the real properties securing the mortgage loans; and

     (e)    the conformance of the mortgage loans with applicable underwriting guidelines and loan program requirements.

    15.    PMC also represented and/or warranted that no errors, omissions, misrepresentations, negligence, fraud, or other mistakes or wrongdoing, occurred or were committed by any person involved in the origination of the mortgage loans, and that no predatory or deceptive lending practices were used in the origination of the mortgage loans.

    16.    PMC represented and/or warranted that it has the ability to perform its obligations under, and satisfy all requirements of, the Purchase Agreement and Seller's Guide.

### The Breaching Loans

    17.    PMC sold mortgage loans to Aurora Bank under the Purchase Agreement and Seller's Guide, including the loans listed on **EXHIBIT A** (the **Breaching Loans**).

    18.    With respect to mortgage loan number ******1587, the income and/or employment represented on the borrower's loan application was misrepresented, incorrect or inaccurate.

    19.    With respect to mortgage loan number ******8502, information regarding the borrower's occupancy of the property represented on the borrower's loan application was misrepresented, incorrect or inaccurate.

    20.    With respect to mortgage loan number ******8306, the income and/or employment represented on the borrower's loan application was misrepresented, incorrect or inaccurate.

    21.    With respect to mortgage loan number ******9429, the income and/or employment represented on the borrower's loan application was misrepresented, incorrect or inaccurate.

    22.    The matters set forth in paragraphs 18 through 21 above constitute breaches of the representations, warranties, and/or covenants in the Purchase Agreement and Seller's Guide.

    23.    The Purchase Agreement and Seller's Guide provide that in the event of a breach of the representations, warranties and/or covenants, Aurora Bank or its agent may demand that PMC repurchase the loans at a certain repurchase price, or indemnify Aurora Bank for losses.

    24.    Aurora Bank provided PMC with written notice concerning the breaches and demanded that PMC indemnify it for losses suffered on the Breaching Loans.

    25.    PMC has refused or otherwise failed to indemnify Aurora Bank with respect to the Breaching Loans and has otherwise failed to comply with its obligations under the Agreements and Seller's Guide.

## FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT – BREACHING LOANS
### (AGAINST ALL DEFENDANTS)

26.     Plaintiffs incorporate herein the allegations set forth in paragraphs 1 through 25 above.

27.     The Purchase Agreement and Seller's Guide is a valid and enforceable contract that is binding upon PMC.

28.     Aurora Bank has substantially performed all of its obligations under the Purchase Agreement and Seller's Guide.

29.     PMC breached the Purchase Agreements and Seller's Guide by breaching the representations, warranties, and/or covenants and refusing or otherwise failing to repurchase the Breaching Loans and/or failing to indemnify Aurora Bank.

30.     PMC's breaches of the Purchase Agreement and Seller's Guide resulted in actual and consequential damages to Aurora Bank in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### BREACH OF EXPRESS WARRANTY – BREACHING LOANS
### (AGAINST ALL DEFENDANTS)

31.     Plaintiffs incorporate herein the allegations set forth in paragraphs 1 through 30 above.

32.     The Purchase Agreement and Seller's Guide constitute valid and enforceable contracts that are binding upon PMC.

33.     PMC made express warranties as set forth in paragraphs 14, 15, and 16 (among other warranties) above with regard to each of the mortgage loans sold to Aurora Bank under the Purchase Agreement and Seller's Guide.

34.     The express warranties contained in the Purchase Agreement and Seller's Guide were part of the basis of the bargain between Aurora Bank and PMC.

35.     PMC breached these express warranties with respect to the Breaching Loans.

36.     Aurora Bank, through its agent, provided PMC with written notice concerning PMC's breaches of the express warranties.

37.     PMC refused or otherwise failed to take adequate steps to remedy or to compensate Aurora Bank for PMC breaches of the express warranties.

## RELIEF SOUGHT FOR THESE CLAIMS

*Wherefore*, plaintiffs respectfully ask the Court to grant judgment in their favor and against defendant PMC:

(a)     Awarding damages sustained as a result of PMC's breaches of contract with respect to the Purchase Agreement and Seller's Guide, in an amount to be determined at trial, plus interest;

(c)     Awarding damages sustained as a result of PMC's breaches of express warranty with respect to the Purchase Agreement and Seller's Guide, in an amount to be determined at trial, plus interest;

(d)     Awarding a declaration that PMC is required to compensate Aurora Bank immediately for all actual and consequential damages resulting from PMC's breaches of the representations and/or warranties of the Purchase Agreement and Seller's Guide.

(e)     Awarding reasonable attorneys' fees and costs incurred in this action; and

(f)     Awarding such other and further relief as the Court deems just and proper.

Dated this 23rd day of May, 2011.

Respectfully submitted,

By:     */s/ Justin D. Balser*
        Justin D. Balser (Reg. No. 34365)
        Email: justin.balser@akerman.com

**AKERMAN SENTERFITT LLP**
511 Sixteenth Street, Suite 420
Denver, Colorado  80202
Telephone: (303) 260-7712
Facsimile:  (303) 260-7714

*Attorneys for Plaintiffs*
*AURORA BANK FSB and*
*AURORA LOAN SERVICES LLC*

In accordance with C.R.C.P. 121 §1-26(9), a printed copy of this document with original signature(s) is maintained by **AKERMAN SENTERFITT LLP** and will be made available for inspection by other parties or the Court upon request.

# EXHIBIT A

EFILED Document
CO Douglas County District Court 18th JD
2011 10:14AM MDT
Filing ID: 37731658

| | AURORA LOAN No. | NATURE OF CLAIM |
|---|---|---|
| 1 | ****1587 | BREACH OF REPRESENTATIONS, WARRANTIES AND/OR COVENANTS |
| 2 | ****8502 | BREACH OF REPRESENTATIONS, WARRANTIES AND/OR COVENANTS |
| 3 | ****8306 | BREACH OF REPRESENTATIONS, WARRANTIES AND/OR COVENANTS |
| 4 | ****9429 | BREACH OF REPRESENTATIONS, WARRANTIES AND/OR COVENANTS |

{DN083679;1}

# EXHIBIT G

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: **1:11-cv-01605-PAB-MEH**

AURORA BANK FSB and AURORA LOAN SERVICES, LLC,

       Plaintiffs,

v.

PMC BANCORP, f/k/a Professional Mortgage Corp.,
a California corporation; and DOES 1 through 50, inclusive,

       Defendants.

---

## SETTLEMENT AGREEMENT OF ALL PARTIES

---

    Attached hereto is a signed Settlement Agreement executed by AURORA BANK, FSB,

AURORA LOAN SERVICES, LLC and PMC BANCORP.


**THE WALKER LAW FIRM, APC**

Dated: May 23, 2013      By: _____

Joseph A. Walker, #047223
1301 Dove Street, #720
Newport Beach, CA 92660
Telephone: (949) 752-2522
Email: jwalker@twlf.net
*Attorneys for Defendant, PMC BANCORP*

- 1 -

## SETTLEMENT AGREEMENT WITH MUTUAL RELEASES

This Settlement Agreement with Mutual Releases, including all exhibits attached hereto (collectively **Agreement**), is entered into this 23ᵗ day of April 2013, by and between Lehman Brothers Bank FSB n/k/a Aurora Bank FSB and Aurora Loan Services LLC (collectively **Aurora**) and PMC Bancorp (**PMC**). Each of the foregoing parties is sometimes referred to herein as a **Party** and collectively as the **Parties**.

## RECITALS

A.     Aurora and PMC are parties to multiple, specific residential mortgage loan purchase agreements (**LPAs**).

B.     PMC sold numerous residential mortgage loans to Aurora under the LPAs.

C.     A dispute has arisen between Aurora and PMC concerning whether PMC is obligated under the LPAs to indemnify Aurora for losses arising from or relating to certain mortgage loans purchased by Aurora from PMC.

D.     In connection with the dispute, a lawsuit is pending between the Parties in the United States District Court for the District of Colorado, captioned as *Aurora Bank FSB and Aurora Loan Services LLC v. PMC Bancorp f/k/a Professional Mortgage Corp. and DOES 1 through 50*, civil action no. 11-cv-01605-RBJ-MEH.   The Lawsuit concerns certain residential mortgage loans, identified therein.  On June 20, 2012, Plaintiffs in the Lawsuit filed a First Amended Complaint identifying three specific mortgage loans (the **Lawsuit**).

E.     On February 21, 2013, the Parties participated in a settlement conference before Magistrate Judge Craig Shaffer, U.S. District Court for the District of Colorado, during which the parties reached a Settlement.  The terms of said settlement were memorialized on the Court record (the **Settlement**).  The transcript of the Settlement from the Court record is attached hereto as **Exhibit A (the Settlement Transcript)**, and incorporated herein and made a part hereof by reference.  Should a conflict arise between the language of this Agreement and the Settlement Transcript, the terms of the Settlement Transcript shall be binding.

NOW THEREFORE, in consideration of the promises, agreements, and mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

/  /  /

/  /  /

AURORA
PMC _____

## AGREEMENT AND RELEASE

**Section 1. <u>Settlement Amount</u>.**
PMC hereby agrees to pay Aurora, via wire transfer of funds at Aurora's direction, the total sum of One Hundred Fifty Thousand Dollars ($150,000.00) (the Settlement Amount) within 60 days of execution of this Agreement.

**Section 2. <u>Dismissal of the Lawsuit</u>.**
No later than five (5) court days following the wire by PMC of the Settlement Amount as set forth in Section 1, the Parties agree to file a Stipulation to Dismiss the Lawsuit with prejudice, in the form attached hereto as **<u>Exhibit B</u>**. Each party is to bear its own attorneys' fees and costs originating from or relating to the Lawsuit.

**Section 3. <u>Release by Aurora</u>.**
Aurora, for itself, as well as for its respective officers, directors, employees, agents, successors, assigns, affiliates, members, managers and other representatives, hereby completely, unconditionally, and forever releases, acquits, and discharges PMC as well as its successors, assigns, members, managers, officers, directors, employees, agents, divisions, affiliates, and other representatives with respect to any and all actions, causes of action, claims, counterclaims, debts, demands, liabilities, losses, and damages relating to the Lawsuit.

**Section 4. <u>Release by PMC</u>.**
PMC, for itself, as well as for its successors, assigns, affiliates, members, managers, officers, directors, employees, principals, agents, and other representatives hereby completely, unconditionally, and forever release, acquit, and discharge Aurora, as well as its successors, assigns, officers, directors, employees, agents, divisions, affiliates, and other representatives, with respect to any and all actions, causes of action, claims, counterclaims, debts, demands, liabilities, losses, and damages relating to the Lawsuit.

**Section 5. <u>No Third Party Beneficiaries</u>.**
It is specifically understood and agreed that the foregoing release shall not extend to or be for the benefit of third parties unaffiliated with the Parties, including but not limited to borrowers, appraisers, title companies, insurers, or others involved in the underlying mortgage transactions, none of whom shall have any rights hereunder, including but not limited to rights as a third party beneficiary.

**Section 6. <u>Release Conditions</u>.**
Nothing contained herein shall release, or otherwise discharge, or in any manner affect any and all claims between the Parties that may exist, whether sounding in tort, contract, or otherwise, that arise out of events, transactions, occurrences, or contracts relating to any loan except for the Lawsuit.

Specifically, without limitation, it is understood and agreed that the releases, acquittals, and discharges given herein shall only apply to the Lawsuit. It is mutually agreed the releases provided herein shall not be effective until such time as PMC wires the Settlement Amount, as set forth in Section 1 above.

(5-21-13)                                      - 2 -                                      AURORA ___
                                                                                          PMC ___

**Section 7. <u>Releases Valid Even If Additional or Different Facts</u>.**

The Parties acknowledge they may discover facts, which are additional to or different from those, which they now know or believe to be true regarding the Lawsuit. Nonetheless, it is the Parties' intent to fully and finally compromise and settle all claims which exist between them (but not against third parties) arising from or relating to the Lawsuit. To effectuate that intention, the releases given herein shall be and shall remain full and complete releases regarding <u>the Lawsuit</u>, notwithstanding the discovery of any additional or different facts by any Party.

**Section 8. <u>No Release For Breach of This Agreement</u>.**

Nothing contained herein is intended to release any party hereto from any claims, rights, or causes of action arising from or relating to a breach of this Agreement.

**Section 9. <u>Covenants Not to Sue</u>.**

The Parties covenant or otherwise promise they will not sue the other in any capacity with respect to any claim arising from the Lawsuit, or seek damages, contribution, or indemnity from the other based on the Lawsuit.

**Section 10. <u>Further Assurances</u>.**

The Parties agree to execute and deliver such documents and perform such other acts, promptly upon request by the other Party, as may be reasonably necessary or appropriate to effectuate the purposes of this Agreement.

**Section 11. <u>Governing Law/Jurisdiction And Venue</u>.**

This Agreement shall be governed by and construed under the laws of the State of New York. In the event of litigation arising from or relating to this Agreement, the Parties agree venue shall be proper in the District of Colorado, and that the Settlement Court shall retain jurisdiction to hear any such disputes. The Parties hereby consent to the jurisdiction of said court in the event of such litigation.

**Section 12. <u>Voluntary Agreement</u>.**

The Parties acknowledge they have had a full and fair opportunity to consult with legal counsel of their own choosing throughout all negotiations, which preceded the execution of this Agreement, and in connection with their execution of this Agreement. The Parties represent they have read this Agreement, understand it, voluntarily agree to its terms, and sign it freely.

**Section 13. <u>Entire, Integrated Agreement</u>.**

This Agreement and Settlement Transcript constitute the entire integrated settlement between the Parties and contain the sole and entire agreement of the Parties regarding their dispute concerning the Lawsuit. This Agreement and the Settlement Transcript supersede and replace all prior negotiations, proposed agreements, and agreements concerning the Lawsuit. The Parties acknowledge that no Party and no agent, representative, or attorney of any Party has made any promise or representation whatsoever, express or implied, concerning the subject matter of this Agreement (or to induce the execution of this Agreement) which is not expressly set forth herein. Amendment or modification of this Agreement must be set forth in a writing signed by all Parties. If there is a dispute or ambiguity between this Agreement and the Settlement Transcript, the Settlement Transcript shall be binding.

(5-21-13)                                          - 3 -                              AURORA
                                                                                      PMC

**Section 14.  Time Is of The Essence.**
The Parties acknowledge time is of the essence under this Agreement, including but not limited to payment of the Settlement Amount and filing of the stipulated dismissal, as set forth in Sections 1 and 2, respectively.

**Section 15.  Denial of Wrongdoing or Liability.**
This Agreement is entered into solely for purpose of effectuating a settlement and release.  Accordingly, except as set forth herein, each Party acknowledges the other has admitted no fault, wrongdoing, liability, obligation, or admission of any facts, contentions, or allegations set forth in the Lawsuit.  In fact, each Party denies any and all such fault, wrongdoing, liability, obligation, or allegation set forth in the Lawsuit.

**Section 16.  Severability of Provisions.**
Every provision of this Agreement is intended to be severable.  Accordingly, should any provision be declared illegal, invalid, or otherwise unenforceable by a court of competent jurisdiction, such illegality, invalidity, or unenforceability shall not effect the remaining provisions, which shall remain fully valid, binding, and enforceable.

**Section 17.  Indulgences; No Waivers.**
Neither the failure nor any delay on the part of a Party to exercise any right, remedy, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege preclude other or further exercise of the same or any other right, remedy, power, or privilege, nor shall any waiver of any right, remedy, power, or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power, or privilege with respect to any other occurrence.  No waiver shall be effective unless it is in writing and is signed by the Party asserted to have granted such waiver.

**Section 18.  Headings Not to Affect Interpretation.**
The headings contained in this Agreement are for convenience and reference purposes only, and shall not in any way be construed as effecting the meaning or interpretation of the text of this Agreement.

**Section 19.  No Drafting Party.**
No party shall be deemed the "drafting party" of this Agreement.  Consequently, this Agreement shall be construed as a whole, according to its fair meaning and intent, and not strictly construed for or against any party hereto.

**Section 20.  Successors and Assigns.**
This Agreement shall be binding in all respects upon and inure to the benefit of the Parties, as well as their respective successors and assigns.

**Section 21.  Authority.**
Each person executing this Agreement on behalf of a Party represents and warrants that he or she has received all necessary power and authority to do so.

(5-21-13)                                           - 4 -                          AURORA
PMC

**Section 22.  Counterparts**.
This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument.  Each Party shall provide to the other Party an originally executed copy of this Agreement.

**Section 23.  Ownership Of Claims**.
The Parties represent they have not assigned or otherwise transferred, to any person or entity, any claim, or any portion thereof, arising from or related to the Lawsuit released herein.  The Parties represent they are the real party in interest to pursue their respective claims in the matters described in this Agreement, and further represent there are no other persons with liens or rights of subrogation arising from or related to the claims released herein.

**Section 24.  Attorneys Fees/Costs**.  The Parties shall each bear all of their own attorneys' fees and costs related to the Lawsuit.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first set forth above.

AURORA BANK FSB

Signature: _Stancaya_                    Dated May _23_, 2013
By: _Stephanie Camara_
Title: _Sup_

AURORA LOAN SERVICES LLC

Signature: _Robert J. Leist, Jr._         Dated May _23_, 2013
By: _ROBERT J. LEIST, JR_
Title: _CFO_

PMC BANCORP

Signature: _GCafcalas_                   Dated May 21, 2013
By:  Constantine Cafcalas
Title:  Executive Managing Director

AURORA
PMC

APPROVED AS TO FORM AND CONTENT:


Dated:  May ___, 2013          **AKERMAN SENTERFITT, LLP**

                          By:  _____
                               Christopher P. Carrington
                               Attorneys for Aurora Bank FSB and
                               Aurora Loan Services LLC


Dated:  May ___, 2013          **THE WALKER LAW FIRM, PC**

                          By:  _____
                               Joseph A. Walker
                               Attorneys for PMC Bancorp

AURORA _____
PMC _____

APPROVED AS TO FORM AND CONTENT:

Dated: May 2̲3̲, 2013

AKERMAN SENTERFITT, LLP

By: _____
Christopher P. Carrington
Attorneys for Aurora Bank FSB and
Aurora Loan Services LLC

Dated: May _1_, 2013

THE WALKER LAW FIRM, PC

By: _____
Joseph A. Walker
Attorneys for PMC Bancorp

(5-21-13)

- 6 -

AURORA
PMC _____

## EXHIBIT A
### [SETTLEMENT TRANSCRIPT]

AURORA
PMC

1

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF COLORADO

3     Case No. 11-cv-01605-RBJ-MEH

4     _____

5     AURORA BANK FSB, et al.,

6          Plaintiffs,

7     vs.

8     PMC BANCORP,

9          Defendant.

10    _____

11         Proceedings before CRAIG B. SHAFFER, United States

12    Magistrate  Judge,  United  States  District  Court  for  the

13    District of Colorado, commencing at 2:12 p.m., February 21,

14    2013, in the United States Courthouse, Denver, Colorado.

15    _____

16         WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18    _____

19                    APPEARANCES

20         CHRISTOPHER CARRINGTON, Attorney at Law, appearing

21    for the plaintiffs.

22         JOSEPH WALKER, Attorney at Law, appearing for the

23    defendant.

24    _____

25         SETTLEMENT PLACED ON THE RECORD - SEALED

2

```
 1              P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3    proceedings are herein transcribed, pursuant to order of
 4    counsel.)
 5              THE COURT: All right, we are on the record.  This
 6    is 11-cv-1605, Aurora Bank FSB, et al., versus PMC Bancorp.
 7    The parties are here today for a settlement conference.  I
 8    have spoken to the parties collectively, and then I have met
 9    with each side individually.  Based upon my discussions,
10    it's my understanding that the parties have reached a
11    settlement.
12              And so as I told you all when we were off the
13    record, I'm going to summarize the terms of the settlement.
14    To the extent that I either miss -- misrepresent the terms
15    or I omit a term, let me know and we'll clear them up.  And
16    once we get the terms, the principal terms on the record to
17    everyone's satisfaction, I'll ask the parties if they're
18    prepared to settle on those terms.
19              So here is what I understand the settlement to be.
20    It is my understanding that plaintiff -- or plaintiffs
21    plural -- have agreed to dismiss the claims in this case
22    with prejudice, which means these claims and any matters
23    with respect to these loans are forever resolved.  In return
24    for dismissing this lawsuit and these two claims with
25    prejudice, PMC agrees that it will pay to plaintiffs the
```

3

 1    total amount of $150,000.  Payment of the $150,000 must be

 2    completed within 60 days of executing the settlement

 3    agreement. As part of the settlement, each side agrees that

 4    they will bear their own fees and costs, so the total amount

 5    to be paid is $150,000.

 6              I think it should be implicit, but I want to make

 7    it clear.  In connection with dismissing this lawsuit with

 8    prejudice, the parties are also going to release each other

 9    from any and all claims they have or could have had relating

10    to these two loans.  So essentially there will be no further

11    litigation about these loans, either in this case or some

12    other case.  And, I think, that's the complete settlement,

13    but if there's something I've missed, let me know.

