Amjad M. Khan (admitted pro hac)
*amjad@bnsklaw.com*
Erika L. Shapiro
*erika@bnsklaw.com*
Rowennakete P. Barnes
*kete@bnsklaw.com*
BROWN NERI SMITH & KHAN, LLP
11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
T: (310) 593-9890
F: (310) 593-9980

Attorneys for Defendant
PMC BANCORP

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS, INC.,<br>*et al.*,<br><br>                    Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS, INC.,<br><br>                    Plaintiff,<br>        -against-<br><br>PMAC LENDING SERVICES, INC.,<br>individually and as successor by merger to<br>PMC Bancorp, f/k/a Professional Mortgage<br>Corp., and as successor by merger to Reliant<br>Mortgage Company, LLC, and PMC<br>BANCORP, f/k/a Professional Mortgage<br>Corp., individually, and RELIANT<br>MORTGAGE COMPANY, LLC,<br>individually,<br><br>                    Defendants. | Adv. Proc. No. 18-01842-SCC |

**DEFENDANT PMC BANCORP'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION TO DISMISS LBHI'S COMPLAINTS**

## INTRODUCTION.

Plaintiff Lehman Brothers Holdings Inc. ("LBHI")'s entire brief misses the mark.  LBHI has repeatedly alleged that Defendant PMC Bancorp ("Bancorp") has breached the Loan Purchase Agreement ("LPA") by selling to LBHI defective loans which LBHI resold to third parties.  LBHI has not only brought these exact claims against Bancorp in the past, but it has collected and filed a ***full satisfaction of judgment in the amount of $1.9 million*** from Bancorp for Bancorp's alleged breaches of the LPA.  LBHI plainly ignores these facts and instead masks its claims for further breaches of the same LPA as "indemnification" claims to continue an unrelenting litigation campaign against Bancorp.  In any event, even if this Court should disagree and allow LBHI to continue with this now *fourth* lawsuit against Bancorp concerning the same LPA, for the reasons stated herein and in Bancorp's Motion to Dismiss dated August 22, 2019 ("Opening Brief"), LBHI's claims are untimely and barred.

## ISSUES THAT LBHI DOES NOT DISPUTE.

### A.  **LBHI Admits that it has Already Brought Three Lawsuits Against Bancorp for Breach of the LPA.**

In its Memorandum of Law in Opposition to Bancorp's Motion to Dismiss ("Opp."), LBHI admits that it or its predecessor has brought no less than three prior lawsuits against Bancorp for alleged breaches of the representations and warranties in the LPA.  *See* Opp., at 5-7 (including the 2010 California lawsuit brought by LBHI against Bancorp, the 2011 Colorado lawsuit brought by LBHI's predecessor, Aurora, and the 2015 California lawsuit brought by LBHI against Bancorp alleging not only the same breaches of the same LPA, but that time with regard to the same loans at issue here).  LBHI does not contend that the claims it brought differ in any way whatsoever other than the reference to the specific loans.

**B.  LBHI Admits that it Collected and Filed a Full Satisfaction of Judgment from Bancorp.**

LBHI further concedes that in its 2010 lawsuit against Bancorp, it alleged breaches of the representations and warranties in the same LPA at issue here against Bancorp (although it strategically omits reference to the LPA in its concession).  *See* Opp., at 5-6.  LBHI admits that it collected and filed a full satisfaction of judgment in the amount of $1.9 million from Bancorp for such alleged breaches.

**C.  LBHI Does Not Dispute that it Forum-Shopped in Voluntarily Dismissing the 2015 Central California Action and Refiling Immediately in this Court.**

LBHI does not dispute that it originally filed an action in 2015 in the District Court for the Central District of California against PMC, alleging the same breaches of the LPA with regard to the same loans at issue here.  *See* Opp., at 7.  LBHI admits that it voluntarily dismissed that action, though ignores the inconvenient reality that it timed such dismissal strategically before the court ruled on Bancorp's motion to dismiss, only to refile in this Court.  *See* Opp., at 7.