14              MR. CARRINGTON: One term, Your Honor, was that

15    we'd have -- receive a draft within two weeks from tomorrow.

16              THE COURT: Oh, okay, that's something you guys

17    discussed, that's --

18              MR. CARRINGTON: Oh, okay.

19              MR. WALKER: It's not part of the agreement.

20              And then the -- remember, we had the discussion

21    that when PMC makes its payment, it will pay at the

22    plaintiffs' direction.

23              THE COURT: Right.  Okay.

24              Now, I think that's fine, so are there any other

25    provisions that we have missed or omitted?

4

1          MR. WALKER: Your Honor, may I ask (inaudible) a

2     question?

3          THE COURT: Sure.

4          MR. WALKER: A point of clarification.

5          THE COURT: Right.

6          MR. WALKER: We're paying -- not we, the bank,

7     defendant bank is paying the money in full settlement of

8     this action being dismissed with prejudice, is that the

9     agreement?

10         THE COURT: Right.

11         MR. WALKER: Thank you.

12         THE COURT: Now, let me raise just one other

13    question. As I said, once we have a settlement on the

14    record, you folks have, for all intents and purposes, an

15    enforceable deal.  Normally what I would do is I would at

16    the conclusion specify a date certain by which you will file

17    a stipulated Motion to Dismiss.  Now, if you've got two

18    weeks to prepare a draft, two weeks from today's date would

19    get you to March 7th.

20         Now, you tell me, because I don't have strong

21    feelings about this one way or the other.  Was it your

22    expectation or understanding that the stipulated Motion to

23    Dismiss would not be filed until the 60-day period had run,

24    or was it your intention to file a stipulated Motion to

25    Dismiss?  Tell me what you had in mind.

5

1          MR. CARRINGTON: Well, if the agreement is that

2    they'll pay within 60 days of the settlement, I think I'd

3    prefer to file it as soon as payment's received.

4          THE COURT: In other words, so basically --

5          MR. CARRINGTON: 60 days or less.

6          THE COURT: -- what you would do is just

7    hypothetically -- let's say, for instance, you get a draft

8    to them by March 7th and let's say the settlement agreement

9    is signed by March 14th, that means payment would have to be

10   received on or before May 14th, and then you're proposing

11   you would file the stipulated Motion to Dismiss shortly

12   thereafter.

13          MR. CARRINGTON: Correct, Your Honor. We could put

14   in a provision within five business days of receipt of

15   payment or something like that.

16          THE COURT: Any problem with that, Counsel?

17          MR. WALKER: No problem.

18          THE COURT: Okay. All right. So why don't we do

19   this:  Well, based upon those principal terms, let me ask

20   the representative for Aurora. Are you -- is your client

21   prepared to settle on those terms?

22          UNIDENTIFIED SPEAKER: Yes, Your Honor. Thank you.

23          THE COURT: And you -- and you have spoken to your

24   client and you have authority to do that?

25          UNIDENTIFIED SPEAKER: I have, yes, Your Honor.

6

1          THE COURT: And is the defendant prepared to settle

2     on those terms?

3          MR. WALKER: Mr. Cafcalas?

4          MR. CAFCALAS: Yes, Your Honor, we are.

5          THE COURT: Okay.  Now, I will report to Judge

6     Jackson that you've reached a settlement.  I'll require that

7     the parties exchange a draft of the proposed settlement

8     agreement within two weeks of today's date.  I will also

9     direct that the parties notify my chambers, and you just --

10    gentlemen, put together a conference call, notify my

11    chambers when you have a signed settlement agreement so we

12    can just sort of mentally tickle this process.

13          MR. CARRINGTON: Okay.

14          THE COURT: And I think we're good, unless somebody

15    has something else they want to talk about.

16          I will go from here, I will talk to Judge Jackson.

17    I will advise him that we've reached a settlement, the

18    parties have memorialized the settlement on the record, and

19    that based upon that I think he has -- or should have

20    complete confidence in vacating your trial date, and I'm

21    assuming, counsel, you share in my confidence.

22          MR. CARRINGTON: I do, and I agree with that, Your

23    Honor, and so do we need to file a notice of settlement?

24          THE COURT: No.

25          MR. CARRINGTON: Okay.

7

```
 1              THE COURT: Just all you need to do is file a

 2    stipulated Motion to Dismiss, and I'll simply -- and we'll

 3    just agree that the stipulated Motion to Dismiss will be

 4    filed within five day business days of receipt of payment.

 5              MR. WALKER: Okay, one last point.

 6              THE COURT: Sure.

 7              MR. WALKER: If there is some -- for some

 8    unforeseen reason an inability to agree on the wording of

 9    the settlement agreement, could --

10              THE COURT: Pick up the phone and call me.

11              MR. WALKER: Thank you.

12              MR. CARRINGTON: Okay.

13              THE COURT: Okay. Thanks, folks.

14              MR. CARRINGTON: Thank you, Your Honor.

15              MR. WALKER: Thank you very much for your time.

16              THE COURT: You got it.

17              MR. WALKER: Now that we all know each other.

18              (Whereupon, the within hearing was then in

19    conclusion at 2:19 p.m. on February 21, 2013.)

20              I certify that the foregoing is a correct

21    transcript, to the best of my knowledge and belief, from the

22    record of proceedings in the above-entitled matter.

23

24    /s/ Bonnie Nikolas              February 28, 2013

25    Signature of Transcriber                 Date
```

AVERY/WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO  80203
303-825-6119      FAX 303-893-8305

EXHIBIT **B**
[STIPULATION TO DISMISS LAWSUIT]

AURORA _____
PMC _____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01605-RBJ-MEH

AURORA BANK FSB and AURORA LOAN SERVICES LLC

Plaintiffs,

v.

PMC BANCORP, f/k/a Professional Mortgage Corp.,
a California corporation; and DOES 1 through 50, inclusive.

Defendants.

---

## STIPULATION TO DISMISS ACTION WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 41

---

Plaintiffs Aurora Bank FSB, f/k/a Lehman Brothers Bank, FSB, and Aurora Loan Services, LLC (collectively, **Aurora**), and PMC Bancorp (**PMC**) hereby submit the Parties' joint stipulation to dismiss the above-captioned action with prejudice pursuant to FED. R. CIV. P. 41(a)(1)(A)(ii).

### RECITALS

1.    On or about June 17, 2011, Aurora filed a Complaint against PMC.

2.    On or about July 18, 2011, PMC filed its Answer to the Complaint.

3.    On or about June 20, 2012, Aurora filed its First Amended Complaint.

4.    Subsequent thereto, on February 21, 2013, the Parties reached a settlement after attending a settlement conference before the Honorable Magistrate Judge Shaffer.

5.    The Parties have memorialized and executed a settlement agreement.

**STIPULATION**

Aurora and PMC, through their respective counsel, jointly stipulate and request that the

Court dismiss the above-captioned action with prejudice and close the case.

Dated this ___ day of April, 2013.        Respectfully submitted,

By: /s/ Christopher P. Carrington
Christopher Carrington
**AKERMAN SENTERFITT LLP**
*Attorneys for Plaintiffs*

By: _____
Joseph A. Walker, Esq.
**WALKER LAW FIRM, APC**
*Attorneys for Defendant*

# EXHIBIT H

<table>
<tr><td>

DISTRICT COURT, DOUGLAS COUNTY,
STATE OF COLORADO
4000 Justice Way, Suite 2009
Castle Rock, Colorado 80109
Telephone: 303-663-7200

</td><td>

**EFILED Document**
**CO Douglas County District Court 18th JD**
**Filing Date: Jan 18 2013 04:56PM MST**
**Filing ID: 49027908**
**Review Clerk: denisa bogart**

</td></tr>
</table>

|  |  |
|---|---|
| **Plaintiff**:  AURORA BANK, FSB<br><br>**v.**<br><br>**Defendant**:   PMAC LENDING SERVICES, INC., f/d/a PREFERRED MORTGAGE ALLIANCE CORP. | ▲COURT USE ONLY▲ |
| *Attorneys for Plaintiff:*<br>Daniel K. Calisher (Reg. No. 28196)<br>David S. Canter (Reg. No. 34257)<br>Foster Graham Milstein & Calisher LLP<br>360 South Garfield Street, 6th Floor<br>Denver, Colorado 80209<br>Phone:  (303) 333-9810<br>Email: calisher@fostergraham.com<br>         dcanter@fostergraham.com | Case Number:<br><br>Division: |

|  |
|---|
| **COMPLAINT AND JURY DEMAND** |

Plaintiff Aurora Bank, FSB f/k/a Lehman Brothers Bank, FSB ("Plaintiff"), through its undersigned counsel, for its Complaint against defendant PMAC Lending Services, Inc., f/k/a Preferred Mortgage Alliance Corp. ("Defendant"), hereby states and alleges as follows:

## I. PARTIES, JURISDICTION, AND VENUE.

1.  Plaintiff is a federal savings bank with a business address of 10350 Park Meadows Drive, Littleton, Colorado 80124.

2.  Upon information and belief, Defendant is a California corporation with a principal business address of 15325 Fairfield Ranch Road, Suite 200, Chino Hills, California 91709.

3.  This Court is vested with jurisdiction over Defendant because Defendant is registered to conduct business in the State of Colorado, and Defendant conducts business within the State of Colorado.

4.      Pursuant to C.R.C.P. 98(c), venue of this action is proper in Douglas County.

## II.  FACTUAL ALLEGATIONS.

### A.  The Subject Loans.

5.      At all times relevant hereto, Defendant engaged in the sale of residential mortgage loans on the secondary market to investors such as Plaintiff.

6.      Among other loans sold by Defendant to Plaintiff were the following:

a.  That certain mortgage Loan No. ****0652 to borrower Juan Barba in connection with property commonly known by street and number as 1236 North Ukiah Way, Upland, California 91786 ("Barba Loan");

b.  That certain mortgage Loan No. ****9981 to borrower Victor Cortez in connection with property commonly known by street and number as 949 North El Dorado Avenue, Ontario, California 91764 ("Cortez Loan");

c.  That certain mortgage Loan No. ****3238 to borrower Maria Garcia in connection with property commonly known by street and number as 2615 South Fern Avenue, Ontario, California 91762 ("Garcia Loan");

d.  That certain mortgage Loan No. ****2831 to borrower Oscar Paz in connection with property commonly known by street and number as 9691 Woodale Avenue, Arleta, Los Angeles, California 91331 ("Paz Loan");

e.  That certain mortgage Loan No. ****0770 to borrowers Joyce and Malik Rodgers in connection with property commonly known by street and number as 2008 Crawford Court, Fairfield, California 94533 ("Rodgers Loan");

f.  That certain mortgage Loan No. ****4063 to borrower Oliveria Torres-Mozo in connection with property commonly known by street and number as 819 Via Juanita, San Marcos, California 92078 ("Torres-Mozo Loan"); and

g.  That certain mortgage Loan No. ****2911 to borrower Edell White in connection with property commonly known by street and number as 13584 Sherman Place, Fontana, California 92336 ("White Loan").

7.      Borrowers Barba, Cortez, Garcia, Paz, Rodgers, Torres-Mozoe, and White are collectively referred to herein as "Borrowers."  The Barba Loan, the Cortez Loan, the Garcia Loan, the Paz Loan, the Rodgers Loan, the Torres-Mozo Loan, and the White Loan are collectively referred to herein as "Loans."

### B.  The Loan Purchase Agreement and Seller's Guide.

8.      The Loans were purchased by Plaintiff from Defendant pursuant to the terms and conditions of the written Loan Purchase Agreement between Plaintiff and Defendant dated on or about January 22, 2004 ("Agreement").

9.      The Agreement specifically incorporated the terms and conditions of Aurora Loan Services, Inc.'s Seller's Guide ("Seller's Guide"), which sets forth additional duties and obligations of Defendant.

10.     The Agreement and/or Seller's Guide constitute a valid and enforceable contract binding upon Defendant with respect to the Loans.

11.     With respect to the Loans, Defendant made a number of representations, warranties, and covenants, including, but not limited to, the following:

a.   No document, report or material furnished to Plaintiff in any mortgage loan file or related to the Loans, or any of them, was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

b.   The notes and the mortgages respecting the Loans, and each of them, sold to Plaintiff are genuine, and each is a legal, valid, and binding obligation.

c.   All parties to the notes and mortgages respecting the Loans, and each of them, had legal capacity to enter into the Loans and to execute and deliver the notes and mortgages, and the notes and the mortgages respecting the Loans have been duly and properly executed by such parties.

d.   The documents, instruments and agreements submitted in connection with the underwriting of the Loans were not falsified and contain no untrue statements of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading.

e.   No fraud was committed in connection with the origination of the Loans.

f.   Defendant has reviewed all of the documents constituting the files submitted in connection with each of the Loans and has made such inquiries as Defendant deemed necessary to make and confirm the accuracy of the representations set forth therein.

g.   The Loans, and each of them, have been originated and processed by Defendant or Defendant's correspondent in accordance with, and in conformity with, the terms of the Agreement and the Seller's Guide, and the Loans, and each of them, have been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment

3

applicable to the Loans, and each of them.  The Loans, and each of them, comply with all the requirements of the related Program Profile applicable to the Loans, and each of them.

12.     In addition, Defendant represented, warranted, and covenanted that Plaintiff purchased the Loans in reliance upon (a) the truth and accuracy of Defendant's representations and warranties set forth in the Agreement and Seller's Guide, and (b) Defendant's compliance with each of the agreements, requirements, terms, covenants, and conditions set forth in the Agreement and Seller's Guide.

13.     Defendant also agreed, among other things, that in the event of a breach of any of the representations, warranties or covenants contained in the Agreement or Seller's Guide, which breach materially and adversely affects the value of the Loan(s) or the interest of Plaintiff, or materially and adversely affects the interest of Plaintiff in the Loan(s), Defendant shall repurchase the related Loan(s), with the repurchase to occur no later than thirty (30) days after Plaintiff notifies Defendant of the breach.

14.     Defendant further agreed that in addition to any repurchase and cure obligations, Defendant shall indemnify Plaintiff from and hold Plaintiff harmless against all claims, losses, damages, attorney's fees, and expenses Plaintiff may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in the Agreement or the Seller's Guide.

15.     As set forth in the Agreement, Defendant agreed that the Agreement and Seller's guide shall be construed in accordance with the laws of the State of New York, and further, the obligations, rights, and remedies of Plaintiff and Defendant shall be determined in accordance with New York law.

## C.  Defendant's Material Breaches Of Its Representations, Warranties, And/Or Covenants.

16.     Plaintiff discovered one or more material defects in the Loans, and further discovered Defendant had breached one or more of its representations, warranties, and/or covenants under the Agreement and/or Seller's Guide.  Such material defects and/or Defendant's breach of one or more of its representations, warranties, and/or covenants include, but need not be limited to, the following:

   a.  With respect to the Barba Loan, among other things, Defendant misrepresented Borrower Barba's income.

   b.  With respect to the Cortez Loan, among other things, Defendant misrepresented Borrower Cortez's mortgage payments and total debt obligations, and thus, Borrower Cortez's actual debt-to-income ("DTI") obligation mandated full documentation for the loan.  Defendant's failure to provide full documentation constitutes an underwriting violation and breach of the Agreement.

4

c.  With respect to the Garcia Loan, among other things, Defendant failed to diligently investigate whether Borrower Garcia's reasonably supported Borrower Garcia's ability to repay the mortgage debt, which constitutes an underwriting violation and breach of the Agreement.   Additionally, the underwriting policy requires that transactions resulting in significant payment shock (*i.e.*, the housing payment more than doubles) be underwritten under full documentation guidelines.  Borrower Garcia's housing payment increased by 1100%, yet Defendant failed to provide full documentation, which constitutes an underwriting violation and breach of the Agreement.

d.  With respect to the Paz Loan, among other things, Plaintiff is informed and believes the broker was also acting as a real estate agent for both the buyer and the seller.  This was a non-arms' length transaction, without exception, which is an underwriting violation and breach of the Agreement.

e.  With respect to the Rodgers Loan, among other things, Defendant misrepresented one of the borrowers' employment and income.  Because the Rodgers Borrowers presented inconsistent employment and earnings information, Defendant was required to obtain further documentation to verify both employment and income.   Defendant's failure to obtain such documentation is a violation of Plaintiff's underwriting guidelines. Additionally, when the Rodgers Borrowers' verified income was used to calculate DTI, the DTI grossly exceeded the maximum allowable under Plaintiff's underwriting guidelines.  Further, the Rodgers Borrowers' housing payment increased by 162% (*i.e.*, payment shock), yet Defendant failed to provide full documentation, which constitutes an underwriting violation and breach of the Agreement.

f.  With respect to the Torres-Mozo Loan, among other things, Defendant failed to verify Borrower Torres-Mozo's assets and funds on deposit, which constitutes an underwriting violation and breach of the Agreement.

g.  With respect to the White Loan, among other things, Defendant failed to provide the required documentation of six months of assets necessary for Borrower White to pay principal, interest, taxes, and insurance ("PITI").  This constitutes an underwriting violation and breach of the Agreement. Additionally, Defendant failed to exercise due diligence or otherwise confirm that Borrower White's reported income source would reasonably support Borrower White's ability to repay the mortgage debt.  It was not reasonable for Defendant to assume that Borrower White's reported profession would generate income sufficient to support Borrower White's monthly obligation. Defendant's failure to exercise due diligence or otherwise confirm Borrower White's reported income source constitutes an underwriting violation and breach of the Agreement.

17.     Defendant breached one or more of its representations, warranties, and/or covenants under the Agreement and/or Seller's Guide, including those identified in above.

18.     On or about April 16, 2012, Plaintiff provided Defendant with written notice of Defendant's material breach of the representations, warranties, and/or covenants with respect to the Loans, and demanded that Defendant indemnify Plaintiff for Plaintiff's losses associated with the Loans.

19.     Defendant has refused or otherwise failed to comply with its obligations under the Agreement and Seller's Guide regarding the Loans.

20.     Plaintiff, and as applicable its predecessors and agents, have substantially performed any and all of their respective obligations under the Agreement and Seller's Guide.

21.     All conditions precedent to this action on the part of Plaintiff, if any, have been satisfied, waived, are futile or have been prevented by Defendant.

### III.  FIRST CLAIM FOR RELIEF.
### (Breach of Contract)

22.     Plaintiff hereby incorporates by this reference the allegations set forth above as though fully set forth herein.

23.     Defendant has breached the Agreement and Seller's Guide by:  (a) breaching one or more of its agreements, representations, warranties, and/or covenants; (b) refusing or otherwise failing to repurchase the Loans; and/or (c) refusing to indemnify Plaintiff for losses arising from or relating to the Loans.

24.     Defendant's prior and continuing breaches have resulted in substantial damages to Plaintiff in an amount to be proven at trial.

### IV.  SECOND CLAIM FOR RELIEF.
### (Breach of Express Warranty)

25.     Plaintiff hereby incorporates by this reference the allegations set above as though fully set forth herein.

26.     Defendant made a number of express warranties with respect to material facts concerning the Loans, including but not limited to the warranties described above.

27.     The warranties contained in the Agreement and Seller's Guide were an essential part of the bargain between Plaintiff and Defendant.

28.     Defendant breached one or more of its warranties with respect to the Loans.

29.     Plaintiff provided Defendant with written notice concerning Defendant's breach of its express warranties.

30.     Defendant has refused or otherwise failed to remedy or compensate Plaintiff for Defendant's breach of its express warranties.

31.     As a result of Defendant's breach of the express warranties contained in the Agreement and Seller's Guide, Plaintiff has sustained actual, consequential, and substantial damages in an amount to be proven at trial.

## V.  THIRD CLAIM FOR RELIEF.
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

32.     Plaintiff hereby incorporates by this reference the allegations set forth above as though fully set forth herein.

33.     The Agreement and Seller's Guide contain an implied covenant of good faith and fair dealing.

34.     Defendant breached the implied covenant of good faith and fair dealing by, among other things, failing to act in good faith in refusing to repurchase one or more of the Loans or, alternatively, to indemnify Plaintiff relating thereto.

35.     Plaintiff has suffered actual, consequential, and substantial damages arising from or relating to Defendant's breach of the implied covenant of good faith and fair dealing, in an amount to be proven at trial.

## VI.  RELIEF REQUESTED.

**WHEREFORE**, Plaintiff respectfully requests that judgment enter in its favor, and against Defendant, as follows:

(1)     For all damages incurred by Plaintiff arising from or relating to Defendant's breach of contract, in an amount to be proven at trial;

(2)     For all damages incurred by Plaintiff arising from or relating to Defendant's breach of express warranty, in an amount to be proven at trial;

(3)     For all damages incurred by Plaintiff arising from or relating to Defendant's breach of the implied covenant of good faith and fair dealing, in an amount to be proven at trial;

(4)     For recoverable interest;

(5)     For the costs and expenses of suit incurred by Plaintiff herein, including recoverable attorneys' fees; and

(6)      For such other and further relief as this Court deems just and proper.


DATED this 18th day of January, 2013.