LBHI misleadingly claims that it decided to bring its claim before this Court so that it could "pursue indemnification claims against a large group of indemnifying parties in the same forum[,]" and not because it feared the impact of the anticipated decision by the Tenth Circuit, which would have likely (and which ultimately did) rule against LBHI.  *See* Opp., at 7.   As what seems to be purported support for its statement, LBHI states that "Defendants offer no reason to believe that a pending decision in the Tenth Circuit might have any more 'impact' on a proceeding in a district court in the Ninth Circuit than on a proceeding in a bankruptcy court in the Second Circuit."  *See* Opp., at 7, n.3.  What LBHI fails to mention is that the Tenth Circuit rendered its decision on January 27, 2016.  *See Lehman Bros. Holdings, Inc. v. Univ. Amer. Mortgage Co., LLC*, 660 Fed. Appx. 554 (10th Cir. 2016).  The District Court for the Central District of California then *ordered*

3

the parties to submit supplemental briefing with regard to the impact of the Tenth Circuit's decision on February 2, 2016, and LBHI dismissed its action just two days later, on February 4, 2016. *See Reply in Support of Notice of Supplemental Authority in Support of Motion to Dismiss Complaint by PMAC Lending Services, Inc.*, *Lehman Brothers Holdings, Inc. v. PMC Bancorp and PMAC Lending Services, Inc.*, No. 2:15-cv-04867-JAK-PJW, Feb. 2, 2016, Dkt. No. 64; (attached hereto as **Exhibit A**); *Notice of Dismissal Without Prejudice Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i)*, *Lehman Brothers Holdings, Inc. v. PMC Bancorp and PMAC Lending Services, Inc.*, No. 2:15-cv-04867-JAK-PJW, Feb. 4, 2016, Dkt. No. 66 (attached hereto as **Exhibit B**).

Conversely, this Court did not rule on the omnibus motion to dismiss until nearly ***two years later***, on August 13, 2018. *See* Case No. 16-1019, Dkt. No. 606. The District Court for the Central District of California was set to render a decision in the Spring of 2016. That LBHI suggests that that the Second Circuit could have had ***any*** impact on the California Court's decision whether to dismiss LBHI's claims ***two years prior*** makes no sense. *See* Opp., at 7, n.3. The District Court for the Central District of California would not have had a decision from this Court on its radar at the time it was considering Bancorp's motion to dismiss. LBHI's suggestion otherwise, which slyly omits any reference to the timing of the decisions in the Tenth Circuit and in this Court, is improper and telling of how LBHI has indeed engaged in blatant forum shopping.

In any event, in its ruling against LBHI, the Tenth Circuit cited authority from the Second Circuit. In its holding, the Tenth Circuit specifically held that *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346 (2d Cir. 1986) **mandated** its conclusion. *See Lehman Bros. Holdings, Inc. v. Univ. Amer. Mortgage Co., LLC*, 660 Fed. Appx. 554, 568-69 (10th Cir. 2016).

## LBHI OTHERWISE FAILS TO SAVE ITS CLAIMS FROM DISMISSAL.

### A. **LBHI Fails to Refute That Its Claims Are Barred by *Res Judicata*.**

LBHI makes much of this Court's denial of the motion to dismiss made by Universal American Mortgage Company, LLC ("UAMC"). *See Opp.*, at 9-11; *see also Memorandum Decision and Order Denying Universal American Mortgage Company, LLC's and Eagle Mortgage Holdings, LLC's Joint Supplemental Motion to Dismiss on Unique Issues*, Adv. Proc. No. 16-01019, ECF No. 689, at 14-15. But the case of Bancorp is materially different from UAMC in two critical respects. First, unlike UAMC, Bancorp already collected and file a full satisfaction of judgment of $1.9 million for claims identical to those here. Second, unlike against UAMC, LBHI previously brought a claim for contractual indemnification against Bancorp and not merely a breach of contract claim. *See* Opening Brief, Exhibit E, ¶¶ 37-40. LBHI conveniently omits these important distinctions, signifying an awareness that such factors, inconvenient to LBHI, dilute its argument.

Moreover, as discussed in Bancorp's Opening Brief, LBHI knew or should have known that the loans at issue here may have been defective years before it entered into settlements with Fannie Mae and Freddy Mac in 2014. *See* Opening Brief, at 17-18.