                                        FOSTER GRAHAM
                                        MILSTEIN & CALISHER LLP


                                        _/s/ David S. Canter_____
                                        Daniel K. Calisher
                                        David S. Canter
                                        *ATTORNEYS FOR PLAINTIFF*


**Address of Plaintiff**:
Aurora Bank, FSB
10350 Park Meadows Drive
Littleton, Colorado 80124


*In accordance with C.R.C.P. 121 § 1-26(9), a printed copy of this document with original signature(s) is maintained by Foster Graham Milstein & Calisher, LLP and will be made available for inspection by other parties or the Court upon request.*

# EXHIBIT I

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-_____

LEHMAN BROTHERS HOLDINGS INC,

       Plaintiff,

v.

PMAC LENDING SERVICES, INC., f/k/a PREFERRED MORTGAGE ALLIANCE CORP.

       Defendant.

---

**COMPLAINT**

---

     Plaintiff, Lehman Brothers Holdings Inc. ("LBHI"), by and through its undersigned attorneys, and for claims for relief against Defendant PMAC LENDING SERVICES, INC., f/k/a PREFERRED MORTGAGE ALLIANCE CORP. ("PMAC"), alleges as follows:

## I. NATURE OF ACTION

    1.    At all times relevant hereto, Lehman Brothers Bank, FSB ("LBB," and collectively with LBHI, "Lehman") purchased mortgage loans from PMAC pursuant to a series of written contracts in which PMAC represented and warranted certain facts relating to the quality of the loans and the loan underwriting.  LBB subsequently assigned its rights under those contracts to LBHI.  With respect to certain of these mortgage loans, PMAC breached provisions of the contracts because the loans were not as represented and, therefore, required that PMAC repurchase from, or indemnify Lehman for, the mortgage loans which failed to comply with the parties' contracts.  By this action, LBHI seeks to recover money damages for injuries that have been

sustained as a result of PMAC's failure or refusal to honor its obligation to repurchase loans and/or indemnify Lehman for its incurred losses.

## II. PARTIES

2.     Plaintiff LBHI is a Delaware corporation with its principal place of business in New York, New York.

3.     Defendant PMAC is a California corporation with its principal place of business at 15325 Fairfield Ranch Rd., Suite 200, Chino Hills, CA 91709.

4.     At all relevant times, PMAC is authorized to do business in Colorado and maintains a registered agent in Colorado.

5.     Upon information and belief, none of the current shareholders in PMAC are citizens of Delaware or New York.

## III. JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff LBHI and Defendant PMAC, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     Personal jurisdiction comports with due process under the United States Constitution and the long-arm statutes of Colorado because PMAC has been registered to do business in Colorado since March 9, 2004 and has maintained an agent in the state since that time.

8.     PMAC has purposefully availed itself of the benefit of doing business—both with and without Lehman—in Colorado.  On information and belief, PMAC's business in Colorado includes, but is not limited to, mortgage lending operations.

9.    On December 31, 2004, PMAC entered into a business relationship with the Lehman entities pursuant to which PMAC would sell residential mortgage loans to Lehman.  That relationship was overseen by Aurora Loan Services, LLC ("Aurora"), a Lehman subsidiary based in Littleton, Colorado.

10.    PMAC has had continuous and systematic communication with Lehman entities in Colorado, such as Aurora, including with respect to the loans and related transactions at issue in this case.  This includes:  (1) recertification of their ability to originate loans; (2) securing delegated underwriting authority, which affected Republic's ability to approve mortgage loans to sell to Lehman with less oversight from Lehman; and (3) responding to repurchase demands from Lehman issued by Lehman's agent Aurora from Colorado.

11.    Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to the claims occurred in this District and because the division of LBHI that oversees its residential mortgage loss recovery program is based in Greenwood Village, Colorado, and thus its witnesses and documents are located here.

## IV.  **FACTUAL ALLEGATIONS**

12.    At all relevant times, Lehman engaged in the purchase and sale of mortgage loans.

13.    PMAC engages in mortgage lending, as well as the sale of mortgage loans on the secondary market to investors such as Lehman.

14.  On or about January 22, 2004 and September 1, 2005, PMAC entered into a written Loan Purchase Agreement with LBB ("Agreement").  True and correct copies of the LPAs are attached hereto as **Exhibit 1**.

15.  The LPA specifically incorporates the terms and conditions of the Seller's Guide of Lehman's agent, Aurora Loan Services LLC, which sets forth additional duties and obligations of PMAC.

16.  The Seller's Guide in its entirety is valid and binding upon PMAC. Attached hereto as **Exhibit 2** are the specific Sections most directly pertinent to the claims in this Complaint.

17.  The LPA and the Seller's Guide (collectively the "Agreement") set forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to purchase price, delivery and conveyance of the mortgage loans and mortgage loan documents, examination of mortgage loan files and underwriting, representations and warranties concerning the parties as well as the individual mortgage loans purchased or sold, and remedies for breach.

18.  PMAC sold mortgage loans to LBB pursuant to the terms of the Agreement and Seller's Guide, including the following loans:

Borrower:  Cubenas, Gervacio

Aurora Loan No.:    ******8908

PMAC Loan No.:    ******8908

Property Address:   950 South Acacia Lane

Rialto, California  92376

Borrower:   Bernardino, Labiano

Auroroa Loan No.:   ******3297

Property Address:   230 East Flamingo Road 309

Las Vegas, Nevada 89109

(collectively, the "Loans").

19.   LBB purchased the Loans from PMAC.

20.   Subsequent to the sale of the Loans by PMAC to LBB, LBB sold the Loans to LBHI.

21.   Subsequent or simultaneously with the sale by LBB to LBHI, LBB assigned to LBHI all of its rights and remedies under the Agreement pertaining to the Loans.

### Misrepresentation/Underwriting Defects

22.   With respect to each of the loans sold to Lehman under the Agreement and Seller's Guide, PMAC made a number of representations, warranties and covenants concerning the mortgage loans including, but not limited to the following:

(a)   the validity of all mortgage loan documentation;

(b)   the accuracy and integrity of all information and documentation regarding borrower identity, income, employment, credit, assets, and liabilities used in making the decision to originate the mortgage loans;

(c)   occupancy by the borrowers of the properties securing the mortgage loans;

(d)   the ownership, nature, condition, and value of the real properties securing the mortgage loans; and

(e)     the conformance of the mortgage loans with applicable underwriting guidelines and loan program requirements.

23.   PMAC also represented and/or warranted that no errors, omissions, misrepresentations, negligence, fraud, or similar occurrence took place with respect to the mortgage loans by any person involved in the origination of the mortgage loans, and that no predatory or deceptive lending practices were used in the origination of the mortgage loans.

24.   PMAC represented and/or warranted that it had the ability to perform its obligations under, and satisfy all requirements of, the Agreement.

25.   Lehman discovered material problems with the Loans and found that PMAC had breached representations, warranties and/or covenants under the Agreement, including, without limitation, those representations and warranties set forth above.

26.   Lehman, through its agent, provided PMAC with notice of PMAC's breaches of representations, warranties, and covenants with respect to the Loans.

27.   The written notices advised PMAC as to the nature of the discovered breaches with respect to each Loan.   There may be additional breaches that LBHI discovered after providing the written notices or has yet to discover which also pertain to the Loans.

28.   PMAC failed to repurchase/indemnify as promised.

29.   Misrepresentations contained within the loan files constitute a material breach of PMAC's representations, warranties and covenants contained in the Seller's Guide, including but not limited to the representations and warranties set out in §§ 703(1), 703(12), 703(27), and 703(36):

> No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgager), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

> The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

> Seller represents that there is no circumstance or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing, that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan.

> Seller hereby represents and warrants that all appraisals and other forms of real estate valuation conducted in connection with the Mortgage Loan comply [with applicable law] and the requirements of Fannie Mae and Freddie Mac….The fair market value of the Mortgaged Property as indicated by the property appraisal or valuation is materially accurate.

30. Lehman purchased the Loans from PMAC in reliance upon PMAC's representations and warranties, as made clear by § 701 of the Seller's Guide:

> Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

31.   The Agreement, at § 710 of the Seller's Guide, specifies that Lehman or its agent may demand that PMAC repurchase, and that PMAC shall repurchase, any mortgage loan that suffers an EPD:

> …if a loan becomes an Early Payment Default in accordance with Section 715 herein, Seller shall, at Purchaser's option, repurchase the related Mortgage Loan… at the Repurchase Price.  Any such repurchase shall occur no later than thirty (30) days after the earlier of the date on which Purchaser notifies Seller of such breach or the date on which Seller knows of such breach.

32.   PMAC acknowledged and agreed that a loan may suffer an EPD in one of two ways, as set forth in § 715 of the Seller's Guide:

> For Mortgage Loans prior-approved by Purchaser (i.e. as to which Purchaser underwrote the loan prior to Purchase), a mortgage loan has an early payment default if the first monthly payment due Purchaser is not made within thirty (30) days of its due date.
>
> For Mortgage Loans delivered pursuant to Seller's Delegated Underwriting Authority, a Mortgage Loan has an early payment default if either the first or second monthly payment due the Purchaser is not made within 30 days of each such monthly payment's respective due date.

33.   PMAC was granted delegated underwriting authority on July 15, 2005.

34.   The breaches discussed above materially and adversely affected the value of the Loan and the interests of LBHI causing LBHI to lose over three-hundred, fifty thousand dollars ($350,000).

35.   PMAC further promised to indemnify Lehman for any and all losses that in any way relate to or result from any act or failure to act or any breach of any warranty, obligation, representation, or covenant contained in the Agreement, as set forth in § 711 of the Seller's Guide:

> In addition to any repurchase and cure obligations of Seller, and any and all other remedies available to Purchaser under this Seller's Guide and the Loan Purchase Agreement, Seller shall indemnify Purchaser…from and

> hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement.

36.   Finally, as to Loan ****3297, Lehman's damages include the amount paid by Lehman to indemnify a third-party government-sponsored entity ("GSE") due to the breaches of representations and warranties committed by PMAC related to these Loans.

37.   PMAC also agreed to pay the reasonable attorneys' fees incurred by Lehman in enforcing PMAC's obligations, as set forth in § 711 of the Seller's Guide:

> In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorneys' fees of Purchaser incurred in enforcing Seller's obligations hereunder, including, without limitation, the repurchase obligation set forth above.

38.   PMAC has refused or otherwise failed to repurchase the Loans and/or indemnify Lehman for losses related thereto, and has otherwise failed to comply with its obligations under the Agreement.

39.   PMAC's failure and refusal to honor its contractual obligations discussed above caused LBHI to suffer losses on the Loans which it would not have suffered had PMAC honored its obligations.

40.   Pursuant to Section 8 of the Agreement, the laws of the State of New York govern this contract action.

41.   All conditions precedent to bringing this action have been met, occurred or have been waived.

## V. CLAIMS FOR RELIEF

### First Claim for Relief
(Breach of Contract
– all Loans)

42.   LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

43.   The Agreement is a valid and enforceable contract that is binding upon PMAC.

44.   Lehman, Lehman's agents, and any and all assignees of Lehman's rights have substantially performed all of their obligations under the Agreement.

45.   PMAC breached the Agreement by breaching the contractual representations, warranties, and/or covenants relating to the Loans, including but not limited to those described above in Section IV above.

46.   PMAC further breached the Agreement by refusing or otherwise failing to repurchase the Loans and/or failing to indemnify Lehman for its losses related to the Loans.

47.   PMAC's breaches of the Agreement resulted in actual and consequential damages to LBHI in excess of $350,000.00, in an amount to be proven by the evidence, to which LBHI is entitled plus prejudgment interest pursuant to New York law, attorneys' fees, litigation costs and all other fees and costs provided by the Agreement.

**Second Claim for Relief**
(Breach of Express Warranty
– all Loans)

48.   LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

49.   PMAC made a number of express warranties with respect to material facts concerning the Loans, including but not limited to the warranties described in Section IV above.

50.   The warranties contained in the Agreement were an essential part of the bargain, and Lehman purchased the Loans in reliance upon the warranties.

51.   PMAC breached one or more of its warranties relating to the Loans.

52.   Lehman, Lehman's agents, and any and all assignees of Lehman's rights have substantially performed all of their obligations under the Agreement.

53.   PMAC has refused or otherwise failed to compensate or otherwise indemnify LBHI for PMAC's breach of one or more express warranty.

54.   As a result of PMAC's breach of one or more express warranty contained in the Agreement, LBHI has sustained actual and consequential damages, in an amount to be proven by the evidence, to which LBHI is entitled plus prejudgment interest pursuant to New York law, attorneys' fees, litigation costs and all other fees and costs provided by the Agreement.

## VI.  PRAYER FOR RELIEF

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against defendant PMAC as follows:

> (a) For all damages arising from or relating to PMAC's breaches of contract, in an amount to be proven at trial;
>
> (b) For all damages arising from or relating to PMAC's breach of one or more express warranty, in an amount to be proven at trial;
>
> (c) For recoverable interest;
>
> (d) For the costs and expenses incurred by LBHI in enforcing PMAC's obligations under the Agreement, including reasonable attorneys' fees and costs and any expert witness fees incurred in litigation; and
>
> (e) For such other relief as the Court deems just and proper.

Dated: December 13, 2013

Respectfully submitted,

By:      */s/ Christopher P. Carrington*
Christopher P. Carrington
Michael J. Gates
Email: Carrington@fostergraham.com
mgates@fostergraham.com
**Foster Graham Milstein & Calisher, LLP**
360 S. Garfield Street, Ste. 600
Denver, Colorado 80209
Telephone: (303) 333-9810
Facsimile: (303) 333-9786
*Attorneys for Plaintiff Lehman Brothers Holdings Inc.*



# LEHMAN BROTHERS BANK, FSB

## LOAN PURCHASE AGREEMENT

### (SERVICING RELEASED TRANSACTIONS)

This is a LOAN PURCHASE AGREEMENT (the "Agreement"), dated as of _January 22_, 20_04_, [Seller No. _8292_ ], by and between Lehman Brothers Bank FSB, having an office at 921 North Orange Street, Wilmington, Delaware 19801 ("LBB") and _PREFERRED MORTGAGE ALLIANCE CORPORATION_ having an office at _100 N. CITRUS ST SUITE 430 WEST COVINA CA 91791_ (the "Seller").

### W I T N E S S E T H:

WHEREAS, the Seller desires to sell, from time to time, to LBB, and LBB desires to purchase, from time to time, from the Seller, certain conventional, adjustable and/or fixed-rate residential mortgage loans (the "Mortgage Loans") which shall be delivered on a servicing released basis, on various dates (each a "Purchasing Date") as provided in the Aurora Loan Services Inc. Seller's Guide, as amended from time to time (the "Seller's Guide");

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a valid lien on a residential dwelling located in the jurisdiction indicated in the Delivery Commitment Confirmation for the related Mortgage Loan;

WHEREAS, LBB and the Seller have agreed that the Mortgage Loans shall be conveyed in the manner set forth in the Seller's Guide; and

WHEREAS, this Agreement is the "Loan Purchase Agreement" referred to in Section 100 of the Seller's Guide;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, LBB and the Seller agree as follows:

SECTION 1. Agreement to Purchase. The Seller agrees to sell, and LBB agrees to purchase, from time to time, Mortgage Loans as further described in the related Purchase Advice and the related servicing rights thereto, pursuant to the terms and conditions of the Seller's Guide.

SECTION 2. Incorporation of Seller's Guide; Conflicts; Seller Agreement. The terms and provisions of the Seller's Guide and all forms therein are hereby incorporated and made a part hereof and are an integral part of this Agreement. In the event of any conflict, inconsistency or discrepancy between any of the provisions of the Seller's Guide and any of the provisions of this Agreement, the provisions of this Agreement shall control and be binding upon LBB and the Seller. The Seller hereby (i) acknowledges that it has received and reviewed the Seller's Guide and (ii) agrees to be bound by the terms and conditions set forth therein.

SECTION 3. Counterparts. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 4. Successors and Assigns; Assignment of Loan Purchase Agreement. This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and LBB and their respective successors and assigns. This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the consent of LBB.

# LEHMAN BROTHERS BANK, FSB

SECTION 5. _Defined Terms._ Capitalized terms used but not defined herein shall have the respective meanings set forth in Section 8 of the Seller's Guide.

SECTION 6. _Costs._ All costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, shall be paid by the party identified in the Seller's Guide, as applicable, or if no party is identified, by the Seller.

SECTION 7. _Notices._ All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at (i) the address in the Seller's Guide if to LBB, and (ii) as follows if to the Seller:



Attn.: _Jon MaGill_
_100 N. Citrus St. #430_
_West Covina CA. 91791_

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

**SECTION 8. Governing Law. This Agreement and the Seller's Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.**

SECTION 9. _Waivers._ No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 10. _Reproduction of Documents._ This Agreement and all documents relating hereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 11. _Further Agreements._ The Seller and LBB each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of the Seller's Guide.

SECTION 12. _Confidentiality._ The Seller hereby agrees that the terms and conditions of any Purchase Advice, this Agreement, the Seller's Guide and all Delivery Commitments shall be kept confidential and their contents shall not be divulged to any party without LBB's consent except to the extent that it is necessary for the Seller to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

# LEHMAN BROTHERS BANK, FSB

SECTION 13.  State of Incorporation.  The Seller is duly organized validly existing and in good standing under the laws of the state of _____.

SECTION 14.  Restrictions on Publicity.           Without the prior written consent of ALS, Seller shall not use the corporate names, logos, brand names, trademarks, trade names or service marks of ALS, Lehman Brothers, Lehman Brothers Bank, F.S.B., or any of their respective affiliates, or otherwise identify ALS, Lehman Brothers, Lehman Brothers Bank, F.S.B., or any of their respective affiliates, in Seller's advertising, marketing or promotional material, publicity releases, communications with the press, customer listings, testimonials, websites, any other material distributed by or on behalf of Seller or in any proposals to prospective borrowers, brokers, clients or appraisers.

IN WITNESS WHEREOF, the Seller and LBB have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

LEHMAN BROTHERS BANK, FSB
(Purchaser)

By: _____
Name: _Aiden Stout_____
Title: _EVP/Chief Credit Officer_

(Seller)

By: _____
Name: _JON MAGILL_____
Title: _President_____



# LEHMAN BROTHERS BANK FSB

### FORM OF
### LOAN PURCHASE AGREEMENT

### (BULK PURCHASE/SERVICING RELEASED TRANSACTIONS)

This is a LOAN PURCHASE AGREEMENT (the "Agreement"), dated as of _January 22_ 20_04_, [Seller No. _8292_], by and between Lehman Brothers Bank, FSB ("Lehman Bank") and _PREFERRED MORTGAGE ALLIANCE CORPORATION_, having an office at _100 N CITRUS ST #430 WEST COVINA CA 91791_ (the "Seller").

### W I T N E S S E T H :

WHEREAS, the Seller desires to sell to Lehman Bank, and Lehman Bank desires to purchase, from the Seller from time to time, certain adjustable and/or fixed rate residential mortgage loans (the "Mortgage Loans") which shall be delivered on a servicing released basis on the date (each, a "Purchase Date") set forth in a Purchase Price and Terms Letter to be entered into between Lehman Bank and the Seller with respect to each sale of Mortgage Loans hereunder (each, a "PP&TL");

WHEREAS, each sale of Mortgage Loans to Lehman Bank shall be made upon the terms, conditions, representations and warranties set forth in this Agreement, the related PP&TL and that certain Aurora Loan Services, Inc. Seller Guide, as amended from time to time (the "Seller Guide"), except as otherwise set forth herein;

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a valid lien on a residential dwelling located in the jurisdiction indicated in the Delivery Commitment Confirmation for the related Mortgage Loan;

WHEREAS, Lehman Bank and the Seller have agreed that the Mortgage Loans shall be conveyed in the manner set forth in the Seller Guide, as modified by this Agreement; and

WHEREAS, this Agreement shall be deemed to be a "Loan Purchase Agreement" referred to in Section 100 of the Seller Guide;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lehman Bank and the Seller agree as follows:

SECTION 1. Agreement to Purchase. The Seller agrees to sell, and Lehman Bank agrees to purchase, from time to time, those Mortgage Loans described in a PP&TL and the related Purchase Advice, together with the servicing rights related thereto, pursuant to the terms and conditions of the Seller Guide and this Agreement.

SECTION 2. Incorporation of Seller Guide; Conflicts; Seller Agreement. Except as otherwise set forth herein (including any Annex or Addenda hereto), or in any related PP&TL, the terms and provisions of the Seller Guide and all forms therein are hereby incorporated and made a part hereof and are an integral part of

# LEHMAN BROTHERS BANK FSB

this Agreement. In the event of any conflict, inconsistency or discrepancy between any of the provisions of the Seller Guide and any of the express provisions of this Agreement, the express provisions of this Agreement shall control and be binding upon Lehman Bank and the Seller  The Seller hereby (i) acknowledges that it has received and reviewed the Seller Guide and (ii) agrees to be bound by the terms and conditions set forth therein and herein.

This Agreement includes and incorporates each of the following:

Annex 1          Additional Representations, Warranties,
                 Covenants and Agreements of the Seller

SECTION 3. <u>Counterparts</u>. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 4. <u>Successors and Assigns; Assignment of Loan Purchase Agreement</u>. This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and Lehman Bank and their respective successors and assigns. This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the consent of Lehman Bank.