Finally, LBHI's claims here for contractual indemnification would not exist without its claims for breach of contract. The contractual indemnification claims are merely an extrapolation of the breach of representations and warranties claims and damages. In such an instance, the doctrine of *res judicata* undeniably applies and bars LBHI's claims for contractual indemnification as improper claim splitting. *See Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992) ("It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [plaintiff] chose to form her complaint."); 1B Moore's Federal Practice ¶

0.410[2]. *Res judicata* still applies, regardless of whether in its (many) prior suits, LBHI chose to focus on the issue of breach of contract and not, as it does now, on the alleged indemnification/repurchase claims. *See Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110-11 (2d Cir. 2000). *Cf. Sure–Snap Corp. v. State Street Bank & Trust Co.,* 948 F.2d 869, 875 (2d Cir.1991) (finding that a claim for tortious infliction of emotional distress against creditors should have been brought as part of a prior bankruptcy proceeding and was therefore barred by res judicata). "As a result our cases consistently hold that the facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit. It is instead enough that 'the facts *essential to the second* were [already] present in the first.'" *Waldman*, 207 F.3d at 110-11 (quoting *Computer Associates International, Inc. v. Altai, Inc.,* 126 F.3d 365, 369 (2d Cir.1997)) (emphasis added). *See also Di Falco, Field, Florea and O'Rourke v. Wilmot*, 39 A.D.2d 663, 663 (1st Dept.) (res judicata barred claim for indemnification against third party for sums due in underlying divorce action where action had complete trial and where third party already paid money due from that judgment); *Voodoo Contracting Corp. v. Ahava Med. & Rehabilitation Ctr., LLC*, 25 Misc.3d 1215(A), at *6 (Kings Cnty. 2009) (res judicata barred claims arising out of contract that was litigated in prior action). *Cf. Carrols Corp. v. Candy Candy, Inc.*, 241 A.D.2d 955, 955 (4th Dept. 1997) (suggesting that had claim for contractual indemnification in prior action been submitted to jury or ruled upon by the court, it would have been barred in current action by res judicata).

LBHI cleverly attempts to cloak its claims as separate and new. However, it cannot escape the fact that under the law in this jurisdiction, its indemnification claims stem from the original alleged breach of contract that is the basis for its entire complaint and that also served as the basis

for the complaints in LBHI's (multiple) prior actions.  Thus, LBHI's contention that its claims are not barred under *res judicata* fails.

**B. LBHI's Attempt to Distract the Court from the Substance of Bancorp's Collateral Estoppel Claim Is Meaningless.**

LBHI's entire argument that collateral estoppel should not apply here is based on a distinction between "claims" and "issues" which LBHI does not even bother to (or perhaps cannot) define or explain.  *See* Opp., at 11-12.  Regardless of the term used, the substance remains: the factual issue of Bancorp's obligations under the LPA has already been fully litigated, with LBHI collecting a filing a full satisfaction of judgment of $1.9 million for all alleged breaches.  *See* Opp., at 11-12.  LBHI should be precluded from arguing that Bancorp is responsible for hundreds of more loans—amounting to *tens of millions of dollars of new damages*—based on those same alleged breaches.  LBHI inconsistently contends that Bancorp should be collaterally estopped from litigating any issue decided in 2010 action, but that LBHI should be allowed to plow through and re-litigate any matter already decided, factual or legal, as it sees fit.  *See* Opp., at 12.

**C. LBHI Fails to Negate the Fact that its Claims Are Time-Barred.**

**1. The Second Circuit Has Held Cloaking Breach of Contract Claims as Contractual Indemnity Claims Is Impermissible.**

LBHI next argues that its claims are timely under New York and Delaware law.  *See* Opp., at 12-16.  LBHI argues, unsurprisingly, that its claims are for contractual indemnification and thus cannot accrue at the time the loans were purchased by LBHI or its predecessors.  *See* Opp., at 12-16.  LBHI's distinction, however, is one without a difference and exalts form over substance.  The Tenth Circuit, in applying *Yemen*, and anticipating this very argument, stated: "we would regard Lehman Holdings' claims causes of action for breach of contract even if Lehman Holdings had pleaded them as claims for indemnity."  *Lehman Bros. Holdings, Inc. v. Univ. Amer. Mortgage*

*Co., LLC*, 660 Fed. Appx. 554, 568 (10th Cir. 2016). In citing *Yemen*, the court held that "[a]n action 'does not become an action for indemnity merely because the pleader has so denominated it.'" *Id*. (citing *Yemen* at 350) (quoting *Bunker v. Bunker*, 437 N.Y.S.2d 326, 328 (1st Dept. 1981)).