SECTION 5. <u>Defined Terms</u>. Capitalized terms used but not defined herein shall have the respective meanings set forth in Section 8 of the Seller Guide.

SECTION 6. <u>Costs</u>. All costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, shall be paid by the party identified in the Seller Guide, as applicable, or if no party is identified, by the Seller.

SECTION 7. <u>Notices</u>. All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at (i) the address in the Seller Guide if to Lehman Bank, and (ii) as follows if to the Seller:

*PMAC*
*100 N. Citrus St. #430*
*West Covina CA. 91791*
Attn:  *Jon Magill*

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

**SECTION 8. <u>Governing Law</u>. This Agreement and the Seller Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.**

-2-

# LEHMAN BROTHERS BANK FSB

SECTION 9. Waivers. No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 10. Reproduction of Documents. This Agreement and all documents relating hereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process.   The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 11. Further Agreements. The Seller and Lehman Bank each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of the Seller Guide.

SECTION 12. Confidentiality. The Seller hereby agrees that the terms and conditions of any Purchase Advice, this Agreement, the Seller Guide and all Delivery Commitments shall be kept confidential and their contents shall not be divulged to any party without Lehman Bank's consent except to the extent that it is necessary for the Seller to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

SECTION 13. State of Incorporation. The Seller is duly organized validly existing and in good standing under the laws of the state of _____.

IN WITNESS WHEREOF, the Seller and Lehman Bank have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

LEHMAN BROTHERS BANK, FSB
Purchaser)

By: _____
Name: _Alden Stout_____
Title: _EVP/Chief Credit Officer_

(Seller)

By: _____
Name: _JON MAGILL_____
Title: _President & CEO_

-3-

Exhibit 1
Page 6

ADDITIONAL REPRESENTATIONS, WARRANTIES,
COVENANTS AND AGREEMENTS OF THE SELLER

A.    ADDITIONAL REPRESENTATIONS AND WARRANTIES

In addition to the representations and warranties contained in Section 703 of the Seller Guide, or elsewhere in the Seller Guide or this Purchase Agreement, as to each Mortgage Loan, Seller represents and warrants to Lehman Bank as of the related Purchase Date, and covenants to Lehman Bank that:

1.    Information Complete.  All data, information and other written or electronic material provided to the Purchaser or its designees with respect to the Mortgage Loan (including, without limitation, any data and information submitted for loan pricing purposes) was true, correct and complete and did not omit to state a fact necessary to make such data or information not misleading.

2.    Conformance with Underwriting Guidelines.  The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines set forth in the Seller's Guide in effect at the time the Mortgage Loan was originated.

3.    Seller's Origination.  The Seller's decision to originate any mortgage loan or to deny any mortgage loan application is an independent decision and is in no way made as a result of Purchaser's decision to purchase, or not to purchase, or the price Purchaser may offer to pay for, any such mortgage loan, if originated.

4.    Delivery of Mortgage Documents.  The Mortgage Note and all other Mortgage Loan documents required to be delivered by the Seller under the Seller Guide have been delivered to Lehman Bank or its designee.

5.    Selection Process.  The Mortgage Loans were not intentionally selected in a manner so as to affect adversely the interests of Lehman Bank.

6.    Loan Characteristics.  With respect to the Mortgage Loans to be sold to Lehman Bank on the Purchase Date, the Mortgage Loan characteristics set forth in the PP&TL are true and complete in the aggregate.

7.    Predatory Lending Regulations; High Cost Loans.  None of the Mortgage Loans are classified as (a) "high cost" loans under the Home Ownership and Equity Protection Act of 1994 or (b) "high cost," "threshold," or "predatory" loans under any other applicable state, federal or local law.

8.    Single Premium Credit Life Insurance.  None of the proceeds of the Mortgage Loan were used to finance single-premium credit life insurance policies.

9.    No Commissions to Third Parties.  The Seller has not dealt with any broker or agent or anyone else who might be entitled to a fee or commission in connection with this transaction.

Exhibit 1
Page 7

B.    ADDITIONAL AGREEMENTS

Seller acknowledges that Lehman Bank may not have conducted any pre-Purchase Date review of the Mortgage Loan files to determine whether or not they are eligible for purchase by Lehman Bank under the Seller Guide.  Lehman Bank expressly reserves the right (but not the obligation) to perform a purchase review of the Mortgage Loans and the Mortgage Loan files after the Purchase Date and to exercise any rights or remedies that may be available to Lehman Bank thereunder.

The "Good File Delivery Credit" referred to in Section 600 of the Seller Guide shall not apply to the transactions contemplated by this Agreement.

LBHI v. PMAC

Exhibit 1
Page 8

# LEHMAN BROTHERS BANK FSB

### FORM OF
### LOAN PURCHASE AGREEMENT

### (BULK PURCHASE/SERVICING RELEASED TRANSACTIONS)

This is a LOAN PURCHASE AGREEMENT (the "Agreement"), dated as of 9-1-05. [Seller No. 8292 ], by and between Lehman Brothers Bank, FSB ("Lehman Bank") and Preferred Mortgage Alliance Corp. (PMAC), having an office at 100 N. Citrus Street, Ste. 430, West Covina, CA 91791 (the "Seller").

## WITNESSETH:

WHEREAS, the Seller desires to sell to Lehman Bank, and Lehman Bank desires to purchase, from the Seller from time to time, certain adjustable and/or fixed rate residential mortgage loans (the "Mortgage Loans") which shall be delivered on a servicing released basis on the date (each, a "Purchase Date") set forth in a Purchase Price and Terms Letter to be entered into between Lehman Bank and the Seller with respect to each sale of Mortgage Loans hereunder (each, a "PP&TL");

WHEREAS, each sale of Mortgage Loans to Lehman Bank shall be made upon the terms, conditions, representations and warranties set forth in this Agreement, the related PP&TL and that certain Aurora Loan Services, Inc. Seller Guide, as amended from time to time (the "Seller Guide"), except as otherwise set forth herein;

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a valid lien on a residential dwelling located in the jurisdiction indicated in the Delivery Commitment Confirmation for the related Mortgage Loan;

WHEREAS, Lehman Bank and the Seller have agreed that the Mortgage Loans shall be conveyed in the manner set forth in the Seller Guide, as modified by this Agreement; and

WHEREAS, this Agreement shall be deemed to be a "Loan Purchase Agreement" referred to in Section 100 of the Seller Guide;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lehman Bank and the Seller agree as follows:

SECTION 1. Agreement to Purchase. The Seller agrees to sell, and Lehman Bank agrees to purchase, from time to time, those Mortgage Loans described in a PP&TL and the related Purchase Advice, together with the servicing rights related thereto, pursuant to the terms and conditions of the Seller Guide and this Agreement.

SECTION 2. Incorporation of Seller Guide; Conflicts; Seller Agreement. Except as otherwise set forth herein (including any Annex or Addenda hereto), or in any related PP&TL, the terms and provisions of the Seller Guide and all forms therein are hereby incorporated and made a part hereof and are an integral part of

Created on 7/8/2004 7:52 AM KY

[Rev. 07/2004]

# LEHMAN BROTHERS BANK FSB

this Agreement. In the event of any conflict, inconsistency or discrepancy between any of the provisions of the Seller Guide and any of the express provisions of this Agreement, the express provisions of this Agreement shall control and be binding upon Lehman Bank and the Seller. The Seller hereby (i) acknowledges that it has received and reviewed the Seller Guide and (ii) agrees to be bound by the terms and conditions set forth therein and herein.

This Agreement includes and incorporates each of the following:

Annex 1    Additional Representations, Warranties, Covenants and Agreements of the Seller

SECTION 3. Counterparts. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 4. Successors and Assigns; Assignment of Loan Purchase Agreement. This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and Lehman Bank and their respective successors and assigns. This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the consent of Lehman Bank.

SECTION 5. Defined Terms. Capitalized terms used but not defined herein shall have the respective meanings set forth in Section 8 of the Seller Guide.

SECTION 6. Costs. All costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, shall be paid by the party identified in the Seller Guide, as applicable, or if no party is identified, by the Seller.

SECTION 7. Notices. All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at (i) the address in the Seller Guide if to Lehman Bank, and (ii) as follows if to the Seller:

Preferred Mortgage Alliance Corp. (PMAC)

100 N. Citrus Street, Ste. 430

West Covina, CA 91791

Attn   Jon Magill

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

SECTION 8. Governing Law. This Agreement and the Seller Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.

-2-

# LEHMAN BROTHERS BANK FSB

SECTION 9. Waivers. No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 10. Reproduction of Documents. This Agreement and all documents relating hereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process.    The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 11. Further Agreements. The Seller and Lehman Bank each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of the Seller Guide.

SECTION 12. Confidentiality. The Seller hereby agrees that the terms and conditions of any Purchase Advice, this Agreement, the Seller Guide and all Delivery Commitments shall be kept confidential and their contents shall not be divulged to any party without Lehman Bank's consent except to the extent that it is necessary for the Seller to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

SECTION 13. State of Incorporation. The Seller is duly organized validly existing and in good standing under the laws of the state of ____California_____.

IN WITNESS WHEREOF, the Seller and Lehman Bank have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

LEHMAN BROTHERS BANK, FSB
Purchaser)

By: _____

Name: DENISE ELWELL

Title: VICE PRESIDENT


(Seller)

By: _____

Name: Jon Madill

Title:    President & CEO

-3-

Exhibit 1
Page 11

### ADDITIONAL REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS OF THE SELLER

A.    ADDITIONAL REPRESENTATIONS AND WARRANTIES

In addition to the representations and warranties contained in Section 703 of the Seller Guide, or elsewhere in the Seller Guide or this Purchase Agreement, as to each Mortgage Loan, Seller represents and warrants to Lehman Bank as of the related Purchase Date, and covenants to Lehman Bank that:

1.    Information Complete.  All data, information and other written or electronic material provided to the Purchaser or its designees with respect to the Mortgage Loan (including, without limitation, any data and information submitted for loan pricing purposes) was true, correct and complete and did not omit to state a fact necessary to make such data or information not misleading.

2.    Conformance with Underwriting Guidelines.  The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines set forth in the Seller's Guide in effect at the time the Mortgage Loan was originated.  Seller has, with respect to the Mortgage Loans, complied with all requirements applicable to sellers that have received Delegated Underwriting Authority.

3.    Seller's Origination.  The Seller's decision to originate any mortgage loan or to deny any mortgage loan application is an independent decision and is in no way made as a result of Purchaser s decision to purchase, or not to purchase, or the price Purchaser may offer to pay for, any such mortgage loan, if originated.

4.    Delivery of Mortgage Documents.  The Mortgage Note and all other Mortgage Loan documents required to be delivered by the Seller under the Seller Guide have been delivered to Lehman Bank or its designee.

5.    Selection Process.  The Mortgage Loans were not intentionally selected in a manner so as to affect adversely the interests of Lehman Bank.

6.    Loan Characteristics.  With respect to the Mortgage Loans to be sold to Lehman Bank on the Purchase Date, the Mortgage Loan characteristics set forth in the PP&TL are true and complete in the aggregate.

7.    Predatory Lending Regulations; High Cost Loans. Each Mortgage Loan at the time it was made complied in all material respects with applicable local, state and federal laws including but not limited to, all applicable predatory and abusive lending laws.  None of the Mortgage Loans are classified as "high cost", "threshold," or "predatory" loans as defined by applicable predatory and abusive lending laws (including, without limitation, under the Home Ownership and Equity Protection Act of 1994 or under any other applicable state, federal or local law ).

8.    Single Premium Credit Life Insurance.  None of the proceeds of the Mortgage Loan were used to finance single-premium credit life insurance policies.

4

01/31/05 -KY

9.    <u>No Commissions to Third Parties</u>. The Seller has not dealt with any broker or agent or anyone else who might be entitled to a fee or commission in connection with this transaction.

B.    <u>ADDITIONAL AGREEMENTS</u>

1.    At the option of the Purchaser, the Seller shall repurchase any Mortgage Loan if the first or second monthly payments due the Purchaser are not made within (30) days of each such monthly payments respective due date. Such repurchase will be made at the Repurchase Price in accordance with Section 710 of the Seller Guide.

2.    If the Seller fails to provide the Purchaser with a complete electronic data file with respect to each Mortgage Loan containing all loan level data required by the Purchaser, the Purchaser shall have the right (but not obligation) to complete such electronic data file on the Seller's behalf. In such case, any data file completed by the Purchaser on the Seller's behalf shall for all purposes of the Agreement be deemed to have been provided to the Purchaser by the Seller and the Seller shall be liable to the Purchaser for the truth, accuracy and completeness of all such data, even if the Purchaser was negligent in completing such electronic data file.

3.    Seller acknowledges that Lehman Bank may not have conducted any pre-Purchase Date review of the Mortgage Loan files to determine whether or not they are eligible for purchase by Lehman Bank under the Seller Guide. Lehman Bank expressly reserves the right (but not the obligation) to perform a purchase review of the Mortgage Loans and the Mortgage Loan files after the Purchase Date and to exercise any rights or remedies that may be available to Lehman Bank thereunder.

4.    The "Good File Delivery Credit" referred to in Section 600 of the Seller Guide shall not apply to the transactions contemplated by this Agreement.

-5-

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 701 | REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER | 1 |
| 702 | CONCERNING SELLER AND GUARANTOR | 1 |
| 703 | CONCERNING INDIVIDUAL MORTGAGE LOANS | 5 |
| 704 | EVENTS OF DEFAULT | 17 |
| 705 | RIGHT TO DEMAND REASONABLE ASSURANCES | 18 |
| 706 | ADDITIONAL REMEDIES; SETOFF | 19 |
| 707 | WAIVER OF DEFAULTS | 19 |
| 708 | TERMINATION WITHOUT CAUSE | 19 |
| 709 | EFFECT OF TERMINATION | 19 |
| 710 | REPURCHASE OBLIGATION | 20 |
| 711 | INDEMNIFICATION AND THIRD PARTY CLAIMS | 21 |
| 712 | SURVIVAL OF REMEDIES | 21 |
| 713 | MISCELLANEOUS | 22 |
| 713.1 | GOVERNING LAW | 22 |
| 713.2 | SEVERABILITY OF PROVISIONS | 22 |
| 713.3 | ASSIGNMENT | 22 |
| 713.4 | GOVERNING CONTRACT | 22 |
| 713.5 | ENTIRE AGREEMENT; NO WAIVER | 22 |
| 713.6 | NO PARTNERSHIP | 23 |
| 713.7 | CONFIDENTIALITY | 23 |
| 713.8 | NON-EXCLUSIVE RELATIONSHIP | 23 |
| 714 | SOLICITATION FOR REFINANCING | 23 |
| 715 | EARLY PAYMENT DEFAULT | 23 |
| 716 | EARLY PAYOFF | 24 |
| 717 | DELEGATED UNDERWRITING | 24 |
| 718 | AUTOMATED UNDERWRITING | 26 |

LBHI v. PMAC

Exhibit 2
Page 1

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

**700   CONTINUING ELIGIBILITY REQUIREMENTS**

To continue as an approved Seller or Seller/Servicer, each Seller must remain in compliance with all provisions of this Seller's Guide, the Purchase Agreement, and as applicable, the Servicing Agreement, the Custodial Agreement and any other agreement by and between Purchaser and Seller.  Additionally, each Seller/Servicer must maintain an acceptable claims experience with all mortgage insurers.

**701   REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER**

Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.   Seller makes the representations, warranties, and covenants set forth in this Section as of the date of the Loan Purchase Agreement and remakes them as of each Purchase Date, unless the representation or warranty provides otherwise.  Making such representations, warranties and covenants does not release Seller from its obligations under any representations, warranties or covenants contained in other sections of this Seller's Guide, including the exhibits hereto, or in the Loan Purchase Agreement.   It is expressly understood and agreed that Purchaser's rights in connection with Seller's representations, warranties and covenants survive the Purchase Date of any particular Mortgage Loan and any termination of the Loan Purchase Agreement, and are not affected by any investigation or review made by, or on behalf of, Purchaser, except to the extent expressly waived in writing by Purchaser.

In addition to Purchaser's right to assign its rights and duties under the Loan Purchase Agreement and the Seller's Guide, Seller agrees that Purchaser separately may assign to any other party any or all representations, warranties or covenants made by Seller to Purchaser in the Seller's Guide and Loan Purchase Agreement, along with any or all of the remedies available against Seller for Seller's breach of any representation, warranty or covenant, including, without limitation, the repurchase and indemnification remedies. Any such party shall be an intended third party beneficiary of these representations, warranties, covenants and remedies.

**702   CONCERNING SELLER AND GUARANTOR**

In addition to the representations, warranties and covenants set forth elsewhere in this Seller's Guide, Seller represents and warrants as of the respective dates of the Loan Purchase Agreement and as of each Purchase Date, and covenants that:

1. **Due Organization; Good Standing; Licensing.**  Seller and to Seller's knowledge, Seller's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain licenses, registrations and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified and in good standing in each state where a Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by Seller, and, in any event, Seller is and will remain

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

in compliance with the laws of any such state, and is and will remain in good standing with federal authorities to the extent necessary to ensure the enforceability of the related Mortgage Loan.  Seller has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigations, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed within two (2) years prior to the date of the Loan Purchase Agreement by any federal or state agency or instrumentality with respect to either the lending-related financial operations of Seller, or the ability of Seller to perform in accordance with the terms hereof.  Except as may have been disclosed to and approved by Purchaser in writing, Seller is not operating under any type of agreement or order (including, without limitation, a supervisory agreement, memorandum of understanding, cease and desist order, capital directive, supervisory directive and consent decree) with or by the Office of Thrift Supervision, Federal Deposit Insurance Corporation Federal Reserve Board, Office of the Comptroller of the Currency, or any state banking department or other government banking agency, and Seller is in compliance with any and all capital, leverage or other financial standards imposed by any applicable regulatory authority.  Each of the representations and warranties made by Seller is true, accurate and complete, and is deemed to be remade in its entirety as of the date of the Loan Purchase Agreement executed by Seller and as of each Purchase Date.

2.  **Authority.**  Seller has and will maintain the full corporate, limited liability company or partnership (as the case may be) power and authority to execute and deliver the Loan Purchase Agreement and to perform in accordance with each of the terms thereof and the terms of this Seller's Guide; the execution, delivery and performance of the Loan Purchase Agreement and the performance of the terms of this Seller's Guide (including, without limitation, all instruments of transfer to be delivered under the terms of the Loan Purchase Agreement) by Seller, and the consummation of the transactions contemplated thereby and hereby, have been duly and validly authorized; the Loan Purchase Agreement and the Seller's Guide evidence the legal valid, binding and enforceable obligations of Seller; except as such enforcement may be limited by bankruptcy, insolvency, reorganization, receivership, moratorium or other laws relating to or affecting the rights of creditors generally, and by general equity principles, and all requisite corporate, limited liability company or partnership (as the case may be) action has been taken by Seller to make the Loan Purchase Agreement and the terms of this Seller's Guide valid and binding upon Seller, and enforceable in accordance with their respective terms.

3.  **Ordinary Course of Business.**  The consummation of the transactions contemplated by the Loan Purchase Agreement and the terms of this Seller's Guide are in the ordinary course of business of Seller, and the transfer, assignment and conveyance of the Mortgage Loans by Seller pursuant to the Loan Purchase Agreement and the terms of this Seller's Guide are not subject to the bulk transfer laws or any similar statutory provision in effect in any applicable jurisdiction.

4.  **No Conflicts.**  Neither the execution and delivery of the Loan Purchase Agreement, the acquisition and/or making of the Mortgage Loans by Seller, the sale of the Mortgage Loans to Purchaser or the transactions contemplated thereby or pursuant to this Seller's Guide, nor the fulfillment of or compliance with the terms and conditions of the Loan Purchase Agreement, will conflict with or result in a breach of

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

any of the terms, conditions or provisions of Seller's articles of incorporation, charter, by-laws, partnership agreement, operating agreement or other organizational document (as the case may be), or of any legal restriction or regulatory directive or any agreement or instrument to which Seller is now a party or by which it is bound, or constitute a default or result in any acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Seller or any of its property is subject, or impair the ability of Purchaser to realize on any of the Mortgage Loans, or impair the value of any of the Mortgage Loans.

5. **Ability to Perform.**  Seller has the ability to perform each and every obligation of, and/or satisfy each and every requirement imposed on Seller pursuant to the Loan Purchase Agreement and this Seller's Guide, and no offset, counterclaim or defense exists to the full performance by Seller of the requirements of the Loan Purchase Agreement and this Seller's Guide.

6. **No Litigation Pending.**  There is no action, suit, proceeding, inquiry, review, audit or investigation pending or, to Seller's knowledge, threatened by or against Seller that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties or assets of Seller, or in any material liability on the part of Seller, or which would draw into question the validity or enforceability of any of the Loan Purchase Agreement, this Seller's Guide, or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of Seller contemplated in the Loan Purchase Agreement or this Seller's Guide, or which would be likely to impair materially the ability of Seller to perform under the terms of the Loan Purchase Agreement or this Seller's Guide.