Here, as contemplated by the *Yemen* and Tenth Circuit's decisions, LBHI alleges that Bancorp breached the LPA by failing to indemnify LBHI. Owing to the adverse rulings it received from the district courts in Colorado and the anticipated ruling from the district court in California, LBHI elected to file its complaint in this District and cosmetically renamed its breach of contract claim "contractual indemnification." Critically, LBHI did not change the substance of the claim itself, and indeed, expressly plead the claim using the very language of a breach of contract claim: "Defendants' breaches of the Agreements and other acts and/or omissions as to the Defective Loans resulted in LBHI incurring liability and/or losses in an amount to be determined at trial…" Adversary Compl., ¶ 97; Second Amended Adversary Compl., ¶ 97.

New York law provides that a breach of contract claim does not become an indemnification claim just because the title of the claim is changed to "contractual indemnification." Quoting New York law, the Tenth Circuit explains, "[i]n an indemnity claim, the plaintiff alleges that the defendant owed a duty to a third party rather than to the plaintiff itself…" *Lehman Bros. Holdings, Inc. v. Univ. Amer. Mortgage Co., LLC*, 660 Fed. Appx. 554, 568 (10th Cir. 2016) (citing *City of New York v. Lead Indus. Ass'n, Inc.*, 644 N.Y.S.2d 919, 923-24 (1st Dept. 1996) (per curiam). In *Yemen*, the Second Circuit held the plaintiff's claim, cloaked as one for indemnifications, was truly one for breach of contract. This was so even though Yemen had not incurred any loss until it paid additional charges to a third party. However, the defendant's contractual duty ran to the plaintiff— not to the third party. As a result, Yemen's claim was not a "legitimate indemnity claim" and was truly a breach of contract claim. *See Yemen*, 782 F.2d at 350.

**2. Section 711 of the Seller's Guide, Conveniently Omitted from LBHI's Discussion, Is Fatal to LBHI's Argument of the Timing of the Accrual of its Claims.**

LBHI's argument that its indemnification claims do not accrue until the underlying claims are decided (*i.e.*, the issue of whether LBHI is liable to third parties for the resale of the loans) fails to take into account the contractual term in the Seller's Guide to which LBHI agreed when entering into the LPA with Bancorp. *See* Opp., at 15-16. Tellingly, LBHI entirely ignores the language of Section 711 of the Seller's Guide, as though its inconvenient truth does not exist. *See* Opening Brief, at 23; *see also* Seller's Guide, at Section 711. The Seller's Guide provides unequivocally that once LBHI incurs an obligation to a third party, the indemnification provision is triggered. Under the plain language of Section 711, LBHI had obligation to pay its attorneys in defending the underlying claims brought by the RMBS trustees, regardless of whether or when the claims were ultimately decided. LBHI was defending itself against the underlying claims brought by the RMBS trustees. Defense costs are commonly structured as hourly fees, not as fees whose payment is contingent on a final outcome. For example, if LBHI were to switch attorneys during the litigation surrounding the RMBS trustees' underlying claims, it would still have to pay its attorneys for their representation up until the time the representation terminated. LBHI does not—and cannot—deny that it had to pay its attorneys for their representation of LBHI at the time that the RMBS trustees (and Fannie Mae and Freddy Mac) filed their proofs of claim in 2009. As such, under Section 711 of the Seller's Guide, LBHI's indemnification claim was triggered in 2009 at the latest. Accordingly, under both New York law and Delaware law, LBHI's claims are time-barred. *See* Opening Brief, at 22-24.

## CONCLUSION

For the foregoing reasons, Defendant Bancorp respectfully requests that this Court grant

an Order dismissing LBHI's Complaint in its entirety with prejudice and for such other and further

relief as this Court deems just and proper.

Dated: October 3, 2019
      New York, New York                   Respectfully submitted,


By: _____/s/ Erika L. Shapiro_____

BROWN NERI SMITH & KHAN, LLP
11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
T: (310) 593-9890
erika@bnsklaw.com

*Attorneys for Defendant*,
PMC Bancorp

# EXHIBIT A

PATRICIA LEE-GULLEY (SBN: 144962)
 *plee-gulley@gordonrees.com*
GORDON & REES LLP
2211 Michelson Drive, Suite 400
Irvine, CA  92612
Telephone:  (949) 255-6950
Facsimile:  (949) 474-2060

TAMARA A. SEELMAN (*Admitted Pro Hac Vice*)
  *tseelman@gordonrees.com*
GORDON & REES LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80220
Telephone: (303) 534-5160
Facsimile: (303) 534-5161