7. **No Consent Required.**  No consent, approval, authority or order of any court or governmental agency or body is required for the execution and performance by Seller of, or compliance by Seller with, the Loan Purchase Agreement or this Seller's Guide, the sale of any of the Mortgage Loans, or the consummation of any of the transactions contemplated by the Loan Purchase Agreement, or, if required, such unconditional approval has been obtained prior to the related Purchase Date.

8. **No Untrue Information.**  Neither the Seller Application Package, the Loan Purchase Agreement, nor any statement, report or other document furnished or to be furnished by Seller or Seller's correspondent pursuant to the Loan Purchase Agreement or this Seller's Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Seller meets the Eligibility Standards and shall take all steps necessary to continue to meet such Eligibility Standards.

9. **Securities Law.**  Purchaser has made no representation whatsoever to Seller concerning the applicability or inapplicability of the Security Act of 1933, as amended (the "1933 Act") or of any state securities laws (each, a "State Act") to the transactions that are the subject of this Seller's Guide.  Seller hereby represents and warrants:

   a.  The offer, issuance, sale and delivery of the Mortgage Loans under the circumstances contemplated hereunder constitute exempted transactions

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

under the registration provisions of the 1933 Act, and the registration of the Mortgage Loans under the 1933 Act is not required in connection with any such offer, issuance, sale or delivery of the Mortgage Loans; and

b. The offer, issuance, sale and delivery of the Mortgage Loans under the circumstances contemplated hereunder constitute exempted transactions under applicable state acts, and neither the registration or qualification of the Mortgage Loans under such state acts nor the authorization, approval, or consent of any governmental authority or agency is required or necessary in connection with any such offer, issuance, sale or delivery of the Mortgage Loans.

10. **No Accrued Liabilities.**  Except as may be otherwise disclosed by Seller and acknowledged by Purchaser in writing prior to the date of the Loan Purchase Agreement, there are no accrued liabilities of Seller with respect to any of the Mortgage Loans, or circumstances under which any such accrued liabilities will arise against Purchaser, as successor to Seller's interests in and to the Mortgage Loans, with respect to any action or failure to act by Seller occurring on or prior to the Purchase Date.

11. **Origination, Servicing.**  The origination and servicing of the Mortgage Loans by Seller have been legal, proper, prudent and customary and have conformed to customary standards of the residential mortgage origination and servicing business.

12. **Compliance with Laws.**  Seller has complied with, and has not violated any law, ordinance, requirement, regulation, rule or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Seller or the ability of Seller to consummate the transactions contemplated by the Loan Purchase Agreement and this Seller's Guide.

13. **Compliance with Loan Purchase Agreement and Seller's Guide.**  Seller will comply with all provisions of this Seller's Guide and the Loan Purchase Agreement, and will promptly notify Purchaser of any occurrence, act or omission regarding Seller, the Mortgage Loan, the Mortgaged Property or the Mortgagor of which Seller has knowledge, which occurrence, act or omission may materially affect Seller, the Mortgage Loan, the Mortgaged Property or the Mortgagor.

14. **Standards and Procedures.**  The origination practices utilized by Seller with respect to the Mortgage Loans have been legal, proper, prudent and customary for mortgage loans of a type and credit quality similar to the Mortgage Loans and Seller maintains (i) a staff that is experienced and trained in the proper origination of mortgage loans of a type and credit quality similar to the Mortgage Loans, and (ii) operating procedures, including refined risk assessment strategies beyond simple credit risk analysis, that are prudent and customary in the origination of mortgage loans of a type and credit quality similar to the Mortgage Loans.

15. **No Brokers or Finders.**  Seller has not in connection with any Mortgage Loan incurred any obligation, made any commitment or taken any action that might result in a claim against Purchaser or an obligation by Purchaser to pay a sales brokerage commission, finder's fee or similar fee in respect to the transactions between

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Purchaser and Seller as described in this Seller's Guide or the Loan Purchase Agreement.

16. **No Insolvency, etc.**  Seller has not transferred any Mortgage Loan to Purchaser with any intent to hinder, delay or defraud any of Seller's creditors.  Seller is not insolvent and the sale of the Mortgage Loans will not cause Seller to become insolvent. The consideration received by Seller upon the sale of the Mortgage Loans under this Seller's Guide and the Loan Purchase Agreement constitutes fair consideration and reasonably equivalent value for the Mortgage Loans.

## 703   CONCERNING INDIVIDUAL MORTGAGE LOANS

In addition to the representations, warranties and covenants set forth elsewhere in this Seller's Guide or the Loan Purchase Agreement, as to each Mortgage Loan, Seller represents and warrants as of the related Purchase Date, and covenants that:

1. **Mortgage Loans as Described.**   No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

2. **Payments Current.**  All payments required to be made through the related Purchase Date for the Mortgage Loan under the terms of the Note have been made and credited.   No payment required under the Mortgage Loan is delinquent and no payment under the Mortgage Loan has been delinquent at any time since the origination of the Mortgage Loan.   For the purpose of this paragraph, a payment under a Mortgage Loan will be deemed delinquent if that payment due was not paid by the Mortgagor prior to the date that the next payment was due under the Mortgage Loan.   The Mortgage Loan has not at any time been modified, renewed or extended for the purpose of concealing the delinquency of the Mortgagor.

3. **No Outstanding Charges.**   There has been no default under the terms of the Mortgage, and any and all taxes, including, without limitation, any and all transfer taxes due and payable to any state or municipality relating to the transfer of the ownership and occupancy interest in the Mortgaged Property, and all governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments and/or ground rents that previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item that remains unpaid and that has been assessed but is not yet due and payable.

4. **No Advances.**  Except as has been clearly and conspicuously disclosed in writing to and approved by Purchaser prior to the Purchase Date: (i) Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Mortgage Loan, except for interest accruing from the date of the Note or date of disbursement of the Mortgage Loan proceeds, whichever is greater, to the day that precedes by one (1) month the due date of the first installment of principal and interest; and (ii) the Mortgagor has, in compliance with the Underwriting

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Guidelines, made any down payment required in connection with the Mortgage Loan, and has received no concession from Seller, any correspondent, the seller of the Mortgaged Property, or any other third party.

5.  **Original Terms Unmodified.**  The original terms of the Note and the Mortgage have not been impaired, waived, altered, or modified in any respect, except by a written instrument that Purchaser has approved and has been recorded, if necessary, to protect the interest of Purchaser and which has been delivered to Purchaser with the Mortgage Loan documents; the substance of any such waiver, alteration or modification has been approved by the issuer of any related PMI Policy and the title insurer, to the extent required by the respective policies.  No Mortgagor has been released, in whole or in part.

6.  **No Defense.**  The Mortgage Loan is not subject to any unexpired right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury. The operation of any of the terms of the Note or the Mortgage, or the exercise of any right thereunder will not render either the Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, cancellation, set-off, counterclaim, or defense, including without limitation, the defense of usury, and no such right of rescission, cancellation, set-off, counterclaim or defense has been asserted with respect thereto.  No Mortgagor was a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated.

7.  **Hazard and Flood Insurance.**  Pursuant to the terms of the Mortgage, all buildings and improvements upon the Mortgaged Property are insured by an insurer acceptable to Purchaser against loss by fire, hazards of extended coverage and such other hazards as are customarily insured against in the area where each Mortgaged Property is located in an amount which is at least equal to the lesser of: (a) the outstanding principal balance of the applicable Mortgage Loan or if identified as a second lien mortgage, the total of the outstanding principal balance of the Mortgage Loan and any first lien loan affecting the Mortgaged Property; (b) the full replacement value of the Mortgaged Property, or (c) in the case of flood insurance, the maximum amount of insurance which is available under the Flood Disaster Protection Act of 1973.  If the Mortgaged Property is in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards and in which flood insurance has been made available, a flood insurance policy meeting the requirements of the current guidelines of the Flood Insurance Administration is in effect with an insurance carrier acceptable to Purchaser.  All individual insurance policies contain a standard mortgagee clause naming the Seller and its successors and assigns as mortgagee, and all premiums thereon have been paid.  The Mortgage obligates the Mortgagor thereunder to maintain the individual insurance policies at the Mortgagor's cost and expense, and upon the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at the Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor.  The amount of insurance is sufficient to prevent the application of any co-insurance contribution on any loss.  The hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of Purchaser upon the consummation of the transactions contemplated by the Loan Purchase Agreement.  Seller has not

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

engaged in, and has no knowledge of the Mortgagor having engaged in, any act or omission that would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller. Where required by state law or regulation, the Mortgagor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering the common facilities of a planned unit development. Guaranteed initial flood zone determination documentation is included in each Mortgage Loan file delivered to Purchaser for Purchase.

8. **Origination, Underwriting and Servicing Compliance.**  Seller, and, to the extent the Mortgage Loan was originated by, closed in the name of, or serviced by a correspondent, such correspondent, has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan; and (ii) any and all other applicable federal, state, county, municipal, or other local laws, including, without limitation, those laws relating to truth-in-lending, real estate settlement procedures, consumer credit protection, usury limitations, fair housing, equal credit opportunity, collection practices, money laundering and real estate appraisals.

9. **No Satisfaction of Mortgage.**  The Mortgage has not been satisfied, canceled, subordinated, or rescinded in whole or in part, and the Mortgaged Property has not been released, in whole or in part, from the lien of the Mortgage, and no instrument has been executed that would affect any such release, cancellation, subordination or rescission.  The Seller has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Mortgagor.

10. **Location and Type of Mortgaged Property.**  The Mortgaged Property is a fee simple or acceptable leasehold property located in the state identified in the Mortgage Loan File and unless otherwise provided for in the Loan Purchase Agreement, consists of a single parcel of real property with a single family residence erected thereon or a two-to-four family dwelling or an individual unit in a planned unit development or Condominium Project, provided, however, that any condominium or planned unit development shall conform with applicable requirements outlined in this Seller's Guide; no Mortgaged Property is a mobile home or a boat.  No portion of the Mortgaged Property is used for commercial purposes in such a manner that the Mortgaged Property would be considered commercial rather than residential property by knowledgeable and sophisticated investors active in the residential secondary mortgage market.

11. **Valid Lien.**  The Mortgage is a valid, existing, and enforceable lien on the Mortgaged Property, and on all buildings on the Mortgaged Property, and on all installations and

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

mechanical, electrical, plumbing, heating, and air conditioning systems located in or affixed to such buildings, and on all additions, alterations, and replacements made at any time with respect to the foregoing in the lien position identified by Seller and in accordance with the appropriate Program Profile.  The lien of the Mortgage is subject only to:

a.  The lien of current real property taxes and assessments not yet due and payable;
b.  Covenants, conditions, restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to mortgage lending institutions generally and specifically referred to in the Title Report delivered to the originator of the Mortgage Loan, none of which (i) were not referred to or otherwise considered in the appraisal made for the originator of the Mortgage Loan; or (ii) adversely affects the appraised value of the Mortgaged Property set forth in such appraisal;
c.  Other matters to which like properties are commonly subject, which other matters do not materially interfere with the benefits of the security intended to be provided by the Mortgage, or the use, enjoyment, value, or marketability of the related Mortgaged Property; and
d.  If the Mortgage is identified to Purchaser by the Seller as a second lien mortgage, the lien of the first mortgage.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting and enforceable lien and security interest on the property described therein in the lien position identified by Seller and in accordance with the appropriate Program Profile and Seller has full right to sell and assign the same to the Purchaser. The Mortgaged Property was not, as of the date of origination of the Mortgage Loan, subject to a mortgage, deed of trust, deed to secured debt or other security interest creating a lien subordinate to the lien of the Mortgage other than any such subordinate lien disclosed in the Underwriting Package and considered in the underwriting review of the Mortgage Loan.

12.  **Validity of Mortgage Documents.**  The Note and the Mortgage are genuine, and each is a legal, valid, and binding obligation of the maker thereof, enforceable in accordance with its terms except as such enforcement may be limited by bankruptcy, insolvency, reorganization, receivership, moratorium or other laws relating to or affecting the rights of creditors generally, and by general equity principles.  All parties to the Note and the Mortgage had legal capacity to enter into the Mortgage Loan and to execute and deliver the Note and the Mortgage and any other related agreement, and the Note and the Mortgage have been duly and properly executed by such parties.  The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading.  No fraud was committed in connection with the origination of the Mortgage Loan.  The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

## REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

13. **Full Disbursement of Proceeds.** The Mortgage Loan has been closed and, <u>except for home equity lines of credit,</u> the proceeds of the Mortgage Loan have been fully disbursed and there is no requirement for the future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any escrow funds thereof have been complied with, unless otherwise provided for in the Seller's Guide.  All costs, fees and expenses incurred in making or Closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Note or Mortgage.

14. **Ownership of Mortgage Loans.** Immediately prior to the transfer of the Mortgage Loan to Purchaser, Seller is the sole owner of record and is the holder of the Mortgage Loan.   Except for the security interest of a warehouse lender, which security interest has been disclosed in writing to Purchaser, the Mortgage Loan is not assigned or pledged, and Seller has good and marketable title thereto, and has full right to transfer and sell the Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim, security interest, right, option, assignment or servicing agreement, whatsoever (except pursuant to the Loan Purchase Agreement and this Seller's Guide), and Seller has full right and authority (subject to no interest or participation of, or agreement with, any other party) to sell and assign each Mortgage Loan pursuant to the Loan Purchase Agreement and this Seller's Guide.

15. **Doing Business.** All parties that have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee, or otherwise, are (or during the period in which they held and disposed of such interest, were) (i) in compliance with any and all applicable requirements concerning licensing and qualifications to do business under the laws of the state wherein the Mortgaged Property is located, and (ii) organized under the laws of such state, or (iii) qualified to do business in such state, or (iv) federal savings and loan associations or national banks having principal offices in such state, or (v) not doing business in such state.

16. **LTV/CLTV/HCLTV; PMI Policy.** The LTV/CLTV/HCLTV of each Mortgage Loan does not exceed the maximum LTV/CLTV/HCLTV permitted by the Underwriting Guidelines**.** All provisions of each PMI Policy have been and are being complied with, and such policy is written with a private mortgage insurance company acceptable to Purchaser, is the binding obligation of such insurer, is in full force and effect, and all premiums due thereunder have been paid.  Seller, and if applicable, Seller's correspondent, has not engaged in any act or omission, and Seller has no knowledge of an act or omission by or on behalf of the Mortgagor of any other person, which act or omission would impair the coverage or validity of any such policy. The Mortgage Loan subject to a PMI Policy obligates the Mortgagor thereunder to maintain such PMI Policy and to pay all premiums and charges in connection therewith. The Mortgage interest rate for the Mortgage Loan is net of any such insurance premiums.

17. **Title Insurance.** Unless otherwise indicated in this Seller's Guide, the Mortgage Loan is covered by either (i) an attorney's opinion of title and abstract of title, or (ii) an ALTA lender's title insurance policy or other generally acceptable form of policy of

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

insurance acceptable to FNMA or FHLMC or (iii) Lien Search if Cooperative Loan, issued by a title insurer acceptable to FNMA or FHLMC and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the appropriate priority lien of the Mortgage in the original principal amount of the Mortgage Loan **(or to the extent that a Mortgage Note provides for the potential for negative amortization, the potential maximum principal amount due to negative amortization in accordance with the Mortgage Note)**, and against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment in the Mortgage interest rate and monthly payment, subject only to the exceptions contained in clauses (a), (b), (c) and (d) of paragraph (11) of this *Section 703*.  Where required by state law or regulations, the Mortgagor has been given the opportunity to choose the carrier of the required title insurance.  Additionally, such Title Policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interests therein.  Seller (or Seller's correspondent, as the case may be) is the sole insured of the Title Policy, and such Title Policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated herein and in the Loan Purchase Agreement.  No claims have been made under such Title Policy, the accuracy of any attorney's opinion of title has not been disputed, and no prior holder of the Mortgage, including Seller, has done, by act or omission, anything that would impair the coverage of such Title Policy or the accuracy of such attorney's opinion of title including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person and no such unlawful item has been received, retained or realized by the Seller.  The attorney's opinion of title, if applicable, is in a form and substance acceptable to mortgage lending institutions making mortgage loans in reliance upon an attorney's opinion of title in the state in which the Mortgaged Property is located.-

For any Mortgage Loan not requiring Title Insurance in accordance with this Seller's Guide, the Seller has obtained, examined and considered the matters disclosed in a title report for the Mortgaged Property meeting the requirements of the Seller's Guide (the "Title Report").  The Title Report was prepared and issued by a title insurer acceptable to FNMA, FHLMC or Purchaser and qualified to do business in the jurisdiction where the Mortgaged Property is located.  The Seller does not have actual knowledge of any material inaccuracy in the Title Report or of any lien, claim or encumbrance affecting the Mortgaged Property that is not disclosed by the Title Report (other than the lien of the Mortgage).  The Seller's examination of the Title Report indicates that the Mortgage is a valid and perfected lien on the Mortgaged Property, is in the position identified by Seller and in accordance with the appropriate Program Profile, and is in the original principal amount of the Mortgage Loan **(or to the extent that a Mortgage Note provides for the potential for negative amortization, the maximum potential principal amount due to negative amortization in accordance with the Mortgage Note)**, subject only to the exceptions contained in clauses (a), (b), (c) and (d) of paragraph (11) of this *Section 703*.

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

18. **No Defaults.**  There is no default, breach, violation or event of acceleration existing under the Mortgage or the Note and, no event has occurred or condition exists that, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration and neither Seller nor its predecessors has waived any default, breach, violation or event of acceleration.

19. **No Mechanic's Lien.**  There is no mechanic's or similar lien or claim that has been filed for work, labor or material (and no rights are outstanding that are under applicable law could give rise to such a lien or claim), affecting the related Mortgaged Property, which is or may be a lien prior to, or equal with, the lien of the related Mortgage.

20. **Location of Improvements; No Encroachments.**   All improvements which are considered in determining the appraised value of the Mortgaged Property at origination lie wholly within the boundaries and building restriction lines of the Mortgaged Property and no improvements on adjoining properties encroach upon the Mortgaged Property (except such encroachments as have been affirmatively insured over by the title insurer).  No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulations.

21. **Origination; Payment Terms.**   The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Program Profile applicable to such Mortgage Loan.   **Unless otherwise permitted by the program parameters,** the related Note is payable on the first day of each month in self-amortizing equal monthly installments of principal and interest, with interest calculated and payable in arrears, providing for full amortization or a balloon payment by maturity, over an original term of not more than thirty (30) years.  Further, for each Adjustable-Rate Mortgage Loan **other than a loan that provides for the potential of negative amortization,** effective with the first payment due after each related Interest Rate Change Date, the monthly payment for each Adjustable-Rate Mortgage Loan will be adjusted to an amount that will amortize fully the unpaid principal balance of the Mortgage Loan over its remaining term and pay interest at the interest rate so adjusted, with the exception of interest-only Adjustable-Rate Mortgage Loans outlined in the applicable product descriptions for which each interest-only Mortgage Loan is subject to an initial period of interest-only payments. **If the Mortgage Note is one that provides for the potential for negative amortization, the form of Mortgage Note has been approved for purchase by Purchaser.**

22. **Customary Provisions.**   The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including (i) in the case of Mortgage designated as a deed of trust, by trustee's sale; and (ii) otherwise, by non-judicial foreclosure, if applicable, and if not, by judicial foreclosure.   To the extent permissible under applicable law, any

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

homestead or other exemption available to a Mortgagor, which exemption would interfere with the right to sell the Mortgaged Property at a trustee's sale or with the right to foreclose the Mortgage, has been waived by the Mortgagor or any other necessary party.  Upon default by Mortgagor on a Mortgage Loan and foreclosure on, or trustee's sale of the Mortgaged Property pursuant to the proper procedures, the holder of the Mortgage Loan will be able to deliver good and merchantable title to the Mortgaged Property.

23. **Documents.**   The Mortgage Loan has been originated using the forms and loan documents expressly permitted or approved by Purchaser.

24. **Occupancy Certifications.**   The Mortgaged Property is lawfully occupied under applicable law, unless properly disclosed to Purchaser.  All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property, or with respect to the use and occupancy of the same (including, without limitation, certificates of occupancy and fire underwriting certificates), have been made or obtained by Seller or Seller's correspondent from the appropriate authorities.  The Mortgagor represented at the time of origination of the Mortgage Loan that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence, if applicable.

25. **No Additional Collateral.**   The Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage, the existence of which has previously been disclosed to, and approved by, Purchaser in writing.

26. **Deeds of Trust.**   In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

27. **Acceptable Investment.**   Seller represents that there is no circumstance or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor, or the Mortgagor's credit standing, that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan.