AMJAD M. KHAN (SBN: 237325)
 *amjad@bnslawgroup.com*
BROWN, NERI & SMITH LLP
11766 Wilshire Blvd., Suite 1670
Los Angeles, CA 90025
Telephone: (310) 593-9890
Facsimile:  (310)593-9980

Attorneys for Non- Party
PMAC LENDING SERVICES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS, INC.<br><br>Plaintiff,<br><br>v.<br><br>PMC BANCORP, f/k/a PROFESSIONAL MORTGAGE CORP. and PMAC LENDING SERVICES, INC,<br><br>Defendants. | CASE NO.  CV15-04867 - JAK (PJWx)<br>Honorable John A. Kronstadt<br>Honorable Patrick J. Walsh<br><br>**REPLY IN SUPPORT OF NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS COMPLAINT BY PMAC LENDING SERVICES, INC.** |

-2-

Defendant PMAC Lending Services, Inc. ("PMAC"), through its counsel, respectfully submits this Reply In Support Of Notice of Supplemental Authority in support of its motion to dismiss, filed October 9, 2015 [Dkt. 31], which the parties argued before this Court on January 25, 2016.

The ruling by the Tenth Circuit on January 27, 2016 directly supports PMAC's arguments in its motion to dismiss that Plaintiff's claims here are barred by the statute of limitations and the doctrine of collateral estoppel. In response, Plaintiff argues that the portion of court's order concluding that Lehman's indemnification claims accrue from the date the loans were sold and not from the date Lehman paid Fannie Mae and Freddie Mac to settle claims is "dicta." To the contrary, the Tenth Circuit is clear that this is an integral part of its holding.

On page 4, the Tenth Circuit summarized its holdings. With respect to the accrual of Lehman's claims, the Court specifically held that Lehman's claims accrued from the date the loans were sold even though Lehman had to later pay third parties:

> …we must decide if [Lehman's] claims accrued more than three years before Aurora and Lehman Holdings sued. We conclude they did. All the claims accrued in 2006 and 2007 (***when Lehman Bank bought the fifteen loans***) even though (1) Lehman Holdings and Aurora later demanded that the sellers cure the losses sustained from the loans and ***(2) Lehman Holdings had to reimburse third parties because of the loan defects***.

*Lehman Brothers Holdings Inc. v. Universal American Mortgage Co.*, No. 14-1180 (10th Cir., *opinion filed* January 27, 2016). The Tenth Circuit expanded on its holding on page 33 where it relied upon New York law, *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346 (2d Cir. 1986), and specifically held that *Yemen* **mandated** the conclusion that Lehman's claim

accrued from the date the loans were sold and not the date Lehman paid a third party:

> Thus, *Yemen **would require us*** to base accrual of the cause of action ***on the date of [the mortgage originator's] breach of contract rather than the date of Lehman Holdings' payment to a third party***.
>
> ***
>
> As a result, ***we conclude that the causes of action accrued when [the mortgage originators] sold the defective loans with the representations and warranties***. These sales had closed in 2006 and 2007, more than three years before Aurora and Lehman Holdings brought suit in 2011 and 2012. Thus, all of the claims are presumptively time-barred....''

*Lehman Holdings* at pp. 33-34 (emphasis added).

Plaintiff argues that the Tenth Circuit's holding is merely "dicta" because in the cases at issue in the Tenth Circuit's ruling, Lehman plead claims for breach of contract and alleged the failure to indemnify as one of the ways the mortgage originator breached the contract, whereas here, Plaintiff titles its claim "contractual indemnification" instead of breach of contract. This, however, is a distinction without a difference and exalts form over substance. The Tenth Circuit, in applying *Yemen* and anticipating this very argument, stated: "...we would regard Lehman Holdings' claims causes of action for breach of contract even if Lehman Holdings had pleaded them as claims for indemnity." *Lehman Holdings* at p. 33. The Court then cited *Yemen* for the critical proposition that "[a]n action 'does not become an action for indemnity merely because the pleader has so denominated it.'" *Id*. (*citing Yemen* at 350 (*quoting Bunker v. Bunker*, 437 N.Y.S.2d 326, 328, 80 A.D.2d 817, 817 (N.Y. App. Div. 1981)).