28. **Condominium Units.**   As to each condominium unit located in a Condominium Project:

    a. The Condominium Project has been created and is existing in full compliance with the requirements of the condominium enabling statute of the jurisdiction in which the Condominium Project is located, and with other applicable laws;
    b. The condominium constituent documents contain customary and enforceable provision protecting the right of the mortgagee of each unit, as specified in the Seller's Guide;

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

c.  Not more than six months of regular common expense assessments for the Condominium Unit (and no other condominium assessments) will have priority over the lien of the Mortgage; all taxes, assessments and charges that may become liens prior to the Mortgage under local law relate only to the individual Condominium Unit and not to the Condominium Project as a whole; the Condominium Unit is not located in a jurisdiction that allows for more than six months of regular common expense assessments to have priority over the Mortgage;

d.  Any mortgagee who obtains title to a Condominium Unit pursuant to the remedies provided in the Mortgage or by foreclosure of the Mortgage will not be liable for any fees or charges related to the collection of unpaid assessments that accrued prior to the acquisition of title to the Condominium Unit by the mortgagee;

e.  The requisite percentage of the units in the Condominium Project specified in the Underwriting Guidelines have been sold and conveyed to bona fide purchasers who have Closed or who are legally obligated to Close; multiple purchases of Condominium Units by one owner were counted as one sale when counting the number of sales within a Condominium Project to determine if this sale requirement has been met; and

f.  Condominium dues or charges include an adequate reserve fund for maintenance, repairs or replacement of those common elements that must be replaced on a periodic basis, and are payable in regular installments rather than by special assessments.

29. **Transfer of Mortgage Loans.**  The Assignment of Mortgage from Seller to Purchaser (or Purchaser's designee) is in recordable form and is acceptable for recording or filing under the laws of the jurisdiction in which the Mortgaged Property is located.

30. **Due-on-Sale.**  Unless otherwise provided for in the Seller's Guide, the Mortgage Loan contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the Mortgagee thereunder.

31. **No Graduated Payments or Contingent Interest.**  Unless otherwise provided for in the Seller's Guide, the Mortgage Loan is not a graduated payment mortgage loan; and the Mortgage Loan does not have a shared appreciation or other feature providing for contingent interest or contingent principal.

32. **Mortgaged Property Undamaged; No Condemnation.**  The Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado, or other casualty so as to affect adversely the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended.  The Mortgaged Property is in good repair.  There are no condemnation proceedings by any federal, state or local authority pending or, to Seller's knowledge, threatened against the Mortgaged Property.

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

33. **Servicing Practices; Escrow Deposits.**  The origination and collection practices used with respect to the Mortgage Loan have been in accordance with Accepted Servicing Practices, and have been in all respects legal and proper.   Unless otherwise prohibited by applicable law or as otherwise set forth within this Seller's Guide, the mortgage documents permit the establishment and maintenance of an escrow account, an escrow account has been established in an amount sufficient to pay for all taxes, governmental assessments, insurance premiums, leasehold payments, ground rents and other similar items as the same become due and payable, and all Escrow Payments have been collected in full compliance with state and federal law. With respect to escrow deposits and Escrow Payments, all such payments are in the possession of Seller and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made.  No escrow deposits or Escrow Payments or other charges or payments due Seller have been capitalized under the Mortgage or the Mortgage Note.  All Mortgage Loans delivered for purchase shall contain the HUD required Initial Escrow Account Disclosure Statement.  Any interest required to be paid pursuant to state and local law has been properly paid and credited.  All interest rate adjustments have been made in compliance with state and federal law.

34. **No Other Hazards.**  No hazardous or toxic materials or wastes, or products regulated by any law or ordinance, or asbestos or asbestos products or materials, or polychlorinated biphenyls or urea formaldehyde insulation material (collectively, "hazardous material"), is present on, in, at or under any Mortgaged Property such that: (a) the value of such Mortgaged Property is materially and adversely affected, or (b) under applicable federal, state or local law: (i) such hazardous material would be required to be eliminated before such property could be altered, renovated, demolished or transferred or, (ii) the presence of such hazardous material would subject the owner of such property, or the holder of a security interest therein, to liability for the cost of eliminating such hazardous material or the hazard created thereby.  There is no pending action or proceeding directly involving any Mortgaged Property of which the Seller is aware in which compliance with any environmental law, rule or regulation is an issue; and to the best of the Seller's knowledge, nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation containing a prerequisite to the use and enjoyment of said property.

35. **Supervision of Originator of Mortgage Loan.**  The Mortgage Loan was originated by a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar institution which is supervised and examined by a Federal or State authority, or by a Mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act.

36. **Real Estate Valuations.**  Notwithstanding anything contained elsewhere in this Seller's Guide or the Loan Purchase Agreement, Seller hereby represents and warrants that all appraisals and other forms of real estate valuation conducted in connection with each Mortgage Loan comply with applicable federal and state law, including without limitation, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 as applicable, and the requirements of Fannie Mae or Freddie Mac and the Seller's Guide and were conducted and delivered prior to

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

approval of the Mortgage Loan application by either (i) in the case of an appraisal, by a qualified appraiser, duly appointed by the Seller, or (ii) a valuation method meeting the requirements of the Seller's Guide.   The fair market value of the Mortgaged Property as indicated by the property appraisal or valuation is materially accurate. Any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property has no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof.  The compensation of any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property was not affected by the approval or disapproval of the Mortgage Loan.

37. **Bankruptcy or Insolvency.**   To the best of Seller's knowledge (or Seller's correspondent's knowledge, if applicable) Mortgagor is not a debtor in any state or federal bankruptcy proceeding.

38. **Delivery of Mortgage Documents.**   The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered for the Mortgage Loan by the Seller under this Seller's Guide have been or shall be delivered to Purchaser in accordance with the terms set forth in this Seller's Guide. The Seller is in possession of a complete, true and accurate Mortgage Loan file, except for such documents the originals of which have been delivered to Purchaser.

39. **Consolidation of Future Advances.**   Any future advances made prior to the Purchase Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term.  The lien of the Mortgage securing the consolidated principal amount is expressly insured as having the appropriate lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to FNMA and FHLMC.  The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan.

40. **No Construction Loans.**  No Mortgage Loan was made in connection with the construction or rehabilitation of a Mortgaged Property.

41. **No Denial of Insurance.**  No action, inaction or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of or defense to coverage under any applicable pool insurance policy, special hazard insurance policy, PMI Policy or bankruptcy bond, irrespective of the cause of such failure of coverage.  In connection with the placement of any such insurance, no commission, fee or other compensation has been or will be received by the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director or employee had a financial interest at the time of placement of such insurance.

42. **Mortgagor Acknowledgment.**  The Mortgagor has executed a statement to the effect that the Mortgagor has received all disclosure materials required by applicable law with respect to the making of adjustable rate mortgage loans.  The Seller shall maintain such statement in the Mortgage Loan File.

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

43. **Regarding the Mortgagor.**  The Mortgagor is one or more natural persons and/or trustees for a Land Trust (aka Illinois land trust), a trustee under an Inter Vivos Revocable Trust (living trust), or a trustee under a Blind Trust and such trust is in compliance with the guidelines for such trusts as outlined in the Seller's Guide including but not limited to the policies contained within the following forms:

   a.  Form 407 Inter Vivos Revocable Trust, Land Trust, Blind Trust – Trust Review
   b.  Form 407-LivT, Inter Vivos Revocable Trust – Closing Document Review
   c.  Form 407-LandT, Land Trust – Closing Document Review
   d.  Form 407-BT, Blind Trust – Closing Document Review

44. <span style="color:red">**Servicemembers Civil Relief Act.**</span>  The Mortgagor has not notified the Seller and the Seller has no knowledge of any relief requested or allowed to the Mortgagor under the <span style="color:red">**Servicemembers Civil Relief Act of 2003**</span>.

45. **Prepayment Charges.**  If the Mortgage Loan provides for any prepayment penalty or charge (a "Prepayment Charge") to be paid by the Mortgagor in connection with any prepayment, such Prepayment Charge is enforceable and is in compliance with all applicable laws, rules and regulations.   If the Mortgage Loan provides for a Prepayment Charge, Seller warrants that only one Prepayment Charge has been contracted for between Seller and Mortgagor, the Prepayment Charge has been fully disclosed to Mortgagor and to Purchaser, and the Prepayment Charge complies with all requirements of the related Program Profile applicable to the Mortgage Loan.  Any Prepayment Charge contracted for between Seller and Mortgagor that is not fully disclosed to Purchaser shall not be enforced by Seller, and Seller will be liable to Purchaser for any damages incurred by Purchaser as a result of Seller's failure to disclose the existence of any prepayment provision, rider or addendum and/or the unenforceability of any Prepayment Charge related to the Mortgage Loan.

46. **Cooperative Loan.**  As to each Cooperative Loan:

   a.  Each Security Instrument is a valid, enforceable, and subsisting first security interest in the stock in the residential housing corporation and the Proprietary Lease that were pledged to secure the Cooperative Loan related thereto, and the related Cooperative Loan Property is free and clear of all encumbrances and liens having priority over the lien of the Security Instrument except for the lien of the residential housing corporation for amounts, if any, due under the Proprietary Lease.  The cooperative housing corporation which is the owner of the Co-op Premises owns a good, marketable and insurable title to such premises free and clear of all liens or encumbrances not otherwise approved by Purchaser.
   b.  All cooperative maintenance fees affecting the Cooperative Loan Property which are due and owing have been paid.
   c.  Seller and the cooperative housing corporation have entered into a recognition agreement in a form satisfactory to Purchaser, which such agreement sets forth the specific rights of Seller and its successors (including Purchaser) and any successor servicer and the responsibilities of the cooperative housing corporation to Seller and its successors (including Purchaser) and any successor servicer.

---

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

d. The stock that is pledged as security for the Cooperative Loan is held by a Person as a tenant-stockholder (as that term is defined in Section 216 of the Internal Revenue Code) in a cooperative housing corporation (as that term is defined by Section 216 of the Internal Revenue Code).

e. No Borrower is in default under the related Proprietary Lease.  Seller has not received any notice to cure maintenance defaults.

f. Each Co-op Premises related to a Cooperative Loan Property is located in a cooperative project that is acceptable to Purchaser.  Each Cooperative Loan meets all of the eligibility requirements set forth in the Seller's Guide (including, without limitation, the Cooperative Loan Program Profile) for Cooperative Loans and Seller has or will promptly deliver to Purchaser each of the Cooperative Loan documents set forth in the Seller's Guide (including, without limitation, the Cooperative Loan Program Profile) for Cooperative Loans.

47. **Section 32 Mortgage Loans; Predatory Lending Laws.**  The Mortgage Loan is not a Section 32 Mortgage Loan nor is it a "high cost," "threshold," "covered" or "predatory" loan under any other applicable state, federal or local law; none of the proceeds of the Mortgage Loan were used to finance single-premium credit life insurance policies.

48. **High Cost Loan.**  Mortgaged Loan is not a High Cost Loan as defined by the appropriate Program Profile.

49. **Aurora Choice Advantage$^{SM}$ Loans.  Product descriptions and disclosures provided to consumers in advance of the closing must provide information about the costs, terms, features and risks of the product, including without limitation the following:**

(a) <u>Payment Shock</u>. **Consumers have been informed in writing of the potential increases in payment obligations, including circumstances in which negative amortization reaches the contractual limit.**

(b) <u>Negative Amortization</u>. **Consumers have been informed in writing about the potential for an increasing principal balance and decreasing home equity, as well as other potential adverse consequences of negative amortization.**

(c) <u>Option Period</u>. **Consumers have been informed in writing about the option period and when the option period ends (60 months or when negative amortization cap is reached).**

# 704   EVENTS OF DEFAULT

Each of the following shall constitute an Event of Default on the part of Seller under this Seller's Guide and under the Loan Purchase Agreement:

1. Any breach of any of the representations, warranties or covenants set forth in this Seller's Guide or the Loan Purchase Agreement, including, without limitation, the Eligibility Standards and the provisions of Section 7 hereof; or the failure of Seller to perform any of its obligations under this Seller's Guide or the Loan Purchase Agreement; or

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

2. The occurrence of an act of insolvency or bankruptcy concerning Seller, including, without limitation: (i) a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshaling of assets and liabilities, or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against Seller; or (ii) Seller shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshaling of assets and liabilities, or similar proceedings of or relating to Seller, or of or relating to all or substantially all of its property or (iii) Seller shall admit in writing its inability to pay its debts generally as they become due, or Seller files a petition to take advantage of any applicable insolvency or reorganization statue, makes an assignment for the benefit of its creditors, or voluntarily suspends payment of its obligations; or

3. Seller fails to meet any capital, leverage or other financial standard imposed by any laws or applicable regulatory authority, or in Purchaser's sole discretion, any material adverse change occurs in the financial condition of the Seller, or Seller fails to meet any net worth or ownership requirements as may be set forth in this Seller's Guide; or

4. Any Guarantor of Seller's obligations defaults under the terms of the Guaranty Agreement (including, without limitation, any default by Guarantor in maintaining any minimum Tangible Net Worth required under, and as defined in, such Guaranty Agreement), or becomes insolvent or bankruptcy, or a material adverse change occurs in the financial condition of such Guarantor; or Guarantor fails to meet any capital, leverage or other financial standard imposed by any applicable regulatory authority; or

5. Seller defaults under the terms of any other agreement to which Seller and Purchaser are parties.

## 705   RIGHT TO DEMAND REASONABLE ASSURANCES

If, at any time during the term of the Loan Purchase Agreement, Purchaser has reason to believe that Seller is not conducting its business in accordance with: (i) all applicable statutes, regulations, rules and notices of federal, state or local government agencies or instrumentalities; or (ii) all applicable requirements of Purchaser, as set forth in this Seller's Guide or the Loan Purchase Agreement, then, in either case, Purchaser shall have the right to demand, pursuant to written notice from Purchaser to Seller, reasonable assurances from Seller that such a belief is in fact unfounded, and any failure of Seller to provide such reasonable assurances within a time frame specified in such written notices shall itself constitute an Event of Default hereunder; provided, however, that, notwithstanding anything set forth in this Seller's Guide or the Loan Purchase Agreement to the contrary, and so long as no other Event of Default hereunder has occurred and is continuing, Purchaser shall only be entitled to exercise such remedies hereunder (with respect to an Event of Default under this Section) as may be necessary or appropriate for Purchaser to insulate itself from any potential harm or loss relating to or caused by the facts or circumstances giving rise to such Event of Default.  Nothing in this Section 7 shall be deemed or construed to limit, waive or impair any of Purchaser's rights or remedies with respect to any Event of Default under any other Section of this Seller's Guide.

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

**706     ADDITIONAL REMEDIES; SETOFF**

Upon the occurrence of any Event of Default, without affecting any repurchase obligation of Seller, and in addition to whatever rights Purchaser may have under the Seller's Guide, Loan Purchase Agreement or at law to damages or in equity, including, without limitation, injunctive relief and specific performance, Purchaser, by notice in writing to Seller, may immediately suspend all Registrations and Commitments and refuse to fund any or all Mortgage Loans, pending the cure, to Purchaser's satisfaction if such Event of Default is, in Purchaser's judgment, susceptible to cure within thirty (30) calendar days after the date of such notice of an Event of Default; if any such Event of Default is not cured to Purchaser's satisfaction within such thirty (30) day period, Purchaser may, by written notice to Seller, immediately terminate any and all duties and obligations of Purchaser under the Loan Purchase Agreement and this Seller's Guide.  Notwithstanding the foregoing, upon the occurrence of an Event of Default of the type set forth in *Section 704(2)* or *704(3),* any and all duties and obligations of Purchaser under the Loan Purchase Agreement and this Seller's Guide shall immediately and automatically terminate without notice to Seller or any opportunity to cure such defaults.

Upon the failure by Seller to perform any of its obligations under this Seller's Guide or the Loan Purchase Agreement, including without limitation the failure to pay any and all monies due Purchaser, in addition to all rights Purchaser may have under this Seller's Guide, the Loan Purchase Agreement or at law or in equity, Purchaser shall have the right to deduct any amount due to Purchaser from any amount due to Seller, whether under Section 601 or otherwise.

**707     WAIVER OF DEFAULTS**

Purchaser may waive any default by Seller in the performance of Seller's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver.  No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by Purchaser in exercising or failure to exercise any right arising from such default affect or impair Purchaser's rights as to such default or any subsequent default.

**708     TERMINATION WITHOUT CAUSE**

In addition to the provisions set forth elsewhere herein or in the Loan Purchase Agreement for termination of this Seller's Guide and the Loan Purchase Agreement, this Seller's Guide and the Loan Purchase Agreement may be terminated without cause at any time by either party upon prior written notice of termination to the other party.  The effective date of termination must be specified in such notice and must be at least thirty (30) days after the date such written notice is sent.

**709     EFFECT OF TERMINATION**

Any termination of the Loan Purchase Agreement shall not affect Seller's obligations with respect to Mortgage Loans previously sold or delivered to Purchaser prior to the effective date of such termination.  Provided that termination is without cause, as provided in the immediately preceding section and provided that no Event of Default on the part of Seller has occurred, termination of the Loan Purchase Agreement by Purchaser shall not apply to any Mortgage Loans that have been Registered with Purchaser by Seller before the effective date of such termination notice.  If Purchaser terminates the Loan Purchase

LBHI v. PMAC

Exhibit 2
Page 20

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Agreement due to an Event of Default, Purchaser may refuse to Register or Fund any of all Mortgage Loans after the effective date of termination.

## 710   REPURCHASE OBLIGATION

In the event of a breach of any of the representations, warranties or covenants contained in *Section 700* through *710* herein, which breach materially and adversely affects the value of the Mortgage Loans or the interest of Purchaser, or materially and adversely affects the interest of Purchaser in the related Mortgage Loan, and unless Purchaser determines that such breach has been cured, or if a loan becomes an Early Payment Default in accordance with *Section 715* herein, Seller shall, at Purchaser's option, repurchase the related Mortgage Loan (in the case of a breach of the representations, warranties or covenants contained in *Section 703* hereof or an Early Payment Default), or all Mortgage Loans (in the case of a breach of any of the representations, warranties or covenants contained in *Section 702* hereof), at the Repurchase Price.  Any such repurchase shall occur no later than thirty (30) days after the earlier of the date on which Purchaser notifies Seller of such breach or the date on which Seller knows of such breach.  Seller must notify Purchaser immediately upon Seller's knowledge of any breach of any representation, warranty or covenant.

Seller agrees to pay any and all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with any such repurchase, including, without limitation, Purchaser's reasonable attorney's fees.

Any such repurchase shall be accomplished by wire transfer from Seller to Purchaser of immediately available funds.  Upon receipt by Purchaser of the Repurchase Price, Purchaser shall release to Seller the related Mortgage Loan Files and shall execute and deliver to Seller such instruments of transfer or assignment, in each case without recourse, as shall be necessary to vest in Seller, or its designee, title to such repurchased Mortgage Loans.  Seller shall assume the cost of recordation of assignments and other costs of transfer of any repurchased Mortgage Loans.

Notwithstanding any other provision of the Seller's Guide or Loan Purchase Agreement to the contrary, with respect to each Mortgage Loan that is the subject of any breach of one or more representations, warranties or covenants specified in *Section 702* or *703* hereof, if Purchaser (or Purchaser's agent or affiliate, or any subsequent owner of the Mortgage Loan or such owner's agent or affiliate) has acquired title to the related Mortgaged Property through foreclosure, deed-in-lieu of foreclosure, abandonment or reclamation from bankruptcy of the defaulted Mortgage Loan, then, within thirty (30) days after Purchaser's demand therefor, Seller shall, at Purchaser's option: (i) purchase the Mortgaged Property from Purchaser at a purchase price equal to the Repurchase Price; or (ii) if Purchaser has sold or otherwise disposed of the Mortgaged Property, indemnify Purchaser as specified in *Section 711* hereof.  If Purchaser determines, for any reason, not to acquire title to the Mortgaged Property relating to the defaulted Mortgage Loan, Seller will nonetheless remain responsible to indemnify Purchaser, pursuant to *Section 711* hereof, with respect to any breach of *Section 702* or *703* hereof.

All of Purchaser's remedies hereunder, including, without limitation, the repurchase obligation with respect to the Mortgage Loan, the purchase obligation with respect to the Mortgaged Property, and the indemnification with respect to any breach of a

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

representation, warranty or covenant (or any other Event of Default), shall exist regardless of (i) the dates of Purchaser's discovery and notice to Seller of the breach and Purchaser's demand for any remedy and (ii) any limitation or qualification of a representation or warranty as being made "to Seller's knowledge" or "to the best of Seller's knowledge" or any similar qualification relating to the knowledge of Seller. Notwithstanding any other provision of the Seller's Guide or Loan Purchase Agreement to the contrary, Seller shall remain liable for all remedies hereunder, even if Purchaser discovers a breach after the Mortgage Loan is liquidated in foreclosure.

## 711    INDEMNIFICATION AND THIRD PARTY CLAIMS

In addition to any repurchase and cure obligations of Seller, and any and all other remedies available to Purchaser under this Seller's Guide and the Loan Purchase Agreement, Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent. In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorney's fees of Purchaser incurred in enforcing Seller's obligations hereunder, including, without limitation, the repurchase obligation set forth above. It is understood and agreed that any subsequent holder of any Note acquired hereunder by Purchaser shall be a third party beneficiary of the Loan Purchase Agreement and this Seller's Guide. The indemnification obligations of Seller hereunder shall survive the termination of this Seller's Guide and the related Loan Purchase Agreement.