Here, just as in the cases at issue in the Tenth Circuit's ruling, Plaintiff alleges PMAC breached the loan purchase agreement by failing to indemnify Plaintiff. Owing to the adverse rulings it received from the district courts in Colorado, Plaintiff elected to file its complaint in this District and cosmetically

renamed its breach of contract claim "contractual indemnification." Critically, Plaintiff did not change the substance of the claim itself, and indeed, expressly plead the claim using the very language of a breach of contract claim:

<u>First Claim for Relief: Contractual Indemnification</u>
(Against PMC Bancorp and PMAC Lending)

53. LBHI hereby incorporates by reference the allegations set forth above as thought fully set forth herein.
54. The Agreements are valid and enforceable contract that are binding upon Defendants.
55. LBHI has substantially performed all of its obligations under the Agreements.
56. ***Defendants breached the Agreements*** by failing to indemnify LBHI as required ***by the Agreement***, including indemnification for liabilites, claims, losses, damages, judgments, and expenses as to the Breaching Loans.
57. ***Defendants' breaches of their respective Agreements*** as to the Breaching Loans resulted in actual and consequential damages to LBHI in an amount to be determined at trial, plus pre-judgment interest pursuant to New York law, attorneys fees, litigation costs, and all other fees and costs ***provided by the Agreements***.

Plaintiff's Complaint [Dkt. #1] (emphasis added). As the Tenth Circuit confirms, New York law provides that a breach of contract claim does not become an indemnification claim just because the title of the claim is changed to "contractual indemnification." Quoting New York law, the Tenth Circuit explains, "[i]n an indemnity claim, the plaintiff alleges that the defendant owed a duty to a third party rather than to the plaintiff itself…" *Lehman Holdings* at p. 31 (*citing City of New York v. Lead Indus. Ass'n, Inc.* 644 N.Y.S.2d 919, 923-24, 222 A.D.2d 119, 126-27 (N.Y. App. Div. 1996) (per curiam).[1]

---

[1] In arriving at this conclusion, the Tenth Circuit relies on *Yemen*: "The Second Circuit characterized the claim as one for breach of contract, even though Yemen had not incurred any loss until it paid the additional charges to a third party (the shipowner) . . . But Goodpasture's alleged contractual duty ran to Yemen, not the shipowner . . . As a result, Yemen's claim involved breach of contract, rather than a 'legitimate indemnity claim,' and the payments to the third party were recoverable only as damages from Goodpasture's alleged breach of contract." *Lehman Holdings*, at p. 32 (internal citations omitted). Here, Plaintiff's

-5-

Here, in a nearly identical factual scenario as in *Lehman Holdings*, Plaintiff does not allege PMAC owes a duty to a third party (*i.e.*, Fannie Mae or Freddie Mac) but rather that PMAC owes a contractual duty *to the Plaintiff*. In other words, Plaintiff is simply not advancing the type of "legitimate indemnity claim" that would trigger a different application of the accrual rules. Even though Plaintiff denominates its claim as "contractual indemnity," it is inescapably one based on breach of contract, and therefore is time-barred under applicable New York law.

In sum, the Tenth Circuit ruling directly supports PMAC's motion to dismiss, and in particular, PMAC's arguments that Plaintiff's claims are barred by the statute of limitations and the doctrine of collateral estoppel.

Dated:  February 2, 2016            GORDON & REES LLP


                                    By:   *s/Tamara A. Seelman*
                                          Tamara A. Seelman
                                          Attorneys for Non-Party
                                          PMAC LENDING SERVICES,
                                          INC.


## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I the undersigned, certify and declare that I am over the age of 18 years, and am an employee of Gordon & Rees LLP, 2211 Michelson Drive, Suite 400, Irvine, California 92612.

On **February 2, 2016** and pursuant to FRCP 5(b), I served a true and correct of the foregoing NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS BY PMAC LENDING SERVICES, INC. on the

"contractual indemnity" claim falls squarely within the ambit of the court's reasoning in *Yemen*.

parties below by E-Service via the Court's CM/ECF filing system addressed as follows to:

| | |
|---|---|
| Christopher P. Carrington<br>RICHARDS CARRINGTON<br>1755 Blake Street, Suite 240<br>Denver, Colorado 80202<br>chris@richardscarrington.com | Attorney for Plaintiff<br>Lehman Brothers Holdings, Inc. |
| Stephen D. Weisskopf, Esq.<br>Weisskopf Law<br>1800 Century Park East, Suite 600<br>Los Angeles, CA 90067<br>sweisskopf@weisskopflaw.com | Attorney for Plaintiff<br>Lehman Brothers Holdings, Inc. |
| Amjad M. Khan<br>Ethan J. Brown (SBN: 218814)<br>Brown, Neri & Smith LLP<br>11766 Wilshire Blvd., Suite 1670<br>Los Angeles, CA 90025<br>*amjad@bnslawgroup.com*<br>*ethan@bnslawgroup.com* | Attorney for Defendant<br>PMAC Lending Services, Inc. |