The Seller immediately shall notify the Purchaser if a claim is made by a third party with respect to this Seller's Guide, the Loan Purchase Agreement or the Mortgage Loans, assume (with the prior written consent of the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim. The Purchaser promptly shall reimburse the Seller for all amounts advanced by it pursuant to the preceding sentence except when the claim is in any way related to the Seller's indemnification with respect to a breach by the Seller of any representation or warranty, or the failure of the Seller with respect to any of the Seller's obligations under this Seller's Guide or the Loan Purchase Agreement.

## 712    SURVIVAL OF REMEDIES

It is understood and agreed that Purchaser's remedies for breach of the representations, warranties or covenants set forth herein and/or in the Loan Purchase Agreement shall survive the sale and delivery of the related Mortgage Loan to Purchaser and Funding of the related Purchase Price by Purchaser, and will continue in full force and effect, notwithstanding any termination of this Seller's Guide and the related Loan Purchase Agreement, or any restrictive or qualified endorsement on any Note or Assignment of Mortgage or loan approval or other examination of or failure to examine any related Mortgage Loan File by Purchaser.

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

## 713    MISCELLANEOUS

### 713.1    GOVERNING LAW

The Loan Purchase Agreement shall be construed in accordance with the substantive law of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such law without regard for the principles of conflict of laws.

### 713.2    SEVERABILITY OF PROVISIONS

If any one or more of the covenants, agreements, provisions or terms of the Loan Purchase Agreement or this Seller's Guide shall be held invalid for any reason whatsoever, then any such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions and terms of the Loan Purchase Agreement or this Seller's Guide and shall in no way affect the validity or enforceability of the other provisions of the Loan Purchase Agreement of this Seller's Guide.

### 713.3    ASSIGNMENT

Purchaser shall have the right to assign its rights and duties under the Loan Purchase Agreement and this Seller's Guide to any party without the consent of Seller.  Purchaser shall notify Seller in writing of any such assignment.  Seller shall have no right to assign its rights or duties under the Loan Purchase Agreement or this Seller's Guide without Purchaser's prior written consent.  Purchaser also may assign separately to any other party any or all representations, warranties or covenants made by Seller to Purchaser in the Seller's Guide or Loan Purchase Agreement, along with any or all of Purchaser's remedies available against the Seller for Seller's breach of any representation, warranty or covenant hereunder, including, without limitation, the repurchase and indemnification remedies.    Any such party shall be an intended third party beneficiary of those representations, warranties, covenants and remedies.

### 713.4    GOVERNING CONTRACT

In the case of any inconsistency between this Seller's Guide and the Loan Purchase Agreement, the terms of the Loan Purchase Agreement shall control.  In the event of any conflict between the substantive provisions of the Underwriting Guidelines and the other substantive provisions of this Seller's Guide, such other provisions of the Seller's Guide shall control.

### 713.5    ENTIRE AGREEMENT; NO WAIVER

This Seller's Guide, the Loan Purchase Agreement, and/or the exhibits hereto and thereto contain the final and entire agreement between Purchaser and Seller with respect to the purchase and sale of the Mortgage Loans, and are intended to be an integration of all prior negotiations and understandings.   No waiver of any of the provisions of this Seller's Guide or Loan Purchase Agreement shall be valid unless the same is in writing and is signed by the party against which such waiver is sought to be enforced.  Delay by Purchaser in exercising any right or remedy under this Seller's Guide, under the Loan Purchase Agreement, or otherwise provided by law shall not operate as a waiver or preclude the later exercise of that right or remedy.

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

713.6 **NO PARTNERSHIP**

Nothing herein contained shall be deemed or construed to create a partnership or joint venture between the parties hereto.  At no time shall Seller represent that it is acting as an agent for or on behalf of Purchaser.  At all times Seller shall act as an independent contractor.

713.7 **CONFIDENTIALITY**

As a result of its relationship with Purchaser and access to the Loan Purchase Agreement, Seller will learn or have access to various trade secrets, confidential and proprietary methods, techniques, processes, applications, approaches and other information in various forms, which such information is used or useful in the conduct of Purchaser's business, including its origination, purchase, sale and servicing of mortgage products, collectively referred to as "Confidential Information".  Seller acknowledges that such Confidential Information is the exclusive property of Purchaser.  Seller shall not, at any time, regardless of if, when and how its relationship with Purchaser may terminate, directly or indirectly use, disclose, publish, reveal, copy, disseminate or otherwise make available such Confidential Information, other than as expressly set forth herein or in the Loan Purchase Agreement.

713.8 **NON-EXCLUSIVE RELATIONSHIP**

Notwithstanding anything set forth herein or elsewhere to the contrary, Seller acknowledges, understand and agrees that its relationship with Purchaser is on a non-exclusive basis and that Purchaser may, in its discretion, at any time or from time to time, and without any liability or obligation to Seller: (i) contract with, designate, authorize, constitute or appoint one or more entities other than Seller to originate, solicit, process, underwrite, close, fund, bill, sell and/or invest in loans of any type for funding by or sale to, or as agent for and on behalf of, Purchaser, all of which activity may occur in all or any portion of the geographic territory in which Seller originates loans; and/or (ii) either directly or indirectly compete with Seller, either for  Purchaser's own account or as agent for and on behalf of  another, in the solicitation, processing, underwriting, closing, funding, billing, selling of and/or investing in loans in such geographic territory.

# 714 SOLICITATION FOR REFINANCING

During the remaining term of any Mortgage Loan purchased by Purchaser, neither Seller, nor any affiliate of Seller shall take any action personally, by telephone, mail or otherwise, to solicit the prepayment of Mortgage Loans, in whole or in part, without the prior written consent and approval of Purchaser.  It is understood and agreed that promotions undertaken by the Seller or any Affiliate of Seller which are directed to the general public at large, including mass mailings based on commercially acquired mailing lists, newspaper, radio and television advertisements, shall not constitute solicitation under this Section.

# 715 EARLY PAYMENT DEFAULT

Early Payment Default loans are subject to repurchase by the Seller at the Repurchase Price in accordance with *Section 710* herein.

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

For Mortgage Loans prior-approved by Purchaser (i.e as to which Purchaser underwrote the loan prior to Purchase), a mortgage loan has an early payment default if the first monthly payment due Purchaser is not made within thirty (30) days of its due date.

For Mortgage Loans delivered pursuant to Seller's Delegated Underwriting Authority, a Mortgage Loan has an early payment default if either the first or second monthly payment due the Purchaser is not made within 30 days of each such monthly payment's respective due date.

Delegated Underwriting Authority applies to all loans *eligible* for a delegated underwriting decision by Seller, whether or not Purchaser elects to underwrite the loan prior to Purchase.

For Mortgage Loans delivered pursuant to Bulk Transactions, a Mortgage Loan has an early payment default if either the first or second monthly payment due the Purchaser is not made within 30 days of each such monthly payment's respective due date.

## 716   EARLY PAYOFF

If a Mortgage Loan is paid in full within three (3) months of the Purchase Date, Seller will reimburse Purchaser that portion of the Purchase Price in excess of par multiplied by the Unpaid Principal Balance as of the Date of the payment in full and net of potential prepayment charges on loans that contain a valid prepayment penalty provision in effect during the Early Payoff Period.

## 717   DELEGATED UNDERWRITING

Unless otherwise indicated within this Seller's Guide, Sellers must have written authorization from Purchaser to utilize Delegated Underwriting Authority. Upon authorization to utilize delegated authority, Seller represents and warrants as of the Purchase Date of each Mortgage Loan delivered pursuant to Seller's Delegated Underwriting Authority, in addition to the other representations and warranties contained within this Section 7, the following:

1.   All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

2.   Seller shall not represent to any entity, person or party that it is acting as an agent for, or on behalf of, Purchaser.  Nothing in this Seller's Guide shall be construed to create any agency, partnership or joint venture between Seller and Purchaser for any purpose.

3.   Seller agrees to perform all underwriting functions with the same care and diligence as an experienced, prudent underwriter performing such duties in the industry with respect to similar mortgage loan products and, in any event, with no less care and diligence than if it were underwriting Mortgage Loans for its own account.

4.   Seller agrees that it shall maintain an experienced, qualified and approved underwriting staff and shall cause such staff to perform all underwriting functions to

LBHI v. PMAC

Exhibit 2
Page 25

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

be performed by Seller in compliance with the requirements of the Seller's Guide and all modifications thereto.  Seller shall cause the actual underwriting decisions and evaluations made during the underwriting process to be done only by employees of Seller who are qualified to make, and have substantial experience making, such decisions.  All Mortgage Loans delivered to Purchaser pursuant to Purchaser's Delegated Underwriting Authority have been underwritten by Seller directly and not by any third party underwriter, unless such third party underwriter has been specifically approved in writing by Purchaser.

5.  It is Seller's responsibility to insure that (i) Seller and its underwriters at all times maintain and use complete, up-to-date versions of the Seller's Guide, including all updates, bulletins, announcements, memorandums, and product descriptions and (ii) all of its employees performing underwriting duties and functions remain informed and knowledgeable regarding such guidelines and all requirements of the Seller's Guide.

6.  Seller shall be responsible for approving only marketable Mortgage Loans and shall document its underwriting of each and every loan in a manner that justifies and supports such approval and marketability on the secondary mortgage market.

7.  Seller must include in each submission all underwriting worksheets and written comments from the underwriter in regard to the final loan decision in addition to any forms or documentation required by the Seller's Guide.

8.  Seller further agrees to maintain sufficient quality control guidelines to insure that all of the above requirements are carried forth.  Seller agrees to provide Purchaser full access to its quality control procedures and to keep Purchaser apprised as to such procedures and policies.

9.  Purchaser shall have the right to perform pre-purchase and post-purchase reviews of all Mortgage Loans and to request any additional documentation to ensure compliance with Purchaser's guidelines.  Purchaser reserves the right to refuse purchase or to require repurchase of Mortgage Loans that do not meet Purchaser's guidelines, determined at Purchaser's sole discretion.

10. Seller's delegated authority may be terminated upon written notice.  Termination shall be effective as to all Mortgage Loans submitted to Purchaser on or after such notice of termination.

11. Seller represents and warrants that any Mortgage Loan submitted under this Delegated Underwriting Authority was originated by a savings and loan association, savings bank, commercial bank, credit union, insurance company, or similar institution which is supervised and examined by a Federal or State authority, or by a Mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act.

Seller acknowledges that failure of Purchaser to review or discover any deficiency or error in the Mortgage Loan at time of Purchase by Purchaser will neither release Seller from its obligations to provide any required documentation or correct any errors, nor will it prevent or inhibit Purchaser's exercise of any of its remedies.

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

## 718    AUTOMATED UNDERWRITING

All Loans submitted by Seller for Purchase by Purchaser that have been underwritten through Purchaser approved automated underwriting system shall meet the requirements specified within the Seller's Guide.  Further, Seller represents and warrants that:

1.  Seller is registered with the provider of the automated underwriting system and is a valid licensee of the automated underwriting system;

2.  The Mortgage Loan received a recommendation/disposition from the automated underwriting system that is acceptable to Purchaser;

3.  Any verification messages or approval conditions specified in the findings of the automated underwriting system were satisfactorily resolved before the Mortgage Loan is closed;

4.  The terms of the closed loan and the underwriting information in the Mortgage File both match the data on which the automated underwriting system's recommendations and findings were based.

Seller shall be deemed to make the following representation and warranty to Purchaser as of the related Funding Date.  All data pertaining to the Mortgage Loan submitted to the applicable automated underwriting system was true, complete and accurate as of the date when entered and as of the closing date of the Mortgage Loan; verification of all such data is included in the Mortgage Loan File delivered to Purchaser and such verification complies with the requirements of the Seller's Guide; Seller has taken all appropriate action to satisfactorily resolve and comply with any verification messages/approval conditions produced by the automated underwriting system prior to closing the Mortgage Loan and documentation of such resolution is provided in the delivered loan file.  This representation and warranty is made in addition to, and not in lieu of, any or all of the other representations and warranties contained elsewhere in the Seller's Guide or Loan Purchase Agreement.

Seller acknowledges that (i) in the event of a discrepancy between the data validated by Purchaser's review of the file and the data entered in the automated underwriting system by Seller, the findings of the automated underwriting system shall be considered null and void and Purchaser shall have no obligation to purchase/fund the loan, and (ii) failure of Purchaser to review or discover any deficiency or error in the Mortgage Loans(s) at the time of purchase by Purchaser will neither release Seller from its obligations to provide any required documentation or correct any errors, nor will it prevent or inhibit Purchaser's exercise of any of its remedies hereunder, including Mortgage Loan Repurchase in accordance with *Section 710* herein.

LBHI v. PMAC

Exhibit 2
Page 27

JS 44   (Rev. 12/11)   District of Colorado Form

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Lehman Brothers Holdings, Inc.

## DEFENDANTS

PMAC Lending Services, Inc., f/k/a Preferred Mortgage Alliance Corp.

**(b)** County of Residence of First Listed Plaintiff New York, New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*
Christopher P. Carrington, Foster Graham Milstein & Calisher, LLP
360 S. Garfield Street, 6th Floor, Denver, Colorado 80209
303-333-9810

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [X] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [X] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [X] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Med. Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities Employment
- [ ] 446 Amer. w/Disabilities Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS - Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district *(specify)*
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:                    [ ] AP Docket
Breach of Contract

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 500,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [X] No

DATE
12/13/2013

SIGNATURE OF ATTORNEY OF RECORD
s/ Christopher P. Carrington

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

## District of Colorado

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS, INC. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No. |
| PMAC LENDING SERVICES, INC., f/k/a | ) |
| PREFERRED MORTGAGE ALLIANCE CORP. | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  PMAC LENDING SERVICES, INC., f/k/a PREFERRED MORTGAGE ALLIANCE
CORP.
c/o Samuel Kim, Registered Agent
15325 Fairfield Ranch Road, Suite 125
Chino Hills, California 91709

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you
are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.
P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of
the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney,
whose name and address are:

Christopher P. Carrington
Foster Graham Milstein & Calisher, LLP
360 S. Garfield Street, 6th Floor
Denver, Colorado 80209
Telephone:  303-333-9810

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.
You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

                                            *Signature of Clerk or Deputy Clerk*

# EXHIBIT J

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-03373-RM-KLM

LEHMAN BROTHERS HOLDINGS INC,

      Plaintiff,

v.

PMAC LENDING SERVICES, INC., f/k/a PREFERRED MORTGAGE ALLIANCE
CORP.

      Defendant.

---

**NOTICE OF DISMISSAL WITHOUT PREJUDICE**

---

      Plaintiff, Lehman Brothers Holdings Inc., respectfully submits this Notice of Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  Defendant has not yet filed an answer or a motion for summary judgment.  Consequently, this case may be, and hereby is, dismissed upon notice.  The dismissal is without prejudice per Fed. R. Civ. P. 41(a)(1)(B).  The dismissal is self-executing; no further action is required by the Court. *See, e.g., Janssen v. Harris*, 321 F.3d 998, 1000 (10th Cir. 2003).

      Dated: November 10, 2014

                           Respectfully submitted,

                           */s/ Christopher P. Carrington*
                           Christopher P. Carrington
                           Michael J. Gates
                           **Foster Graham Milstein & Calisher, LLP**
                           360 S. Garfield Street, Ste. 600
                           Denver, Colorado 80209
                           Telephone: (303) 333-9810
                           Email: carrington@fostergraham.com
                           mgates@fostergraham.com
                           *Attorneys for Plaintiff Lehman Brothers Holdings Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of November, 2014, a true and correct copy of the foregoing NOTICE OF DISMISSAL WITHOUT PREJUDICE was electronically filed and served via *ECF* as follows:

Tamara A. Hoffbuhr Seelman
Nicole C. Salamander Irby
Gordon & Rees LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
tseelman@gordonrees.com
nsalamanderirby@gordonrees.com

*s/ Tiffany A. Noel*

# EXHIBIT K

Stephen D. Weisskopf (State Bar No. 213596)
sweisskopf@weisskopflaw.com
**Weisskopf Law**
1800 Century Park East, Suite 600
Los Angeles, California, 90067
Telephone: (310) 734-2026
Facsimile: (310) 421-4180

Attorneys for Plaintiff LEHMAN
BROTHERS HOLDINGS INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC.<br><br>           Plaintiff,<br><br>   vs.<br><br>PMC BANCORP f/k/a PROFESSIONAL MORTGAGE CORP. and PMAC LENDING SERVICES, INC.<br><br>         Defendant. | CASE NO. _____<br><br>**COMPLAINT**<br><br>1) CONTRACTUAL INDEMNIFICATION<br>2) CONTRACTUAL INDEMNIFICATION/SUCCESSOR LIABILITY |

Plaintiff Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for its Complaint against Defendants PMC Bancorp f/k/a Professional Mortgage Corp. ("PMC Bancorp") and PMAC Lending Services, Inc. ("PMAC Lending") (PMAC Lending and PMC Bancorp collectively "Defendants"), alleges upon knowledge as to itself and its own conduct, and upon information and belief as to all other matters, as follows:

1

**Nature of Action**

1. In this action, LBHI seeks to enforce its right to contractual indemnification for liability LBHI incurred as a result of Defendants' sale—pursuant to separate sale agreements executed by each Defendant—of numerous defective mortgage loans in breach of Defendants' representations, warranties, and covenants concerning those loans (the "Breaching Loans").

2. LBHI sold the Breaching Loans to investors, including the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac", and together with Fannie Mae, the "GSEs") under agreements that included representations and warranties concerning the mortgage loans that were co-extensive with those made by Defendants.

3. LBHI retained the right to seek indemnification from Defendants in the event Defendants became liable for certain indemnified events.

4. After the GSEs discovered that numerous mortgage loans breached certain of those representations and warranties, the GSEs made claims against LBHI for losses suffered on the mortgage loans.

5. LBHI has incurred liability as a result of those claims, triggering LBHI's right to indemnification under the agreements with Defendants.

6. LBHI has provided Defendants a detailed spreadsheet setting forth the specific bases for the underlying claims on each Breaching Loan.  True and correct copies of the spreadsheets are attached hereto as **Exhibit A** (PMC Bancorp loan schedule) and **Exhibit B** (PMAC Lending loan schedule).

7. By this action, LBHI seeks to recover money damages from Defendants for LBHI's indemnification claims related to the loans sold by each Defendant.

8. In addition to each Defendant's separate liability for the loans it sold, LBHI also seeks to recover damages from PMAC Lending for LBHI's indemnification claim against PMC Bancorp because PMAC Lending is liable, as

{00161623.DOC / 1 }                         2

successor, for PMC Bancorp's obligations/debts—specifically, PMAC expressly or impliedly agreed to assume PMC Bancorp's liabilities; engaged in a de-facto consolidation or merger with PMC Bancorp; is a mere continuation of PMC Bancorp; and/or engaged in a fraudulent transfer of PMC Bancorp's assets with actual intent to hinder, delay, or defraud PMC Bancorp's creditors.

### Parties

9.     Plaintiff LBHI is a Delaware corporation with its principal place of business in New York, New York.

10.    On September 15, 2008, Plaintiff LBHI commenced with the United States Bankruptcy Court for the Southern District of New York a voluntary case under Chapter 11 of the Bankruptcy Code.

11.    Defendant PMC Bancorp is a California corporation with its principal place of business in City of Industry, California, Los Angeles County.

12.    Defendant PMAC Lending is a California corporation with its principal place of business in Chino Hills, California.

### Jurisdiction and Venue

13.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between LBHI and Defendants, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because PMAC Lending and PMC Bancorp both reside within the Central District of California.

15.    This Court has personal jurisdiction over Defendants.

### Factual Background

16.    At all relevant times, LBHI engaged in the purchase and sale of mortgage loans directly or through affiliates, including Lehman Brothers Bank, FSB ("LBB"), and then sold the loans to third parties, including the GSEs.

**COMPLAINT**

17.    At all relevant times, Defendants engaged in mortgage origination, as well as the sale of mortgage loans on the secondary market to entities such as LBB and LBHI.

### A.    The Governing Agreements

18.    Defendants entered into written agreements titled Mortgage Loan Purchase Agreements (the "Loan Purchase Agreements") with LBB.[1]

19.    The Loan Purchase Agreements specifically incorporate the terms and conditions of the Aurora Loan Services, LLC's Seller's Guides ("Seller's Guides"), which set forth additional duties and obligations of Defendants.

20.    The Seller's Guides in their entirety are valid and binding upon Defendants.

21.    The Loan Purchase Agreements and the Sellers' Guides, (together, the "Agreements") set forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to representations and warranties concerning the parties and individual mortgage loans purchased or sold, and Defendants' indemnification obligations.

22.    Defendants each sold numerous Breaching Loans pursuant to the terms of the Agreements.

### B.    Lehman Brothers Holdings Inc.'s Rights

23.    Section 8 of the Seller's Guide defines the "Purchaser" as LBB and its "successors and/or assigns"[2] and, therefore, the parties agreed that Defendants'

---

[1]    Although PMC Bancorp and PMAC Lending entered into separate Loan Purchase Agreements, the relevant provisions are substantially similar in all material respects as between the two Loan Purchase Agreements at issue in this action.