I declare that I am employed in the office of a member of the California State Bar who is permitted to practice before this Court, at whose direction the service stated above was made, and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 2, 2016 at Denver, Colorado.

*s/Tamara A. Seelman*
Tamara A. Seelman

# EXHIBIT B

Christopher P. Carrington (*pro hac vice*)
chris@richardscarrington.com
RICHARDS CARRINGTON, LLC
1755 Blake Street, Suite 240
Denver, Colorado 80202
Telephone: (303) 962-2690
Facsimile: (303) 962-2691

Stephen D. Weisskopf (State Bar No. 213596)
sweisskopf@weisskopflaw.com
WEISSKOPF LAW
1800 Century Park East, Suite 600
Los Angeles, California, 90067
Telephone: (310) 734-2026
Facsimile: (310) 421-4180

*Attorneys for Plaintiff LEHMAN
BROTHERS HOLDINGS INC.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC. | CASE NO. CV15-04867 – JAK (PJWx) |
| Plaintiff, | Honorable John A. Kronstadt<br>Honorable Patrick J. Walsh |
| vs. | |
| PMC BANCORP f/k/a PROFESSIONAL MORTGAGE CORP. and PMAC LENDING SERVICES, INC. | **Notice of Dismissal Without Prejudice Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i)** |
| Defendant. | |

1

Lehman Brothers Holdings Inc. ("Lehman"), through counsel, respectfully submits this notice of voluntary dismissal without prejudice. Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) "the plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."

Here, neither Defendant has answered the complaint or filed a motion for summary judgment. Lehman hereby dismisses the above-captioned action without prejudice.

Dated: February 4, 2016

RICHARDS CARRINGTON, LLC

By: /s/ *Christopher P. Carrington*
Christopher P. Carrington
(*pro hac vice*)
*Attorneys for Plaintiff Lehman Brothers Holdings Inc.*

WEISSKOPF LAW

By: /s/ *Stephen D. Weisskopf*
Stephen D. Weisskopf
*Attorneys for Plaintiff Lehman Brothers Holdings Inc.*

2

1

2

## PROOF OF SERVICE

3

     I am co-counsel in this matter and am over the age of eighteen years, and not a party to the

4

within action. My business address is: Richards Carrington LLC, 1755 Blake Street, Suite 240, Denver, Colorado 80202. On February 4, 2016, I served the document(s) as follows:

5

☐ **BY FACSIMILE:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

6

7

**X BY ELECTRONIC SERVICE:** I caused such document(s) to be electronically filed in

8

accordance with the electronic filing procedures of this Court; service has been effected upon the parties, whose counsel of record is a registered participant of CM/ECF, via electronic service through the CM/ECF system.

9

10

☐ **BY PERSONAL DELIVERY:** by personally delivering the document(s) listed above to the person(s) at the address(es) as follows:

11

12

☐ **PERSONAL DELIVERY BY CAUSE:** I caused said documents to be hand-delivered to the addressee on **(date**)**, pursuant to Code of Civil Procedure § 1011.

13

14

☐ **BY OVERNIGHT DELIVERY:** by placing a true copy thereof enclosed in a sealed envelope,

15

at a station designated for collection and processing of envelopes and packages for overnight delivery by UPS as part of the ordinary business practices of Richards Carrington, LLC.

16

☐ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage

17

thereon fully prepaid, in United States mail in the State of Colorado at Denver, addressed as set forth in the service list below. I am readily familiar with the firm's practice of collection and

18

processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of

19

business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

20

☐ **BY ELECTRONIC MAIL**: by providing a copy of the foregoing via electronic mail to the

21

counsel of record in this matter.

22

I declare under penalty of perjury under the laws of the State of Colorado that the above is true and correct.

23

24

Executed on February 4, 2016, at Denver, Colorado.

25

/s/ *Christopher P. Carrington*

26

Christopher P. Carrington

27

28

3