[2]    The operative Seller's Guide for each of the Breaching Loans is the version in effect at the time Defendants sold the at-issue loan to LBB or LBHI.  Although the language of certain sections referenced in the Complaint may vary slightly from Seller's Guide to Seller's Guide, it is generally consistent in all material respects.

obligations would extend to any subsequent purchaser of the loans, such as, in this case, LBHI.

24.    In conjunction with the sale by LBB to LBHI of the Breaching Loans, LBB assigned to LBHI all of its rights and remedies under the Agreements with respect to the Breaching Loans.

25.    Further, the Seller's Guide provides that LBHI, as a subsequent holder of any Mortgage Loan, "shall be a third party beneficiary" of the Agreement. Seller's Guide § 711. Accordingly, LBHI as a subsequent holder of the Breaching Loans is entitled, as a third party beneficiary, to the all of the benefits of the Agreement, including the right to indemnification.

**C.    Defendants' Representations**

26.    With respect to each of the loans sold to LBB under the Agreements, Defendants made a number of representations, warranties, and covenants concerning the quality of the mortgage loans. Specific examples of Defendants' representations, warranties, and covenants concerning the quality of the mortgage loans include, but are not limited to, the following:

  a) No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading. Seller's Guide § 703(1).

  b) Seller . . . has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan[.] Seller Guide § 703(8).

**COMPLAINT**

c)   The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein. Seller's Guide § 703(12).

d)   There is no default, breach, violation or event of acceleration existing under the Mortgage or the Note and, no event has occurred or condition exists that, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration and neither Seller nor its predecessors has waived any default, breach, violation or event of acceleration. Seller's Guide § 703(18).

e)   The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Product Profile applicable to such Mortgage Loan . . . . Seller's Guide § 703(21).

f)   The Mortgaged Property is lawfully occupied under applicable law, unless properly disclosed to Purchaser. All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property, or with respect to the use and occupancy of the same (including, without limitation, certificates of occupancy and fire underwriting certificates), have been made or obtained by Seller or Seller's correspondent from the appropriate authorities.

**COMPLAINT**

> The Mortgagor represented at the time of origination of the Mortgage Loan that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence, if applicable. <u>Seller's Guide § 703(24).</u>

27. In certain instances, Defendants were also the underwriter of loans as permitted under the Seller's Guide. With respect to those loans, Defendants additionally represented, warranted, and covenanted in Section 717(1) of the Seller's Guide that:

> All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

28. Defendants represented and/or warranted that they had the ability to perform their obligations under, and satisfy all requirements of, the Agreements. Seller's Guide § 702(5).

29. LBHI expressly relied upon the representations and warranties contained in the Agreements in purchasing the Breaching Loans. *See* Seller's Guide § 701.

**D. Lehman Brothers Holdings Inc.'s Settlement of Third Party Liability**

30. After LBHI's sale of the Breaching Loans to the GSEs, the GSEs discovered breaches of representations, warranties, and/or covenants in the Breaching Loans that were co-extensive with the representations, warranties, and/or covenants agreed to by Defendants and contained in the Agreements.

31. The GSEs filed proofs of claim in LBHI's bankruptcy proceeding to recover for losses on breaching mortgage loans sold by LBHI.

32. LBHI examined the GSEs' claims and determined that the Breaching

**COMPLAINT**

Loans contained various defects in violation of the representations, warranties, and/or covenants under the Agreements, including but not limited to the representations and warranties that all the information provided in the loan files were true and correct and that the loans met certain origination and underwriting requirements. Thus, Defendants' breaches, acts, and omissions resulted in LBHI incurring liability to the GSEs.

33. LBHI settled with the GSEs in 2014, at which time the Bankruptcy Court for the Southern District of New York approved the settlements with Fannie Mae and Freddie Mac.

34. These settlements with the GSEs triggered LBHI's right to indemnification under the Agreements with Defendants.

**E.** **Defendants' Obligation to Indemnify LBHI**

35. In each of their respective Agreements, Defendants agreed to indemnify LBHI from liabilities, claims, losses, damages, judgments, and expenses LBHI might sustain as a result of the Breaching Loans under the Seller's Guides. Section 711 of the Seller's Guides, entitled "Indemnification and Third Party Claims," provides, in pertinent part, as follows:

> In addition to any repurchase and cure obligations of Seller, . . . Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent. In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the

**COMPLAINT**

reasonable attorney's fees of Purchaser incurred in enforcing Seller's obligation hereunder, including, without limitation, the repurchase obligation set forth above.

36.    Defendants are on notice of the claims related to their indemnity obligations.

37.    Defendants have refused or otherwise failed to comply with their obligations under the Agreements, including the obligation to indemnify LBHI.

38.    Defendants' failure and/or refusal to indemnify LBHI for LBHI's liability to the GSEs constitutes a breach of Defendants' contractual indemnification obligations.

39.    Pursuant to Section 8 of the Loan Purchase Agreements and Section 713 of the Seller's Guide, the laws of the State of New York govern this contract action.

40.    All conditions precedent to bringing this action have been met, have occurred, or have been waived.

**F.    PMAC Lending's Liability for PMC Bancorp's Obligations and Liabilities**

41.    As set forth above, both PMAC Lending and PMC Bancorp, pursuant to their respective Agreements, are obligated to indemnify LBHI for any and all liabilities, claims, losses, damages, judgments, and expenses that LBHI might sustain as a result of the Breaching Loans.

42.    PMAC Lending, however, is liable not only for its own indemnification obligations but also those of PMC Bancorp under the theory of successor liability, set forth upon information and belief as follows:

43.    In 2010, LBHI filed a lawsuit against PMC Bancorp in the Central District of California, case no. CV10-07207.

44.    That lawsuit pertained to PMC Bancorp's breach of representations and warranties related to defective loans different from those at issue here.

**COMPLAINT**

45.     During that litigation, PMC Bancorp sold or otherwise transferred certain of its assets, including its servicing platform and a portion of its loan portfolio, to PMAC Lending.

46.     As a result of the sale/transfer, PMC Bancorp was left with insufficient capital to continue its business or meet its liabilities.

47.     PMC Bancorp failed to obtain a reasonably equivalent value in exchange for the sale of its assets.

48.     Nearly all of PMC Bancorp's key employees/executives moved to PMAC Lending near the time of the sale/transfer, or are otherwise affiliated with PMAC, including the following:

a)     Chul Se Park a.k.a. William Park, PMC's founder and one time CEO/president, became PMAC's CEO in or around September 2010.  Mr. Park ran both companies during the period preceding the sale/transfer of PMC's assets to PMAC;

b)     Daniel Kim, formerly PMC's General Counsel became General Counsel at PMAC in or around 2012;

c)     Ryan Kim, Executive Vice President at PMC, became Executive Vice President of PMC in or around July 2012;

d)     Sharon Kim, Director of Operations at PMC, became Director of Operations at PMAC in or around 2012;

e)     Brian Witham was former Senior Vice President of Servicing at PMC and became CEO at PMAC in or around July 2012;

f)     Carol Sim, Controller at PMC, became Controller at PMAC;

g)     Robert Ramirez, Manager of Loss Mitigation at PMC, became Manager of Loss Mitigation at PMAC in or around September 2012;

h)     Constantine Cafcalas, Senior Vice Present of Capital Markets and Managing Director of PMC Bancorp, has ongoing ties to PMAC Lending.

**COMPLAINT**

49.     PMC Bancorp and PMAC Lending share the same IP/URL address.

50.     PMC Bancorp is no longer solvent and has one remaining shareholder, Salsipuedes S.A. de C.V., a Mexican company.

51.     Salsipuedes S.A. de C.V. hired Mr. Cafcalas to provide consulting services as a corporate representative of PMC Bancorp with the instruction to manage PMC's litigation.

52.     PMAC Lending is subject to litigation by other plaintiffs on similar theories of successor liability, fraud, conspiracy, and fraudulent transfer, including in the action *PennyMac Loan Services, LLC v. PMC Bancorp,* filed in the Superior Court of the State of California, case no. BC500399, in which the Court permitted PennyMac to add PMAC Lending as a defendant based upon the same facts and allegations set forth above.

## First Claim for Relief: Contractual Indemnification

### (Against PMC Bancorp and PMAC Lending)

53.     LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

54.     The Agreements are valid and enforceable contracts that are binding upon Defendants.

55.     LBHI has substantially performed all of its obligations under the Agreements.

56.     Defendants breached the Agreements by failing to indemnify LBHI as required by the Agreements, including indemnification for liabilities, claims, losses, damages, judgments, and expenses as to the Breaching Loans.

57.     Defendants' breaches of their respective Agreements as to the Breaching Loans resulted in actual and consequential damages to LBHI in an amount to be determined at trial, plus prejudgment interest pursuant to New York law, attorneys' fees, litigation costs and all other fees and costs provided by the Agreements.

**Second Claim for Relief: Contractual Indemnification/Successor Liability**

(Against PMAC Lending)

58.     LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

59.     As set forth above, PMAC Lending expressly or impliedly agreed to assume PMC Bancorp's liabilities; engaged in a de-facto consolidation or merger with PMC Bancorp; is a mere continuation of PMC Bancorp; and/or engaged in a fraudulent transfer of PMC Bancorp's assets with intent to hinder, delay, or defraud PMC Bancorp's creditors.

60.     The sale/transfer of PMC Bancorp assets to PMAC Lending and the transfer of PMC Bancorp's employees to PMAC Lending resulted in the continuity of management, shareholders, personnel, assets, and operations between the Defendants and, therefore, amounted to a de facto merger or consolidation.

61.     The aforesaid sale/transfer of PMC Bancorp assets to PMAC Lending and the transfer of PMC Bancorp's employees to PMAC Lending render PMAC Lending responsible for PMC Bancorp's obligations as a result of the companies' substantial continuity.

62.     Indeed, (a) PMAC Lending, including but not limited to several of its executives and its general counsel Daniel Kim, was on notice of PMC Bancorp's obligations to LBHI prior to PMAC Lending's acquisition of the PMC Bancorp assets and (b) there was a substantial continuity between PMC Bancorp and PMAC Lending after acquisition of such assets.

63.     The sale/transfer of assets and transfer of employees and executives were made with the actual intent to hinder, delay, and/or defraud PMC Bancorp's creditors, including LBHI, which demonstrates one facet of the relationship between PMC Bancorp and PMAC Lending.

64.     Finally, PMC Bancorp did not receive a reasonably equivalent value for the sale/transfer; the sale/transfer was made when PMC Bancorp was engaged

**COMPLAINT**

or was about to engage in a business for which PMC Bancorp's remaining assets were unreasonably small in relation to the business; and/or the sale/transfer was made at a time when PMC Bancorp believed or reasonably should have believed it would incur debts beyond its ability to pay.

65. As a result of the foregoing, PMAC Lending is liable for the payment of PMC Bancorp's obligations, liabilities, and debts, including those arising from PMC Bancorp's indemnification obligation to LBHI.

66. PMAC Lending has breached its obligation by failing to indemnify LBHI as required by the Agreements, including indemnification for claim, losses, damages, and expenses incurred as a result of the Breaching Loans sold by PMC Bancorp.

67. PMAC Lending's breach of this obligation resulted in actual and consequential damages to LBHI in an amount to be determined at trial, plus prejudgment interest pursuant to New York law, attorneys' fees, litigation costs and all other fees and costs provided by the Agreements.

## **Relief Requested**

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor as follows:

a) Against PMC Bancorp for all damages against arising from or relating to its indemnification obligation, in an amount to be determined at trial;

b) Against PMAC Lending for all damages against arising from or relating to its indemnification obligation, in an amount to be determined at trial;

c) Against PMAC Lending for all damages against arising from or relating to PMC Bancorp's indemnification obligation, in an amount to be determined at trial;

d) Against both Defendants for recoverable interest;

e)      Against both Defendant for the costs and expenses incurred by LBHI in enforcing Defendants' obligations under the Agreements, including attorneys' fees and costs and any expert witness fees incurred in litigation; and

f)      Providing for such other relief as the Court deems just and proper.

Dated:  June 26, 2015

                         s/ Stephen D. Weisskopf
                         Stephen D. Weisskopf

                         Attorneys for Plaintiff LEHMAN
                         BROTHERS HOLDINGS INC.

**COMPLAINT**

# EXHIBIT L

Charter No, 6947

# FEDERAL STOCK CHARTER

## LEHMAN BROTHERS BANK, FSB

SECTION 1. Corporate Title. The full corporate title of the savings bank is Lehman Brothers Bank, FSB.

SECTION 2. Office. The home office shall be located in Wilmington, Delaware.

SECTION 3. Duration. The duration of the savings bank is perpetual.

SECTION 4. Purpose and powers. The purpose of the savings bank is to pursue any or all of the lawful objectives of a Federal savings bank chartered under section 5 of the Home Owners' Loan Act and to exercise all of the express, implied, and incidental powers conferred thereby and by all acts amendatory thereof and supplemental thereto, subject to the Constitution and laws of the United States as they are now in effect, or as they may hereafter be amended, and subject to all lawful and applicable rules, regulations, and orders of the Office of Thrift Supervision ("Office").

SECTION 5. Capital Stock. The total number of shares of all classes of the capital stock that the savings bank has the authority to issue is six million (6,000,000), of which five million (5,000,000) shall be common stock of par value of $1.00 per share and of which one million (1,000,000) shall be preferred stock, par value $1.00 per share. The shares may be issued from time to time as authorized by the board of directors without further approval of shareholders, except as otherwise provided in this section 5 or to the extent that such approval is required by governing law, rule, or regulation. The consideration for the issuance of the shares shall be paid in full before their issuance and shall not be less than the par value. Neither promissory notes nor future services shall constitute payment or part payment for the issuance of shares of the savings bank. The consideration for the shares shall be cash, tangible or intangible property (to the extent direct investment in such property would be permitted), labor, or services actually performed for the savings bank, or any combination of the foregoing. In the absence of actual fraud in the transaction, the value of such property, labor, or services, as determined by the board of directors of the savings bank, shall be conclusive. Upon payment of such consideration, such shares shall be deemed to be fully paid and nonassessable. In the case of a stock dividend, that part of the retained earnings of the savings bank that is transferred to common stock or paid-in capital accounts upon the issuance of shares as a stock dividend shall be deemed to be the consideration for their issuance.

Except for shares issued in the initial organization of the savings bank or in connection with the conversion of the savings bank from the mutual to the stock form of capitalization, no shares of capital stock (including shares issuable upon conversion, exchange, or exercise of other securities) shall be issued, directly or indirectly, to officers, directors, or controlling persons of the savings bank other than as part of a general public offering or as qualifying shares to a

053113-10104-00637-995KBVCH-07H

2

director, unless there issuance or the plan under which they would be issued has been approved by a majority of the total votes eligible to be cast at a legal meeting.

Nothing contained in this section 5 (or in any supplementary sections hereto) shall entitle the holders of any class or a series of capital stock to vote as a separate class or series or to more than one vote per share, except as to the cumulation of votes for the election of directors, unless the charter otherwise provides that there shall be no such cumulative voting; Provided, that this restriction on voting separately by class or series shall not apply:

(i)   To any provision which would authorize the holders of preferred stock, voting as a class or series, to elect some members of the board of directors, less than a majority thereof, in the event of default in the payment of dividends on any class or series of preferred stock;

(ii)   To any provision that would require the holders of preferred stock, voting as a class or series, to approve the merger or consolidation of the savings bank with another corporation or the sale, lease, or conveyance (other than by mortgage or pledge) of properties or business in exchange for securities of a corporation other than the savings bank if the preferred stock is exchanged for securities of such other corporation; Provided, That no provision may require such approval for transactions undertaken with the assistance or pursuant to the direction of the Office or the Federal Deposit Insurance Corporation;

(iii)   To any amendment which would adversely change the specific terms of any class or series of capital stock as set forth in this section 5 (or in any supplementary sections hereto), including any amendment which would create or enlarge any class or series ranking prior thereto in rights and preferences. An amendment which increases the number of authorized shares of any class or series of capital stock, or substitutes the surviving savings bank in a merger or consolidation for the savings bank, shall not be considered to be such an adverse change.

A description of the different classes and series (if any) of the savings bank's capital stock and a statement of the designations, and the relative rights, preferences, and limitations of the shares of each class of and series (if any) of capital stock are as follows:

A.   Common stock. Except as provided in this section 5 (or in any supplementary sections thereto) the holders of the common stock shall exclusively possess all voting power. Each holder of shares of common stock shall be entitled to one vote for each share held by such holder and there shall be no right to cumulate votes in an election of directors.

Whenever there shall have been paid, or declared and set aside for payment, to the holders of the outstanding shares of any class of stock having preference over the common stock as to the payment of dividends, the full amount of dividends and of sinking fund, retirement fund, or other retirement payments, if any, to which such holders are respectively entitled in preference to the common

053113-1018-00697-995HMCN-OTH

3

stock, then dividends may be paid on the common stock and on any class or series of stock entitled to participate therewith as to dividends out of any assets legally available for the payment of dividends.

In the event of any liquidation, dissolution, or winding up of the savings bank, the holders of the common stock (and the holders of any class or series of stock entitled to participate with the common stock in the distributions assets) shall be entitled to receive, in cash or in kind, the assets of the savings bank available for distribution remaining after: (i) Payment or provision for payment of the savings bank's debts and liabilities; (ii) distributions or provisions for distributions in settlement of its liquidation account; and (iii) distributions or provisions for distributions to holders of any class or series of stock having preference over the common stock in the liquidation, dissolution, or winding up of the savings bank. Each share of common stock shall have the same relative rights as and be identical in all respects with all the other shares of common stock.

B.   Preferred stock. The savings bank may provide in supplementary sections to its charter for one or more classes of preferred stock, which shall be separately identified. The shares of any class may be divided into and issued in series, with each series separately designated so as to distinguish the shares thereof from the shares of all other series and classes. The terms of each series shall be set forth in a supplementary section to the charter. All shares of the same class shall be identical except as to the following relative rights and preferences, as to which there may be variations between different series:

(a)   The distinctive serial designation and the number of shares constituting such series;

(b)   The dividend rate or the amount of dividends to be paid on the shares of such series, whether dividends shall be cumulative and, if so, from which date(s) the payment date(s) for dividends, and the participating or other special rights, if any, with respect to dividends;

(c)   The voting powers, full or limited, if any, of such shares of such series;

(d)   Whether the shares of such series shall be redeemable and, if so, the price(s) at which, and the terms and conditions on which such shares may be redeemed;

(e)   The amount(s) payable upon the shares of such series in the event of voluntary or involuntary liquidation, dissolution, or winding up of the savings bank;

(f)   Whether the shares of such series shall be entitled to the benefit of a sinking or retirement fund to be applied to the purchase or redemption of such shares, and if so entitled, the amount of such fund and the manner of

4

its application, including the price(s) at which such shares may be redeemed or purchased through the application of such fund;

(g)    Whether the shares of such series shall be convertible into, or exchangeable for, shares of any other class or classes of stock of the savings bank and, if so, the conversion price(s) or the rate(s) of exchange, and the adjustments thereof, if any, at which such conversion or exchange may be made, and any other terms and conditions of such conversion or exchange;

(h)    The price or other consideration for which the shares of such series shall be issued; and

(i)    Whether the shares of such series which are redeemed or converted shall have the status of authorized but unissued shares of serial preferred stock and whether such shares may be reissued as shares of the same or any other series or serial preferred stock.

Each share of each series of serial preferred stock shall have the same relative rights as and be identical in all respects with all the other shares of the same series.

The board of directors shall have authority to divide, by the adoption of supplementary charter sections, any authorized class of preferred stock into series, and, within the limitations set forth in this section and the remainder of this charter, fix and determine the relative rights and preferences of the shares of any series so established.

Prior to the issuance of any preferred shares of a series established by a supplementary charter section adopted by the board of directors, the savings bank shall file with the Secretary to the Office a dated copy of that supplementary section of this charter established and designating the series and fixing and determining the relative rights and preferences thereof.

SECTION 6. Preemptive rights. Holders of the capital stock of the savings bank shall not be entitled to preemptive rights with respect to any shares of the savings bank which may be issued.

SECTION 7. Directors. The savings bank shall be under the direction of a board of directors. The authorized number of directors, as stated in the savings bank's bylaws, shall not be fewer than five nor more than fifteen, except when a greater or lesser number is approved by the Director of the Office, or his or her delegate.

SECTION 8. Amendment to charter. Except as provided in Section 5, no amendment, addition, alteration, change or repeal of this charter shall be made, unless such is proposed by the board of directors of the savings bank, approved by the shareholders by a majority of the votes eligible to be cast at a legal meeting, unless a higher vote is otherwise required, and approved or pre-approved by the Office.

053113-1018-00697-S95KBVCN-OTS

5

ATTEST:                                 LEHMAN BROTHERS BANK, FSB

_____                 By_____
Secretary                                  President

ATTEST:                                 OFFICE OF THRIFT SUPERVISION

_____                 _____
Corporate Secretary of the Office       Scott M. Albinson, Managing Director
of Thrift Supervision                   Office of Supervision


Effective Date: ___June 30_____, 1999


053113-1920-00657-995EBVCH;CTK